IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NICOLETTE D. PAGE, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 1:24-cv-01249 |
| | § | |
| UNIVERSITY OF TEXAS AT AUSTIN, | § | |
| *Defendant*. | § | |

---

**DEFENDANT THE UNIVERISTY OF TEXAS AT AUSTIN'S
MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(C)**

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE DAVID EZRA:

# Table of Contents

BACKGROUND ........................................................................................................... 1

STANDARD OF REVIEW ........................................................................................ 1

ARGUMENTS AND AUTHORITIES.......................................................................... 2

I.    Plaintiff's claims of discrimination and retaliation under the ADA and FMLA are barred by sovereign immunity from liability. ................................................................................ 3

II.   Plaintiff's claims for discrimination and retaliation under the TCHRA are barred by sovereign immunity from liability........................................................................................ 3

  A.   Plaintiff has not pleaded a viable discrimination claim under the TCHRA. ...................... 4

    1.   Plaintiff has not alleged that she has a qualifying disability........................................... 4

    2.   Plaintiff has not sufficiently alleged an adverse employment action based on constructive discharge or hostile work environment. ............................................................ 5

    3.   Plaintiff has not sufficiently pleaded an adverse employment action based on a pay discrimination theory. .......................................................................................................... 8

  B.   Plaintiff has not established a viable retaliation claim under the TCHRA. ....................... 9

III.  Plaintiff fails to plead a viable claim for race discrimination or retaliation under Title VII. 14

  A.   Plaintiff fails to allege an adverse employment action. ................................................. 14

  B.   Plaintiff fails to administratively exhaust her constructive discharge and salary-related claims. ................................................................................................................................ 17

CONCLUSION........................................................................................................... 20

CERTIFICATE OF SERVICE .................................................................................. 21

**Table of Authorities**

## Cases

*Alamo Heights ISD v. Clark*, 544 S.W.3d 755 (Tex. 2018)...................................... passim

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................ 2, 9, 10, 11

*Auto Zone v. Reyes*, 272 S.W.3d 588 (Tex. 2008) (per curiam) ................................ 4, 5, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................... 2, 12

*Big Thirst, Inc. v. Donoho*, 657 F.Supp.3d 914 (W.D. 2023) ................................... 18

*Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000)...................................... 11

*Brown v. Bunge Corp.*, 207 F.3d 776 (5th Cir. 2000).......................................... 17

*Brown v. Kinney Shoe Corp.*, 237 F.3d 556 (5th Cir. 2001)..................................... 15

*Brown v. Prentiss Regional Hosp.*, 2013 WL 610520 (S.D. Miss. 2013) ................................... 18

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ............................... 12

*Carty v. State Office of Risk Mgmt.*, 733 F.3d 550 (5th Cir. 2013) .................................. 2

*City of Pasadena v. Poulos*, 2023 WL 7134974 (Tex. App.—Houston [1st Dist.] 2023, no pet.). 5

*City of Westworth Village v. City of White Settlement*, 558 S.W.3d 232 (Tex. App.—Fort Worth 2018, pet. denied).................................................................. 2

*Cuvillier v. Sullivan*, 503 F.3d 397 (5th Cir. 2007) ........................................... 17

*Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253 (5th Cir. 2020).................................. 2

*Dillard v. SNC-Lavalin Engineers & Const. Inc.*, 629 S.W.3d 692 (Tex. App.—Houston [1st Dist.] 2021) ................................................................................ 5

*Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008) .......................................... 2

*Ellis v. Cargill Meat Solutions*, 2024 WL 4692024 (5th Cir. 2024)..................................... 10, 11

*Ellzey v. Espy*, 1995 WL 6277 (E.D. La. 1995)............................................... 19

*Faruki v. Parsons*, 123 F.3d 315 (5th Cir. 1997)............................................. 15

*Fellows v. Universal Rests., Inc.*, 701 F.2d 447 (5th Cir. 1983).................................... 20

*Frances v. Nexion Healthcare at McKinney, Inc.*, 2014 WL 2757680 (E.D. Tex. 2014) ........... 19

*Gardner v. Abbott*, 414 S.W.3d 369 (Tex. App.—Austin 2013, no pet.) .................................. 6, 7

*Garza v. Tex. Dep't of Aging & Disability Servs.*, 2017 WL 4681799 (W.D. Tex. 2017)............. 3

*Gates v. Lyondell Petrochemical Co.*, 2006 WL 8450671 (S.D. Tex. [Houston] 2006), aff'd, 227 F. App'x 409 (5th Cir. 2007) ................................................................. 20

*Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165 (5th Cir. 2014) ............................. 14

*Hamilton v. Dallas Cnty*, 79 F.4th 494 (5th Cir. 2023) (en banc) ................................... 5, 14

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)............................................. 7

*Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427 (5th Cir. 2023) .................................... 14

*Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428 (5th Cir. 2005) ................................. 6

*Lemonia v. Westlake Mgmt. Servs., Inc.*, 2023 WL 6878915 (5th Cir. 2023) ............................ 15

*Longoria v. Via Metro. Transit*, 2022 WL 1445396 (W.D. Tex. 2022) ................................... 13

*Loomis v. Starkville Miss. Public Sch. Dist.*, 150 F.Supp.3d 730 (N.D. Miss. 2015)............. 18, 20

*Lopez v. Univ. of Tex. at Austin*, 2023 WL 8445742 (W.D. Tex. 2023) ................................. 11

*Luedecke v. Tenet Healthcare Corp.*, 2015 WL 58733 (N.D. Tex. 2015)................................... 11

*Lyons v. Katy ISD*, 964 F.3d 298 (5th Cir. 2020) ............................................ 10

*Mandujano v. City of Pharr*, 786 F. App'x 434 (5th Cir. 2019)..................................... 16

*Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874 (2023) .................................... 17, 18

*McElroy v. PHM Corp.*, 622 F. App'x 388 (5th Cir. 2015)....................................... 16

*Meyers ex rel. Benzing v. Tex.*, 454 F.3d 503 (5th Cir. 2006) (en banc) ............................. 2

*Nairn v. Killeen ISD*, 366 S.W.3d 229 (Tex. App.—El Paso 2012, no pet.)................................. 7

*Newbury v. City of Windcrest*, 991 F.3d 672 (5th Cir. 2021) ...................................................... 16

*Norsworthy v. Houston ISD*, 70 F.4th 332 (5th Cir. 2023).................................................. 9, 11, 12

*Nuñez-Renck v. IBM Corp.*, 2024 WL 4995572 (N.D. Tex. 2024) ............................................. 19

*Outley v. Luke & Assocs., Inc.*, 840 F.3d 212 (5th Cir. 2016) ...................................................... 9

*Pacheco v. Mineta*, 448 F.3d 783 (5th Cir. 2006)............................................................... 18, 19

*Parker v. Spotify USA, Inc.*, 569 F.Supp.3d 519 (W.D. Tex. 2021) ........................................... 18

*Pearce v. Wichita Cnty, City of Wichita Falls, Tex., Hosp. Bd.*, 590 F.2d 128 (5th Cir. 1979) ... 17

*Perret v. Nationwide Mut. Ins.*, 770 F.3d 336 (5th Cir. 2014) .................................................... 16

*Plotkin v. IP Axess Inc.*, 407 F.3d 690 (5th Cir. 2005) ................................................................ 2

*Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500 (Tex. 2012)................................................ 8

*Ray-Brown v. Longview ISD*, 2013 WL 5433476 (Tex. App.—Texarkana 2013, no pet.) ............ 6

*Reed v. Neopost USA, Inc.*, 701 F.3d 434 (5th Cir. 2012) .......................................................... 14

*Ruth v. Crow*, 2018 WL 2031902 (Tex. App.—Austin 2018)....................................................... 9

*Sacks v. Tex. S. Univ.*, 83 F.4th 340 (5th Cir. 2023)........................................................... 15, 16

*Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970) ............................................... 18

*Sheffield v. Leggett & Platt, Inc.*, 2008 WL 3842903 (N.D. Miss. 2008) .................................... 18

*Sligh v. City of Conroe*, 87 F.4th 290 (5th Cir. 2023) .............................................................. 18

*Smith v. Kendall*, 2024 WL 4442040 (5th Cir. 2024)............................................................... 10

*Spears v. DSM Copolymer, Inc.*, 103 F.3d 124 (5th Cir. 1996)................................................... 19

*Stone v. La. Dep't of Revenue*, 590 F. App'x 332 (5th Cir. 2014)........................................ 10, 18

*Sullivan v. Tex. A&M Univ. Sys.*, 986 F.3d 593 (5th Cir. 2021)................................................... 3

*Taylor v. City of Shreveport*, 798 F.3d 276 (5th Cir. 2015)......................................................... 3

*TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754 (5th Cir. 2002)..................................... 6

*Twigland Fashions, Ltd. v. Miller*, 335 S.W.3d 206 (Tex. App.—Austin 2010, no pet.) .............. 6

*Univ. of Tex. at El Paso v. Herrera*, 322 S.W.3d 192 (Tex. 2010) .............................................. 3

*Vielma v. Eureka Co.*, 218 F.3d 458 (5th Cir. 2000) ................................................................. 17

*Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763 (5th Cir. 2016)............................................ 18

*Waffle House, Inc. v. Williams*, 313 S.W.3d 796 (Tex. 2010)................................................... 6, 7

*Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692 (Tex. 2003) .............................................. 2

*Winters v. Cubb & Son, Inc.*, 132 S.W.3d 568 (Tex. App.—Houston [14th Dist.] 2004).............. 5

*Wright v. Union Pac. R.R. Co.*, 990 F.3d 428 (5th Cir. 2021)................................................... 12

*Ysleta ISD v. Monarrez*, 177 S.W.3d 915 (Tex. 2005) .............................................................. 8

## Statutes

29 C.F.R. § 1630.2(j)(1)(ii) ........................................................................................................ 5

Americans with Disabilities Act ................................................................................................ 1

Federal Rule of Civil Procedure 12(c) ....................................................................................... 1

Tex. Civ. Prac. & Rem. Code § 311.034 .................................................................................... 8

Tex. Gov't Code § 311.034......................................................................................................... 2

Tex. Lab. Code § 21.001 .......................................................................................................... 14

Tex. Lab. Code § 21.002 ............................................................................................................ 4

Tex. Lab. Code § 21.202 ............................................................................................................ 8

Texas Labor Code chapter 21 .................................................................................................... 1

Title VII of the Civil Rights Act of 1964.................................................................................... 1

NOW COMES Defendant, The University of Texas at Austin (UT), and files this Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). The claims of Plaintiff Nicolette Page (Plaintiff or Page) against UT are barred by sovereign immunity from liability, are time-barred or unexhausted, or lack facial plausibility. As such, the Court should dismiss this suit in its entirety as UT is entitled to judgment as a matter of law on all claims.

## BACKGROUND

Plaintiff filed this suit in state court for (1) race discrimination under Texas Labor Code chapter 21 (TCHRA) and Title VII of the Civil Rights Act of 1964 (Title VII); (2) disability discrimination under the TCHRA and the Americans with Disabilities Act (ADA); (3) retaliation under the TCHRA, Title VII, and the ADA; and (4) retaliation under the Family and Medical Leave Act (FMLA). UT answered in state court and timely removed the case to this Court. ECF No. 1.

Plaintiff was employed by UT as a Billing and Insurance Manager from August 2019 until May 2023, when she "transferred to the role of Enterprise Application Support Manager for [UT's] Enterprise Business Information Technology Solutions (eBITS) department." ECF No. 1–3 at 4. Plaintiff alleges her supervisor, Mark Jacaman (Jacaman), "excluded [her] from management meetings and staff meetings pertaining to her responsibilities," "disciplined [her] for absences that were approved for protected leave under the [FMLA]," "subjected her to disrespectful and racist commentary," and "placed her under increased scrutiny." *Id.* Plaintiff alleges her mistreatment "intensified" after she filed a charge of discrimination with the Texas Workforce Commission (TWC) in January 2024 and that "it became so overwhelming that she was forced to resign her eBITS position in April 2024." *Id.* at 5. Plaintiff "now works for a different UT department." *Id.*

## STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings

under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). To avoid dismissal under Rule 12(b)(6) or 12(c), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While courts must accept all factual allegations as true at this stage, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

## ARGUMENTS AND AUTHORITIES

State universities are entitled to sovereign immunity under both Fifth Circuit and Texas law unless a valid waiver or abrogation of immunity exists. *See, e.g.*, *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 260 (5th Cir. 2020); *City of Westworth Village v. City of White Settlement*, 558 S.W.3d 232, 240 (Tex. App.—Fort Worth 2018). While UT waived sovereign immunity from suit by removing this case from state court, waiving immunity from suit "does not affect or limit the State's ability to assert whatever rights, immunities or defenses are provided for by its own sovereign immunity law to defeat the claims against the State." *Meyers ex rel. Benzing v. Tex.*, 454 F.3d 503, 504 (5th Cir. 2006). Plaintiff's claims are barred by sovereign immunity from liability.

"[T]he question of waiver of immunity from liability is governed by state law." *Carty v. State Office of Risk Mgmt.*, 733 F.3d 550, 554–55 (5th Cir. 2013). "[T]o waive immunity, consent to suit must ordinarily be found in a constitutional provision or legislative enactment." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex. 2003). "[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." Tex. Gov't Code § 311.034.

## I.    Plaintiff's claims of discrimination and retaliation under the ADA and FMLA are barred by sovereign immunity from liability.

Neither Title I of the ADA nor the self-care provision of the FMLA contains a valid waiver or abrogation of immunity. *See Sullivan v. Tex. A&M Univ. Sys.*, 986 F.3d 593, 596–98 (5th Cir. 2021).[1] *Garza v. Tex. Dep't of Aging & Disability Servs.*, 2017 WL 4681799, at *3 (W.D. Tex. 2017) (granting 12(c) motion and holding that Texas law did not waive sovereign immunity from liability for claims under the ADA or the self-care provision of the FMLA); *see also Univ. of Tex. at El Paso v. Herrera*, 322 S.W.3d 192 (Tex. 2010) ("The State of Texas cannot be sued under the FMLA's self-care provision."). Accordingly, Plaintiff's ADA and FMLA claims are barred by sovereign immunity. And even if such a waiver or abrogation existed, Plaintiff has not adequately pleaded a viable discrimination claim under the ADA or a viable retaliation claim under either the ADA or the FMLA, for the reasons explained in the sections below addressing Plaintiff's disability and retaliation claims under the TCHRA's analogous state-law provisions. *See infra* Parts II. A–B

## II.    Plaintiff's claims for discrimination and retaliation under the TCHRA are barred by sovereign immunity from liability.

The TCHRA contains a limited waiver of sovereign immunity from both suit and liability which applies "only when the plaintiff states a claim for conduct that actually violates the statute." *Alamo Heights ISD v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). To determine whether a claim "actually violates the statute," Texas courts apply "the tripartite *McDonnell Douglas* burden-shifting framework." *Id.* at 764. That test requires the employee to establish a prima facie case before a rebuttable presumption of illegal intent arises. *See id.* at 782. "But the employer can defeat this presumption merely by producing evidence of a legitimate, nondiscriminatory reason for the

---

1. Plaintiff does not specify whether she is suing under Title I of the ADA, but Title I creates a cause of action for employment discrimination, whereas Title II does not. *See Taylor v. City of Shreveport*, 798 F.3d 276, 282 (5th Cir. 2015). She likewise does not specify whether she is invoking the FMLA's self-care or family-care provision.

disputed employment action." *Id.* "Once rebutted, the presumption disappears, and an employee lacking direct evidence cannot prove a statutory violation without evidence that the employer's stated reason is false and a pretext for discrimination." *Id.*

Here, Plaintiff asserts claims for race discrimination, disability discrimination, and retaliation under the TCHRA. ECF No. 1–3 at 6. However, she does not allege facts for any of these claims that, if true, would demonstrate an actual violation of the TCHRA. Therefore, Plaintiff has not invoked the TCHRA's limited waiver of immunity. Accordingly, all Plaintiff's claims Plaintiff under the TCHRA are barred by sovereign immunity from liability and must be dismissed.

### A.    Plaintiff has not pleaded a viable discrimination claim under the TCHRA.

For a prima facie case of discriminatory disparate treatment for either disability or racial discrimination under the TCHRA, the plaintiff must show: (1) she is a member of a class protected by the TCHRA, (2) she was qualified for the position she held, (3) she suffered an "adverse employment action," and (4) she was treated less favorably than "similarly situated" persons outside her protected class. *Auto Zone v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam).

Plaintiff alleges she was subject to a hostile work environment, was constructively discharged, and her "salary [was set] at a lower rate than her similarly situated peers." ECF No. 1–3 at 3–5. But Plaintiff fails to allege facts sufficient to state a valid claim based on race or disability discrimination because she (1) fails to adequately plead a qualifying disability; (2) fails to show she suffered an adverse employment action; and (3) fails to demonstrate that she was treated less favorably than a similarly situated person outside her protected class(es).

### 1.    Plaintiff has not alleged that she has a qualifying disability.

The TCHRA defines "disability" as "a mental or physical impairment that substantially limits at least one major life activity" or "a record of such an impairment" or "being regarded as having such an impairment." Tex. Lab. Code § 21.002(6). "An impairment qualifies as a disability

4

'if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.'" *Dillard v. SNC-Lavalin Engineers & Const. Inc.*, 629 S.W.3d 692, 699 (Tex. App.—Houston [1st Dist.] 2021) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

Plaintiff fails to allege facts that, if true, would establish that she had a qualifying disability or that she suffered an adverse employment action because of her alleged disability. Plaintiff alleges she disclosed to her supervisor "her status as a person with a disability under the [ADA] and Chapter 21 of the Texas Labor Code." ECF No. 1–3 at 4. But nowhere in her pleadings does Plaintiff allege she suffered from a condition that qualifies as a disability under the TCHRA or that her supervisor regarded her as having a qualifying disability. *See generally* ECF No. 1. In the absence of such allegations, Plaintiff has not pleaded a viable claim of disability discrimination.

### 2.  Plaintiff has not sufficiently alleged an adverse employment action based on constructive discharge or hostile work environment.

To state a valid claim for race or disability discrimination under the TCHRA, a plaintiff must show she was subject to an adverse ultimate employment action. *See, e.g.*, *Reyes*, 272 S.W.3d at 592. This includes events involving "hiring, granting leave, discharging, promoting, and compensating," but not events that merely "might jeopardize employment in the future," such as "disciplinary filings, supervisor's reprimands, and even poor performance by the employee." *Winters v. Cubb & Son, Inc.*, 132 S.W.3d 568, 575 (Tex. App.—Houston [14th Dist.] 2004).[2]

First, while Plaintiff alleges she was constructively discharged, she fails to allege sufficient facts to state a valid claim. Constructive discharge requires "that the employer made the working conditions so intolerable that a reasonable person would feel compelled to resign." *Waffle House,*

---

2 Although the Fifth Circuit eliminated the "ultimate employment action" requirement for Title VII claims in *Hamilton v. Dallas Cty*, 79 F.4th 494 (5th Cir. 2023) (en banc), *Hamilton* does not purport to change the longstanding rule in Texas jurisprudence that the TCHRA covers only ultimate employment actions. *See City of Pasadena v. Poulos*, 2023 WL 7134974, at *10 n.1 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ("the TCHRA's anti-discrimination provision only applies to 'ultimate employment decisions.'").

*Inc. v. Williams*, 313 S.W.3d 796, 805 (Tex. 2010). When deciding whether an employee's resignation amounts to a constructive discharge, Texas courts consider six factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; and (6) offers of early retirement that would make the employee worse off whether the offers were accepted or not.

*Gardner v. Abbott*, 414 S.W.3d 369, 383 (Tex. App.—Austin 2013, no pet.).

Plaintiff does not allege UT demoted her, reduced her salary or responsibilities, reassigned her to menial work, or offered her early retirement. And even if being excluded from meetings, subjected to disrespectful commentary, and placed under increased scrutiny qualify as "badgering" or "harassment," Plaintiff does not allege any of the purported actions were calculated to encourage her resignation. By alleging acts that invoke—at most—only one of the six factors, Plaintiff fails to allege facts sufficient to state a claim for constructive discharge. *See also infra* Part II. C.

In lieu of demonstrating an adverse action such as termination or constructive discharge, "the plaintiff can show that [he] remained in [his] position and endured a hostile work environment." *Waffle House*, 313 S.W.3d at 805–06. However, the hostile work environment must be based on discriminatory conduct on a protected class. *See id.*; *see also Twigland Fashions, Ltd. v. Miller*, 335 S.W.3d 206, 218 (Tex. App.—Austin 2010, no pet.); *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). Further, conclusory allegations and speculation are insufficient to establish a prima facie case of hostile work environment. *See Ray-Brown v. Longview ISD*, 2013 WL 5433476, at *4 (Tex. App.—Texarkana 2013, no pet.) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).

Plaintiff fails to plead facts sufficient to state a valid claim for hostile work environment. The elements of a prima facie case of hostile work environment are: (1) the employee belongs to

a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on the protected characteristic; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *See Nairn v. Killeen ISD*, 366 S.W.3d 229, 245 (Tex. App.—El Paso 2012, no pet.). The plaintiff must "show discriminatory conduct that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" such as "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult.'" *Waffle House*, 313 S.W.3d at 805 (quoting *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993)).

Here, Plaintiff alleges she was "singled out [ ] for negative treatment," "excluded [ ] from management meetings and staff meetings," "disciplined for absences," "subjected to disrespectful and racist commentary," and "placed under increased scrutiny." ECF No. 1–3 at 4. But, importantly, Plaintiff has not alleged any facts from which it could be reasonably inferred that these purported actions were based on her race or alleged disability, as required. Nor do Plaintiff's allegations explain how any of these purported actions affected a term, condition, or privilege of her employment. Plaintiff fails to adequately plead the presence of a hostile work environment.

The standard for constructive discharge is higher than that required to establish a hostile work environment. *See Gardner*, 414 S.W.3d at 382–83. Because Plaintiff does not meet the standard to state a claim for hostile work environment, she certainly does not meet the standard to state a claim for constructive discharge. Plaintiff fails to "state[ ] a claim for conduct that actually violates the [TCHRA]" as required. *Clark*, 544 S.W.3d at 770. Accordingly, Plaintiff's TCHRA race and disability discrimination claims based on constructive discharge and hostile work environment are barred by sovereign immunity from liability and should be dismissed. *Id*.

### 3. Plaintiff has not sufficiently pleaded an adverse employment action based on a pay discrimination theory.

As governmental entities are entitled to sovereign immunity, the exhaustion of statutory prerequisites to suit "is jurisdictional when the defendant is a governmental entity." *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 515 (Tex. 2012) (citing Tex. Civ. Prac. & Rem. Code § 311.034).[3] Under the TCHRA, "an employee must file a complaint under the TCHRA within 180 days of the date she is informed of the alleged discriminatory pay decision." *Id*. at 510; *see also* Tex. Lab. Code § 21.202(a). The date is determined by "when a discriminatory employment decision is made—not when the effects of that decision become manifest in later events." *Id.* at 503. "In pay discrimination cases, the setting of an alleged discriminatory pay rate is a discrete act—that is, the only act taken with a discriminatory motive is the pay-setting decision." *Id.* at 510.

Plaintiff's own pleadings show she did not file a complaint under the TCHRA within 180 days of the alleged discriminatory pay decision. Plaintiff alleges her supervisor "set her initial eBITS salary at a lower rate than similarly situated peers" and she was "bypassed for merit raises for 2022–2023 and 2023–2024." ECF No. 1–3 at 3–5. Plaintiff alleges she was hired at eBITS in May 2023 and did not file a TWC charge until January 2024—well beyond the TCHRA's 180-day deadline to file a complaint regarding the decision setting her salary. ECF No. 1–3 at 4, 5.

Plaintiff also fails to allege facts sufficient to show she was treated less favorably than "similarly situated" persons outside her protected class. *Reyes*, 272 S.W.3d at 592. "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Ysleta ISD v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005). Here too, "threadbare recitals of the elements of a cause of action, supported by mere

---

[3] The Supreme Court of Texas held that the federal Lilly Ledbetter Fair Pay Act, which provides that "a discriminatory pay decision occurs each time a paycheck is received and not just when an initial salary decision is made," does not apply to a claim brought under the TCHRA. *Prairie View A&M Univ*, 381 S.W.3d at 503.

conclusory statements, do not suffice" to state a claim for relief. *Ruth v. Crow*, 2018 WL 2031902, at *5 (Tex. App.—Austin 2018). Insofar as Plaintiff alleges her supervisor set her initial salary at a "lower rate than similarly situated peers," ECF No. 1–3 at 3, Plaintiff fails to identify or allege any supporting facts from which the Court can reasonably infer she was treated less favorably than similarly situated employees outside her protected class(es) as to her pay, but instead merely recites this element. *See* ECF No. 1. Even if Plaintiff *had* exhausted her administrative remedies, she still did not plead facts sufficient for an adverse employment action based on pay discrimination.

Further, "[a]lthough the denial of a pay increase can be an adverse employment action," *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 (5th Cir. 2016), Plaintiff's assertion she was "bypassed for merit raises for 2022–2023 and 2023–2024" for discriminatory reasons is implausible. ECF No. 1–2 at 5. Plaintiff was not hired in eBITS until May 2023 and she resigned less than one year later, in April 2024. *Id*. at 4–5. Moreover, Plaintiff fails to identify any similarly situated comparators outside her protected class(es) who served in the same role as Plaintiff and for the same amount of time and who were given raises while Plaintiff was not. Instead, Plaintiff makes the conclusory allegation that UT discriminated against her by "treating her worse than similarly situated employees of other races" and "without disabilities." ECF No. 1–3 at 6. This bare recitation of the elements is insufficient under Texas law to "state [ ] a claim for conduct that actually violates the [TCHRA]." *Clark*, 544 S.W.3d at 770; *see also Iqbal*, 556 U.S. at 678.

### B.    Plaintiff has not established a viable retaliation claim under the TCHRA.

"To establish a prima facie case of retaliation, an employee must show: (1) she engaged in an activity protected by the TCHRA, (2) she experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action." *Clark*, 544 S.W.3d at 782. Similar elements are required for a retaliation claim under the ADA or the FMLA. *See Norsworthy v. Houston ISD*, 70 F.4th 332, 336–37 & n.4 (5th Cir. 2023) (describing similar

three-part retaliation standard under Title VII and TCHRA); *Lyons v. Katy ISD*, 964 F.3d 298, 304 (5th Cir. 2020) (ADA retaliation standard). Plaintiff fails to plead a viable claim of retaliation because she fails to sufficiently allege she experienced a material adverse employment action and fails to allege a causal link exists between any such alleged action and her protected activity.

Here, Plaintiff's allegation she filed a TWC charge satisfies the first element, but she fails to plead sufficient facts that she experienced a material adverse employment action. An adverse employment action is one that "a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Stone v. La. Dep't of Revenue*, 590 F. App'x 332, 341 (5th Cir. 2014). "[P]etty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id*. "Though a plaintiff need not . . . establish a prima facie case of retaliation at the pleading stage, he or she still must plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss." *Smith v. Kendall*, 2024 WL 4442040, at *6 (5th Cir. 2024).

The Fifth Circuit upheld the dismissal of similarly conclusory allegations of retaliation and discrimination in violation of Title VII in *Ellis v. Cargill Meat Solutions*, 2024 WL 4692024 (5th Cir. 2024). In that case, "Ellis allege[d] that he experienced harassment 'by repetitive use of racial slurs' and retaliation on the basis of race," but "his complaint d[id] not say who used these slurs, what was said, or when any harassment occurred." *Id*. at *2. The Fifth Circuit concluded that "[s]uch 'naked assertions' do not 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Iqbal*, 556 U.S. at 678). Similarly, for his claim of sexual-orientation discrimination, "Ellis allege[d] extra reprimands and discipline compared to heterosexual employees, demeaning remarks, and airing of heterosexual sex scenes in movies and television in Cargill's break rooms. But he d[id] not describe a single event or

explain how the events rose to the level of actionable discrimination." *Id*. The Fifth Circuit held that "[t]he facts alleged do not support 'more than the mere possibility of misconduct.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679); *see also Luedecke v. Tenet Healthcare Corp.*, 2015 WL 58733, at *8 (N.D. Tex. 2015) (dismissing retaliation claim where "Plaintiff has not alleged that he was terminated, reprimanded, or otherwise adversely affected" after engaging in protected activity).

In section VI of her complaint, Plaintiff includes specific factual allegations complaining of adverse actions occurring after June 2, 2023, but before she filed a TWC charge in January 2024. Section VII, which starts with Plaintiff's January 2024 TWC filing and ends with her resignation in April 2024, is where Plaintiff would presumably describe any actions purportedly taken in retaliation for the TWC filing. Yet Plaintiff does not identify in section VII (or anywhere else) any specific actions that Jacaman (or anyone else) took against her after she filed the TWC charge; instead, she alleges "Jacaman's negative treatment . . . intensified, and it became so overwhelming that she was forced to resign her eBITS position in April 2024." Plaintiff's nebulous allegation that she received "negative treatment" after filing a TWC charge does not allow the Court to reasonably infer that UT subjected her to an adverse employment action in retaliation for her TWC filing. *See Norsworthy*, 70 F.4th at 336 (upholding dismissal where complaint "offer[ed] no specifics about the forms of retaliation, harassment, taunting, and badgering to which Norsworthy was allegedly subjected"); *Lopez v. Univ. of Tex. at Austin*, 2023 WL 8445742, at *3 (W.D. Tex. 2023) (plaintiff's complaint together with her attached statement she "believed Loera disclosed Lopez's medical information with [co-workers], turned down meeting invitations, and questioned her behavior outside of work, . . . fail[ed] to explain how exactly Lopez was harassed or retaliated against," and thus were insufficient); *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) ("criticism, such as [a supervisor's] oral threats or abusive remarks, does not rise

to the level of an adverse employment action"). Plaintiff does not allege she experienced any specific adverse event after she filed her TWC charge, let alone one a reasonable employee would deem materially adverse. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Moreover, as with her TCHRA claims, Plaintiff fails to plead facts sufficient for an adverse action based on hostile work environment or constructive discharge. *See supra* III.B.1.a.

Plaintiff also fails to plead facts that, if true, would suggest UT took an adverse employment action against her *because* she filed the TWC charge. *See generally* ECF No. 1. Claims of retaliation should be dismissed where "the complaint fails to allege facts that could show a causal link between any alleged protected activities (such as filing grievances) and the alleged adverse actions (such as failures to promote)." *Norsworthy*, 70 F.4th at 337. To have "plausibly alleged the ultimate element of causation," the plaintiff "had to plead facts permitting a reasonable inference that [her employer] terminated her because of her [protected activities]." *Wright v. Union Pac. R.R. Co*., 990 F.3d 428, 433 (5th Cir. 2021).

To the extent Plaintiff alleges retaliation in the form of pay discrimination, this too is insufficient. Plaintiff alleges pay discrimination began at her initial hiring in May 2023 and also that "Jacaman's actions led to Ms. Page being bypassed for merit raises for 2022–2023 and 2023–2024 and for equity and structural adjustments." No. 1–3 at 4. However, "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *See Bell Atl. Corp.*, 550 U.S. at 555. Plaintiff's allegations of pay discrimination are conclusory, speculative, and insufficient.

Simply put, the timing of her allegations makes retaliation based on pay discrimination impossible. First, she complains her salary, which was set before she began in May 2023, was a decision made in retaliation of her protected activity, which took place in January 2024. Similarly,

Plaintiff also alleges she did not receive a merit raise for 2022–2023 in retaliation for her protected activity, but she did not begin in eBITS until May 2023, well into the fiscal year. Additionally, under UT policy[4], merit raises take effect September 1st of each year (nine months before she began her position) so she was not eligible for a merit raise for the 2022–2023 fiscal year. To be eligible for a merit raise in September, UT's policy also requires an employee to be in the position for at least six consecutive months. Therefore, regarding 2023–2024 merit raises, Plaintiff is likewise not eligible since she started less than four months prior to September 1st. Moreover, it is impossible that her pay discrimination allegations for 2022–2023 and 2023–2024 are causally connected to her protective activity since not only was she not eligible for either, but her protected activity occurred *after* the applicable time for consideration for both years.

Plaintiff also fails to provide more than a recitation of the requirement alleging she was "treated worse than similarly situated employees." ECF No. 1–3 at 2–4. *See Longoria v. Via Metro. Transit*, 2022 WL 1445396, at *10 (W.D. Tex. 2022) (plaintiff's claim "he was treated less favorably than other employees who had not requested FMLA" was insufficient where "Longoria provides no pleading or factual allegation to support this element"; "he must provide more than a formulaic recitation of this element"). Plaintiff fails to identify "similarly situated" employees whom UT purportedly treated better or provide any factual detail regarding how she was purportedly treated worse than those unidentified individuals. Unavailing are her conclusory allegations that UT "retaliate[d] against [her] because she opposed illegal discrimination against her, including by treating her worse than similarly situated employees who did not oppose

---

4 *See* UT Austin Univ. Policy Office, Univ. Compliance Servs., Handbook of Operating Procedures 5–3140 § VII.E.3. https://secure4.compliancebridge.com/utexas/public/getdoc.php?file=5-3140 (last visited Feb. 2, 2024). The Court may, and should, take judicial notice of this publicly available policy document in resolving this motion to dismiss. See, e.g., *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) ("In ruling on Rule 12(b)(6) motions, district courts [may] rely on matters of public record."); Fed. R. Evid. 201.

discrimination and by constructively discharging her" and "retaliate[ed] against [her] because she exercised her right to take protected leave under the FMLA, including by treating her worse than similarly situated employees who did not use FMLA-protected leave and by constructively discharging her."

Plaintiff fails to plead facts sufficient to "state[ ] a claim for conduct that actually violates the [TCHRA]," and thus, her TCHRA retaliation claim is barred by sovereign immunity from liability and must be dismissed. *Clark*, 544 S.W.3d at 770.

### III. Plaintiff fails to plead a viable claim for race discrimination or retaliation under Title VII.

Plaintiff also asserts claims for race discrimination and retaliation under Title VII. ECF No. 1–3 at 6. As one of the purposes of the TCHRA is to "provide for the execution of the policies of Title VII," the elements necessary to state a claim for race discrimination and retaliation are almost identical under both statutes. Tex. Lab. Code § 21.001(1); *see also Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (anti-discrimination provision of the TCHRA is "effectively identical to Title VII"); *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) ("The substantive law governing Title VII and TCHRA retaliation claims is identical.").

#### A. Plaintiff fails to allege an adverse employment action.

As noted above, the Fifth Circuit in 2023 eliminated the longstanding requirement that the adverse employment action suffered by the plaintiff must be an "ultimate employment action." *See Hamilton*, 79 F.4th at 499–502. However, even under a post-*Hamilton* standard, Plaintiff's allegations do not state an adverse employment action. Since *Hamilton*, the Fifth Circuit has recognized that an adverse employment action requires (1) employment discrimination that (2) causes the plaintiff an injury that is greater than *de minimis*. *See Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 430 (5th Cir. 2023). Moreover, reprimands, performance plans, and other

corrective actions or remedial measures are not materially adverse employment actions unless they "affect job title, grade, hours, salary, or benefits or cause a diminution in prestige or change in standing among coworkers." *Lemonia v. Westlake Mgmt. Servs., Inc.*, 2023 WL 6878915, at *7 (5th Cir. 2023) (cleaned up). Here, neither Plaintiff's resignation nor her other allegations allege a non-*de minimis* injury.

A resignation is actionable under Title VII only if it qualifies as a constructive discharge. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). "To prove a constructive discharge, a 'plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Id.* (quoting *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997)). To determine whether a reasonable person would feel compelled to resign, the Fifth Circuit considers the following factors: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Id.*

A plaintiff's failure to allege significant actions by their employer that invoke multiple factors is typically fatal to a constructive discharge claim. *See, e.g.*, *Sacks v. Tex. S. Univ.*, 83 F.4th 340, 347 (5th Cir. 2023). Sacks, a law professor, allegedly resigned after "the dean 'add[ed] time-consuming, unnecessary, and menial tasks such as rearranging the order of subjects taught in classes[,] . . . call[ing] many extra faculty meetings[,]' adding 'new methods of attendance recording,' and assigning torts professors to 'correct and edit 25 proposed Kaplan torts questions.'" *Id.* But the Fifth Circuit affirmed the dismissal of her constructive discharge claim, holding that "[e]ven if we assume these tasks are menial, Sacks's constructive discharge claim still falls short"

because "[s]he fails to allege any other factor that would make a reasonable person feel compelled to resign." *Id.* Specifically, the Sacks did "not allege a demotion, reduction in salary, reduction in job responsibilities, reassignment to work under a younger supervisor, or offers of early retirement." *Id.* (citing *Newbury v. City of Windcrest*, 991 F.3d 672, 677 (5th Cir. 2021); *Perret v. Nationwide Mut. Ins.*, 770 F.3d 336, 338-39 (5th Cir. 2014)).

Page's allegations, which clearly fail to invoke six of the seven constructive discharge factors, are similarly lacking. Like Sacks, Page "does not allege a demotion, reduction in salary, reduction in job responsibilities, reassignment . . . , or offers of early retirement." *Id.* Importantly, Page does not allege Jacaman's conduct was calculated to encourage her resignation. Page's allegations invoking—at most—one of the seven factors fail to support a constructive discharge claim. *See id.; Newbury*, 991 F.3d at 339 (allegations her superior "questioned Newbury's level of education and yelled at her in front of her colleagues," filmed her while confronting her during a second incident, and "generally treated her rudely and dismissively," fell "far short" of alleging harassment sufficient to constitute constructive discharge); *Mandujano v. City of Pharr*, 786 F. App'x 434, 437 (5th Cir. 2019) (plaintiff's allegations that he "was a victim of sex discrimination," was twice investigated by his employer "on the basis of his sex," and "could not continue his employment due to the intolerable and hostile work environment he endured from the complaints and investigations" fell "far short of plausibly alleging constructive discharge"); *McElroy v. PHM Corp.*, 622 F. App'x 388, 390 (5th Cir. 2015) (verbal threats to fire an employee do not, without more, make working conditions so intolerable that a reasonable employee would feel forced into involuntary resignation as required); *Perret*, 770 F.3d at 338–39 (no constructive discharge where employees resigned after their employer put them on performance improvement plans, which the employees believed were intended to lead to their termination and which effectively reduced their

salary by causing them to lose their bonuses); *Brown v. Bunge Corp.*, 207 F.3d 776, 782–83 (5th Cir. 2000) (affirming summary judgment for employer where employee was demoted and given reduced job responsibilities but failed to satisfy any other constructive discharge factors).

To the extent Plaintiff alleges pay discrimination as an adverse action, her pleadings are likewise deficient. First, as with the TCHRA, Plaintiff's Title VII allegations regarding pay are conclusory and fail to "raise a right of relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). Similarly as with the TCHRA, Plaintiff's Title VII pay discrimination allegations are factually insufficient in showing UT compensated employees differently for equal work.[5] *See Pearce v. Wichita Cty., City of Wichita Falls, Tex., Hosp. Bd.*, 590 F.2d 128, 132–133 (5th Cir. 1979). To show "equal work," the plaintiff must allege "jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Id*. Plaintiff offers only a recitation of the elements and conclusory statements, and fails to provide any supportive factual allegations. Finally, Plaintiff fails to plead sufficient facts as to any causal link of her allegations to her protected class.

**B.    Plaintiff fails to administratively exhaust her constructive discharge and salary-related claims.**

Title VII requires employees to exhaust administrative remedies before seeking judicial relief. *See Vielma v. Eureka Co.*, 218 F.3d 458, 462–63 (5th Cir. 2000). "One of the central purposes of the . . . charge is to put employers on notice of the existence and nature of the charges against them." *Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874, 879 (2023) (internal quotation omitted). Whether a Title VII claim was exhausted is measured "not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can

---

5 "A pay discrimination cause of action under Title VII parallels that under the [Equal Pay Act]." *Gates v. Lyondell Petrochemical Co.*, 2006 WL 8450671, *7 (S.D. Tex. [Houston] 2006), aff'd, 227 F. App'x 409 (5th Cir. 2007).

reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)); *see also Sheffield v. Leggett & Platt, Inc.*, 2008 WL 3842903 (N.D. Miss. 2008) (failure to include an allegation in the EEOC charge deprives the District Court of jurisdiction over that claim). The court engages in a "fact-intensive analysis of the statement given by the plaintiff in the [ ] charge," *Loomis v. Starkville Miss. Public Sch. Dist.*, 150 F.Supp.3d 730, 745 (N.D. Miss. 2015), and the question is whether the employee included sufficient facts to put the employer on notice of the claims. *See Manning*, 332 F.3d at 879. Here, Plaintiff's constructive discharge claims and her salary-related claims are barred because Plaintiff failed to exhaust them.

Plaintiff said nothing about constructive discharge in her TWC charge, which Plaintiff filed while she was still working in eBITs. *See* App. A.[6] Accordingly, her complaints of race– and disability–related mistreatment by Jacaman could not reasonably have been expected to lead to a TWC or EEOC investigation into constructive discharge. *See, e.g., Stone*, 590 F. App'x at 337–38 (EEOC charges that included discrimination, harassment, and retaliation claims failed to administratively exhaust constructive discharge claim when, "[a]t the time she filed her 2010 EEOC charge[, Stone] was still employed with the Department" and "Stone did not allege any facts in her 2010 EEOC charges that reasonably encompass her later claims for constructive discharge"); *Brown v. Prentiss Regional Hosp.*, 2013 WL 610520 (S.D. Miss. 2013) ("Plaintiff did not allege in her EEOC charge that she had resigned her position, much less that she felt compelled to do so because of her working conditions" and "she did not allege any 'aggravated factors' which

---

6. The Fifth Circuit follows the well-established rule that a district court may refer to documents attached to a motion to dismiss without converting the motion to one for summary judgment if the documents are referred to in the plaintiff's complaint and central to her claims. *See, e.g., Sligh v. City of Conroe*, 87 F.4th 290, 297 (5th Cir. 2023) (citing *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016)). District courts in the Western District follow this practice as well. *See, e.g., Big Thirst, Inc. v. Donoho*, 657 F.Supp.3d 914, 922 (W.D. 2023). Plaintiff's TWC charge is cited in her Petition and is central to her claims, as she alleges UT retaliated against her for filing it.

would support a constructive discharge claim"). *Cf. Ellzey v. Espy*, 1995 WL 6277, *4 (E.D. La. 1995) (a constructive discharge claim could reasonably be expected to grow from a charge alleging discrimination and attempts to force the plaintiff to retire); *Frances v. Nexion Healthcare at McKinney, Inc.*, 2014 WL 2757680, *4 (E.D. Tex. 2014) (a constructive discharge claim could reasonably be expected to grow from a charge alleging plaintiff was advised "he could either be demoted or terminated immediately").

Similarly unexhausted are Plaintiff's pay discrimination allegations. *See* ECF No. 1–3, at 3; *supra* Part II.B. First, Plaintiff's TWC charge said nothing whatsoever about her salary, raises, or equity/structural adjustments. *See* App. A. Plaintiff also affirmatively disclaimed any complaint about her initial salary by complaining the "earliest date" discrimination took place was June 1, 2023, a month *after* her salary was set and she began working in eBITS. Because her EEOC charge would cause an investigation of her experience *after* June 2, 2023, it is not reasonable to expect the investigation to encompass time prior to June 2, 2023. *See Spears v. DSM Copolymer, Inc.*, 103 F.3d 124, 124 (5th Cir. 1996) (charge allegation of failure to promote based on race did not direct the EEOC to investigate claim of discrimination in pay found in plaintiff's complaint). Likewise, a complaint regarding her pay or that she did not receive merit raises (in a position she held for less than a year) cannot be reasonably expected from a charge that there were "changes to her terms and conditions," especially considering her salary was set prior to that time and that regarding her pay and raises, she complains there was no change. *See Pacheco*, 448 F.3d at 789; *Nuñez-Renck v. IBM Corp.*, 2024 WL 4995572, at *5–6 (N.D. Tex. 2024) ("[B]ecause Nuñez's pay discrimination allegations plainly are not sufficiently like or related to the [EEOC] Charge's bullying allegations, her pay discrimination claims are not within 'the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of

discrimination.'") (quoting *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 451 (5th Cir. 1983));

*Gates v. Lyondell Petrochemical Co.*, 2006 WL 8450671, *7 (S.D. Tex. [Houston] 2006), *aff'd*,

227 F. App'x 409 (5th Cir. 2007) (Gates' failure to promote allegations in her EEOC charge cannot

be said to be reasonably related to her pay discrimination claims). *Cf. Loomis*, 150 F.Supp.3d at

744–745 (claims of salary discrimination are reasonably expected to grow out of a charge claiming

two lesser qualified males received raises while plaintiff did not). An investigation into her pay

does not reasonably stem from her claims or the examples she includes: "increased scrutiny, [ ]

being excluded from management meetings, and staff meetings relevant to my department and

subordinates" or her being "disciplined for absences." *See* App. A. Indeed, an investigation into

her pay is an investigation into a completely different set of facts. As such, Plaintiff's constructive

discharge and pay-related claims must be dismissed for failure to exhaust administrative remedies.

## CONCLUSION

Under the TCHRA, Title VII, and the ADA, Plaintiff fails to plead facts that, if true, would

sufficiently allege she suffered an adverse employment action or identified similarly situated

persons outside of her protected class who were treated more favorably. Moreover, she fails to

allege she has a qualifying disability as required for her claims of discrimination under the ADA.

Her claims regarding pay discrimination are untimely and, pursuant to Title VII, she fails to allege

that she has exhausted her administrative remedies. Similarly, Plaintiff also fails to allege

retaliation because she fails to plead facts that, if true, would sufficiently allege she experienced a

material adverse employment action or that there is a causal link between a protected activity and

an adverse action. Finally, she fails to allege how she was denied use of FMLA. Plaintiff's

threadbare recitals and conclusory allegations are insufficient to state valid claims.

For the foregoing reasons, UT respectfully asks the Court to grant its Motion for Judgment

on the Pleadings and grant such further relief to which it may be entitled.

Respectfully submitted.

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

/s/ *Terri M. Abernathy*

**TERRI M. ABERNATHY**
Assistant Attorney General
Texas Bar No. 24062894
OFFICE OF THE ATTORNEY GENERAL
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone (512) 936-0562
Division Fax (512) 320-0667
Email terri.abernathy@oag.texas.gov

*Counsel for Defendant,*
*The University of Texas at Austin*

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2025, a true and correct copy of the foregoing document was served via the Court's CM/ECF system upon:

Matt Bachop
8140 N. Mopac Expy, Suite 4-250, Austin, Texas 78759
Phone (512) 474-6200
Fax (512) 474-7896
mbachop@ddollaw.com

*Counsel for Plaintiff, Nicolette D. Page*

/s/ *Terri M. Abernathy*

**TERRI M. ABERNATHY**
Assistant Attorney General

21