IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

| | |
|---|---|
| NICOLETTE D. PAGE,<br>　　Plaintiff, | §<br>§<br>§ |
| v. | §     CASE NO. 1:24-cv-01249-DAE |
| | § |
| UNIVERSITY OF TEXAS AT AUSTIN,<br>　　Defendant. | §<br>§<br>§ |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

TO THE HONORABLE SENIOR UNITED STATES DISTRICT JUDGE:

Plaintiff files this response in opposition to Defendant's Motion for Judgment on the Pleadings (Document 15, filed 3/14/25).

## I.   INTRODUCTION

Defendant's Motion argues that Plaintiff's live pleading is deficient in several respects. Most of the alleged deficiencies have been resolved in Plaintiff's First Amended Complaint, which she sought leave to file earlier today, rendering most of the arguments in Defendant's motion moot. The remaining arguments correctly note that small portions of Plaintiff's claims may not proceed to trial.

## II.   ARGUMENTS AND AUTHORITIES

**A.   Plaintiff has dismissed her ADA claims.**

Defendant first correctly notes that it has sovereign immunity from claims under Title I of the ADA. *Mot.* at 2–3. Plaintiff has thus removed such claims from her First Amended Complaint. Plaintiff has added identical claims under the Rehabilitation Act of 1973, which uses identical standards to Title I of the ADA. Defendant is not immune from claims for disability discrimination and retaliation brought under the Rehabilitation Act.

B.  **Plaintiff invokes the FMLA's family-care provision.**

Defendant next argues that it has immunity from claims under the FMLA's self-care provision. *Mot.* at 2–3. Plaintiff has made clear in her First Amended Complaint that she invokes the family-care provision of the FMLA in connection with her FMLA retaliation claim.

C.  **Plaintiff has identified qualifying disabilities.**

Defendant goes on to claim that "nowhere in her pleadings does Plaintiff allege she suffered from a condition that qualifies as a disability under the TCHRA or that her supervisor regarded her as having a qualifying disability." *Mot.* at 5. Plaintiff's First Amended Complaint identifies multiple qualifying conditions and explains how Ms. Page has a record of having disability and was regarded by Defendant as having a disability.

D.  **Plaintiff has pleaded a viable constructive-discharge claim.**

Defendant next urges that Ms. Page "fails to allege sufficient facts to state a valid claim" for constructive discharge, asserting that Ms. Page's allegations only invoke one of the six applicable factors and that Ms. Page did not properly plead that she was subjected to a hostile work environment. *Mot.* at 5–7. These arguments lacked merit even looking only at the current pleading, but Plaintiff's First Amended Complaint shows that at least three of the factors (reduction in job responsibilities, reassignment to menial or degrading work, and badgering and harassment calculated to encourage resignation) apply to Ms. Page's constructive discharge. The First Amended Complaint also sets out how the hostile work environment to which Ms. Page was subjected changed the terms, conditions, and privileges of her employment and was motivated by discriminatory animus, including identifying multiple comparators outside the protected classes who were treated better than Ms. Page was.

E.  **Plaintiff's claims under Chapter 21 do not encompass the initial setting of her eBITS salary.**

Defendant correctly notes that administrative charges alleging violations of Chapter 21 of the Texas Labor Code must be filed within 180 days of the challenged action and that Ms. Page's administrative complaint in this case was filed more than 180 days after the initial setting of her eBITS salary. *Mot.* at 8. However, Ms. Page's claims under Title VII, which has a 300-day exhaustion deadline, and the Rehab Act, which has no exhaustion requirement, do reach the setting of her initial salary.

F.  **Plaintiff has pleaded sufficient facts to support her retaliation claims.**

Defendant's challenge to Ms. Page's retaliation claims starts by repeating the argument that Ms. Page has not sufficiently pleaded that she suffered an adverse employment action. *Mot.* at 10–12. Ms. Page has addressed this argument in Section II.D above. Although Defendant claims that Ms. Page "does not allege she experienced any specific adverse event after she filed her TWC charge, let alone one a reasonable employee would deem materially adverse," *Mot.* at 12, Ms. Page has pleaded that she was subjected to a hostile work environment and constructively discharged, and that pleading is adequate for the reasons set out above.

Defendant next argues that Ms. Page has not sufficiently pleaded that her protected activity caused any action by Defendant that would dissuade a reasonable worker from making or supporting a charge of discrimination. *Mot.* at 12. But Ms. Page alleges that her supervisor's mistreatment of her intensified after she filed her charge of discrimination and that the actions

[3]

taken against her[1] "became so overwhelming that Ms. Page was forced to resign her eBITS position in April 2024," three months after she filed her charge of discrimination. Ms. Page also alleges that specifically identified similarly situated employees who did not complain of discrimination were treated more favorably than she was. The pleadings about temporal proximity between her protected activity and intensified negative treatment, along with disparate treatment, are more than enough to satisfy Ms. Page's pleading burden on her retaliation claims.

G.    **Plaintiff's retaliation claims do not encompass the initial setting of her eBITS salary.**

Defendant next correctly urges that because Ms. Page engaged in protected activity after her eBITS salary was set, the setting of her eBITS salary could not have been done in retaliation for engaging in the protected activity. *Mot.* at 12–13. As noted above, Ms. Page's discrimination claims under Title VII and the Rehab Act do reach the setting of her initial salary.

H.    **Plaintiff has pleaded viable Title VII claims.**

Defendant begins its attack on Ms. Page's Title VII claims by again repeating the argument that Ms. Page has not sufficiently pleaded that she suffered an adverse employment action, *Mot.* at 14–17, an argument that is addressed in Section II.D above.

Next, Defendant claims that Ms. Page failed to exhaust her administrative remedies on certain aspects of her Title VII claims. Although Defendant acknowledges that the determination of which claims have been exhausted is based on "the EEOC investigation which can reasonably

---

[1] These actions include "punishment for using FMLA leave to care for her father, racist comments, micromanagement, second-guessing, removal of managerial responsibilities, refusal to provide a flexible work arrangement like what is provided to other workers or other reasonable accommodation, and exclusion from meetings calculated to encourage her resignation"; "punish[ing] Ms. Page for attempting to use the University's Staff Tuition Assistance Program and ultimately den[ying] her access to that program and the policy allowing employees to take University course work during the workday[,] which made it more difficult for Ms. Page to succeed in her MBA program while working in eBITS"; and "[r]emoving the schedule flexibility that was a key part of the understanding that led Ms. Page to accept the eBITS position, without justification."

[4]

be expected to grow out of the charge of discrimination," because "the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation," *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465–66 (5th Cir. 1970), Defendant nevertheless focuses exclusively on the words of the charge and does not even make any arguments about the scope of the investigation that could reasonably be expected to grow out of that charge. *Mot*. at 17–20.

In making this misguidedly charge-focused exhaustion argument, Defendant claims that Ms. Page's constructive-discharge claim was not exhausted because it was not mentioned in the charge, even though Defendant acknowledges that the charge was filed while Ms. Page was still working in eBITS. *Mot.* at 18. The Fifth Circuit analyzed a similar argument in *Everett v. Central Mississippi, Inc. Head Start Program*, 444 Fed. Appx. 38, 45 (5th Cir. 2011), a case in which the plaintiff "did not file a new Charge of Discrimination with the EEOC challenging her June 2009 termination," which occurred during the investigation of her original charge, "thereby raising the issue of whether she failed to exhaust her administrative remedies as to her claim of retaliation based on that termination." The Court began by noting that "a Title VII suit 'may include allegations like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.'" *Id.* (quoting *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008)). Considering that principle, the Fifth Circuit decided that because the plaintiff's "retaliation claim has not changed in this suit other than the addition of the later-occurring adverse employment action," she had exhausted her administrative remedies on the retaliation claim challenging her termination. *Id.*

This case is similar. Ms. Page's constructive-discharge claim arises out of the same nucleus of facts included in her charge of discrimination. Her claim has not changed in this suit other than the addition of the later-occurring adverse employment action. In addition, Ms. Page notified the EEOC of her termination on the same day it happened, telling the EEOC that she believed that she had been constructively discharged. *Exhibit 1*, *March 22, 2024 submission to EEOC*. An EEOC investigation should reasonably be expected to include a termination based on the same set of operative facts that are included in the charge, especially when the EEOC is immediately notified about the termination. As such, Ms. Page exhausted her administrative remedies on her constructive discharge.

Defendant next urges that Ms. Page failed to exhaust the allegations related to the discriminatory setting of her pay because they are not mentioned within the four corners of her charge. *Mot.* at 19–20. However, Ms. Page's claims about the setting of her salary were addressed by both parties during the EEOC's investigation. This issue was referred to by Defendant in its position statement to the EEOC, in which Defendant falsely claimed that Ms. Page "was hired at a starting salary 21% higher than her predecessor in the role." *Exhibit 2, Defendant's position statement to EEOC*, at 2. Ms. Page pointed out to the EEOC the truth, that her salary was lower than her white predecessor even though Ms. Page was more qualified. *Exhibit 3*, *March 15, 2024 submission to EEOC*, at 2–3; *Exhibit 4*, *March 19, 2024 submission to EEOC*. An EEOC investigation should reasonably be expected to include all issues briefed by both parties and included in the employer's position statement. As the Fifth Circuit has made clear, both parties taking a position on a specific claim for the EEOC to investigate "creates a strong inference that such a claim was presented" in the administrative process. *Clark v. Kraft Foods, Inc.*, 18 F.3d

[6]

1278, 1280 (5th Cir. 1994). Accordingly, Defendant's motion seeking judgment on the pleadings on Ms. Page's pay claims should be denied.

### III.   CONCLUSION AND PRAYER

For these reasons, Ms. Page requests that the Court deny Defendant's motion on all grounds except those noted above.

*Respectfully submitted,*

DEATS DURST & OWEN, PLLC

/s/ Matt Bachop
Matt Bachop
TBN: 24055127
mbachop@ddollaw.com
8140 N Mopac Expy, Suite 4-250
Austin, Texas 78759
(512) 474-6200
FAX (512) 474-7896

Attorney for Plaintiff

### CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served on counsel for Defendant, Terri Abernathy, Terri.Abernathy@oag.texas.gov, OFFICE OF THE ATTORNEY GENERAL, P.O. Box 12548, Capitol Station, Austin, Texas 78711-2548, by the Court's CM/ECF system on this 4th day of April, 2025.

/s/ Matt Bachop
Matt Bachop