

**UNIVERSITY RISK AND COMPLIANCE SERVICES**
DEPARTMENT OF INVESTIGATION AND ADJUDICATION

*100 W. Dean Keeton St., SSB 4.102 • Mail Code D9250 • Austin, TX 78712 • (512) 471-3701*
*dia.compliance.utexas.edu • dia@austin.utexas.edu*

March 8, 2024

**EXHIBIT 2**

**CONFIDENTIAL**
**VIA PORTAL**

Equal Employment Opportunity Commission (EEOC)
Attn: Gilberto Rodriguez-Torres
5410 Fredericksburg Road, Suite 200
San Antonio, TX 78229
Email: gilberto.rodriguez-torres@eeoc.gov

RE:   Nicolette Page v. The University of Texas at Austin
         EEOC Charge No.: 451-2024-01374

Mr. Rodriguez-Torres:

Pursuant to your request, The University of Texas at Austin ("the University") submits the following position statement in response to the Equal Employment Opportunity Commission ("Commission") Charge No. 451-2024-01374 (the "Charge"), dated January 18, 2024, solely for the purpose of aiding the Commission in the investigation of this Charge. This position statement is not intended to raise all legal theories or defenses that ultimately may be raised in this matter, and the University reserves the right to offer additional facts as may be discovered upon further investigation.

This statement is prepared by Calysta L. Lantiegne, J.D., investigator, Department of Investigation and Adjudication (DIA). Ms. Lantiegne may be contacted by mail at 100 W. Dean Keeton St., SSB 4.102, Mail Code D9250, Austin, Texas 78712; by phone at 512-471-3701; or by email at calysta.lantiegne@austin.utexas.edu. Dr. Jay C. Hartzell serves as president of The University of Texas at Austin, an employer of more than 15,000 employees. The University of Texas at Austin is a component institution of The University of Texas System. James Milliken serves as chancellor of The University of Texas System.

In her Charge of discrimination, Nicolette Page ("Complainant"), enterprise application support manager, Enterprise Business Information Technology Solutions (eBITS), alleges race and disability discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990, as amended, which led to changes in the terms and conditions of her employment. **Exhibit I, EEOC Charge.** Specifically,



UNIVERSITY RISK AND COMPLIANCE SERVICES
DEPARTMENT OF INVESTIGATION AND ADJUDICATION

*100 W. Dean Keeton St., SSB 4.102 • Mail Code D9250 • Austin, TX 78712 • (512) 471-3701*
*dia.compliance.utexas.edu • dia@austin.utexas.edu*

Complainant alleges that after she disclosed her disability, the terms and conditions of her employment changed, including increased scrutiny and being excluded from meetings. *Id.* **at p. 1.**

Complainant additionally alleges that she has been disciplined for absences despite these absences being approved under the Family Medical Leave Act (FMLA) and that the proper procedures for approving her leave were not followed. *Id.*

The University denies these allegations. As detailed below, Complainant's allegations are meritless, conclusory, and are devoid of any basis in fact. Complainant has not suffered an adverse employment action and is unable to meet her prima facie burden for any of her claims. The University requests that the Commission dismiss Complainant's Charge and issue a No Cause finding.

    I.    <u>**Factual Background**</u>

On August 5, 2019, Complainant was hired by the University as a billing and insurance manager, a position she held until May 2023. *Id.* On January 18, 2023, Complainant was approved for 480 hours of FMLA leave through January 2024. **Exhibit II, January 2023 FMLA Award Letter.** The awarded leave was for intermittent use up to four times per week, one day per occurrence. *Id.*

On May 22, 2023, Complainant internally transferred within the University to her current position, and Mark Jacaman, director of campus support, became her manager. **Exhibit III, Manager History.** Jacaman made the final decision to hire Complainant. **Exhibit IV, Statement of Mark Jacaman, at p. 1, ¶ 3.** Complainant was hired at a starting salary 21% higher than her predecessor in the role. *Id.*

Before Complainant started, Jacaman asked Complainant's direct reports, and other staff who would be interacting with Complainant frequently, to help her acclimate to her new role by meeting with her to discuss their functions within the department. **Exhibit V, Onboarding Collaboration Email.** Jacaman forwarded the collaboration request email to Complainant on May 12, 2023, and wrote, in part, "These meetings are really the tip of the iceberg." *Id.*

Jacaman and LeeAnn Gibson, assistant director, eBITS, had agreed before Complainant was onboarded to limit the meetings she had to attend to allow her to transition and not get too overwhelmed. **Exhibit IV at p. 1, ¶ 4.** According to Jacaman, the same strategy had been used with Complainant's predecessor. *Id.* Additionally, Jacaman and Gibson chose to limit meetings that would not have an impact on Complainant's ability to perform her job. *Id.*

Complainant alleges that on or about June 2, 2023, she disclosed her disability to Jacaman. **Exhibit I.** On that date, Complainant sent Jacaman an out-of-office notice for September 26 to



**UNIVERSITY RISK AND COMPLIANCE SERVICES**
DEPARTMENT OF INVESTIGATION AND ADJUDICATION

*100 W. Dean Keeton St., SSB 4.102 • Mail Code D9250 • Austin, TX 78712 • (512) 471-3701*
*dia.compliance.utexas.edu • dia@austin.utexas.edu*

September 27, 2023, and wrote "MDAnderson Houston" in the notes for the request.[1] **Exhibit VI, September 2023 Out-of-Office Request.**

Shortly after she was hired, Complainant disclosed to Jacaman that she had cancer twice — in her childhood and, again, when she was pregnant with her second child — but did not tell him of any current conditions. **Exhibit IV at p. 1, ¶ 7.** Jacaman did not have any reason to believe that Complainant was disabled. *Id.* Moreover, it was Jacaman's understanding that the September 2023 out-of-office request was for Complainant to attend an annual checkup. *Id.* at p. 1, ¶ 8. On June 5, 2023, Complainant disclosed to Jacaman that her previous approval for FMLA was to care for her father. *Id.* at p. 1, ¶ 6.

On August 10, 2023, Complainant received a revised designation notice for FMLA leave. **Exhibit VII, August 2023 Revised FMLA Award Letter.** Complainant was approved for 398 hours of leave from July 7, 2023, to January 2, 2024. *Id.* The week of September 4, 2023, Jacaman met with Angela Schoolar, director, HR Business Partnerships, to discuss how to properly address any performance issues with Complainant. **Exhibit VIII, Jacaman Communication with HR.** During their discussion, Schoolar recommended that Jacaman give Complainant a New in Position Review. *Id.* New in Position Reviews are given to employees who transfer to a new position within the University. **Exhibit IX, New in Position Review Policy.** While it is recommended that reviews are done at 45, 90, and 135 days after the employee has transferred in, it is not required. *Id.*

On September 12, 2023, Jacaman met with Complainant to discuss her work schedule, as Complainant had been scheduling her lunch hour at the end of the day, so that she left at 3:30 p.m., without consulting with Jacaman. **Exhibit X, October 2, 2023, New in Position Review, at p. 9.** Jacaman requested that Complainant take her lunch during the general range of time as the rest of the team, to which she eventually agreed after first indicating that the time change would not work with her husband's schedule. **Exhibit VIII.**

On October 2, 2023, Jacaman issued Complainant the New in Position Review. **Exhibit X.** Per Jacaman, the stated purpose of the review was to "realign expectations" for Complainant's role. *Id.* at p. 1. Jacaman made it clear to Complainant that the review was unrelated to her FML use, per advice by human resources personnel. **Exhibit IV at p. 2, ¶ 9.**

Jacaman provided Complainant with four examples of when she had not met expectations in the performance of her role. **Exhibit X at pp. 4–9.** The third example involved Complainant's having responded to an email to a campus partner with a solution to their issue that the campus partner had already discovered on their own and communicated to Complainant and others on the email thread hours before. *Id.* at p. 8. Complainant, who provided her responses to the review feedback

---

[1] MD Anderson is a cancer center located in Houston, Texas. *See* www.mdanderson.org.



**UNIVERSITY RISK AND COMPLIANCE SERVICES**
DEPARTMENT OF INVESTIGATION AND ADJUDICATION

*100 W. Dean Keeton St., SSB 4.102 • Mail Code D9250 • Austin, TX 78712 • (512) 471-3701*
*dia.compliance.utexas.edu • dia@austin.utexas.edu*

on October 9, 2023, attributed her delayed response to being on FML the morning the email was received. *Id.* **at pp. 1 and 8–9.**

In the fourth example, Jacaman referred to the discussion they had previously regarding Complainant's changing her lunch schedule and expressed his appreciation that she had made said changes. *Id.* **at p. 9.** Jacaman indicated the conversation about her taking lunch at the end of the day was intended to address business needs and Complainant's availability, but nonetheless Complainant's work calendar had two days per week blocked off during work time for her to work on her MBA program. *Id.*

In her response, Complainant indicated that during their September 12 conversation, she had explained to Jacaman that she had decided foregoing her lunch "seemed a more pragmatic approach than taking full days off intermittently." *Id.* **at p. 9.** Complainant also provided a time entry from September 12, 2023, which showed that when she submitted her time, she had written that she had come into work early and worked through lunch. *Id.* **at p. 10.** The entry is devoid of any mention of FML.[2] *Id.* Complainant explained that the calendar entry referenced by Jacaman, which appeared to indicate she was working on her MBA during work time, was a personal reminder only and not to be interpreted as her being unavailable during that time. *Id.* **at p. 11.**

In a follow-up meeting, Complainant told Jacaman that she did not want to meet with him to further discuss the New in Position Review unless a third party was present. **Exhibit IV at p. 2, ¶ 11.** Jacaman was out of the office on several dates between October 5 to October 19, 2023, due to his father-in-law's illness and subsequent death. *Id.* **at p. 2, ¶ 12.** Upon his return to the office, Jacaman was told by his supervisor that Complainant felt "unsafe," so he has limited his interactions with her despite the hindering effect it has had on his ability to supervise her. *Id.*

On October 30, 2023, Complainant filed a complaint with DIA in which she alleged that Jacaman had discriminated against Complainant based on her disability, race, and gender. **Exhibit XI, DIA Closure Memorandum, at p. 1.** Complainant also claimed Jacaman had retaliated against her for using FML. *Id.*

In December 2023, Jacaman failed to timely approve a couple of Complainant's time-off requests. Jacaman's untimely failure to approve, however, did not prevent Complainant from actually taking the requested time off. **Exhibit IV at p. 2, ¶ 13.** In January 2024, Jacaman acknowledged the oversight to Complainant and noted that they needed to have a discussion on how to prevent such oversights from occurring in the future. *Id.* On January 9, 2024, Jacaman was told by his supervisor that Complainant would not attend one-on-one meetings with him, so he has been unable to have any discussions with Complainant about preventing issues from reoccurring. *Id.*

---

[2] It is the employee's responsibility to properly identify FML leave in Workday (the HR software used by the University) when taking leave due to an FMLA-related event such as medical appointments. **Exhibit II at p. 2.**



UNIVERSITY RISK AND COMPLIANCE SERVICES
DEPARTMENT OF INVESTIGATION AND ADJUDICATION

*100 W. Dean Keeton St., SSB 4.102 • Mail Code D9250 • Austin, TX 78712 • (512) 471-3701*
*dia.compliance.utexas.edu • dia@austin.utexas.edu*

Based on information received during its investigation, DIA determined there was insufficient evidence to show a violation of the University's Nondiscrimination and Family Medical Leave policies, HOP 3-3020 and HOP 5-4310, respectively. **Exhibit XI at p. 1.** The evidence indicated that Complainant had not suffered discrimination or retaliation, as all her FML absence requests had been approved, there was no demonstrated materially adverse harm, and no evidentiary nexus between the ratings she had received in her New in Position Review and her race or disability. *Id.* **at p. 2.** DIA closed the matter on February 6, 2024. *Id.* **at pp. 1 and 3.**

On February 8, 2024, Complainant appealed DIA's determination to the University's chief compliance officer, Jeff Graves. **Exhibit XII, Appeal and Response to Appeal, at p. 1.** On February 19, 2024, Graves issued his denial of Complainant's appeal. *Id.* **at pp. 2–3.** Graves agreed that there was insufficient evidence to show discrimination, retaliation, or that Complainant had experienced a materially adverse impact on her employment. *Id.* **at p. 2.**

## II.    The University's Position Statement

The University is an equal opportunity employer and does not discriminate based on race, color, sex, pregnancy, gender, gender identity, sexual orientation, gender expression, religion, age, national origin, ethnicity, veteran status, disability, genetic information, military status, or any other legally protected basis. **Exhibit XIII, University Nondiscrimination Policy.** In addition, the University strictly prohibits retaliation against individuals who file discrimination complaints, participate in discrimination investigations, or otherwise engage in a protected activity. *Id.* Additionally, "Employees who exercise their rights to family and medical leave are entitled to do so without restraint and shall not be subject to discharge of discrimination by the University." **Exhibit XIV, University Family and Medical Leave Policy, at p. 4.**

**Complainant cannot establish a prima facie case of disability discrimination.**

To establish a prima facie case of disability discrimination under the ADA, Complainant must prove she: (a) is disabled, has a record of having a disability, or is regarded as disabled; (b) is qualified for her job; (c) was subjected to an adverse employment action on account of her disability or the perception of her disability; and (d) was replaced by or treated less favorably than non-disabled employees.[3]

For the purposes of this position statement only, the University stipulates that Complainant has a disability and is qualified for her position. Complainant, however, is unable to establish the remaining elements to support a prima face case of disability discrimination.

---

[3] Drechsel v. Liberty Mutual Ins. Co., 695 F. App'x 793, 798 (5th Cir. 2017) (quoting E.E.O.C. v. Chevron Phillips Chem. Co., LP, 570 F.3d 606, 615 (5th Cir. 2009)).



UNIVERSITY RISK AND COMPLIANCE SERVICES
DEPARTMENT OF INVESTIGATION AND ADJUDICATION

100 W. Dean Keeton St., SSB 4.102 • Mail Code D9250 • Austin, TX 78712 • (512) 471-3701
dia.compliance.utexas.edu • dia@austin.utexas.edu

*Complainant has not suffered an adverse employment action.*

To establish that she suffered an adverse employment action, Complainant must show discrimination with respect to the "terms, conditions, or privileges of employment."[4] While the Fifth Circuit has not stated the precise level of workplace harm that a plaintiff must show to establish this element, it cautions that Title VII "does not permit liability for de minimis workplace trifles."[5]

Complainant has alleged that after she disclosed her disability, Jacaman put her under "increased scrutiny" and began to exclude her from management meetings, and staff meetings relevant to her department and subordinates. **Exhibit I.** Complainant has failed to articulate how these actions affected her job.[6] Complainant has not alleged that her job position or salary changed. As to the meetings, Jacaman admits there was a decision made before Complainant had even onboarded that she would not be included in certain meetings at first to allow her to get familiar with her new role. **Exhibit IV at p. 1, ¶ 4.** Complainant was, however, included in numerous other meetings, with the end goal of helping her with the familiarization process. **Exhibit V.** Moreover, once she brought her concerns to HR about her exclusion from meetings, the issue was immediately fixed. **Exhibit XI at p. 2.**

**Complainant's race discrimination claim is without merit.**

To establish a prima facie case of race discrimination, Complainant must show: "(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated."[7]

As demonstrated above, Complainant cannot show she suffered an adverse employment action. Complainant also cannot establish that others similarly situated outside her protected classes were treated more favorably. "'Similarly situated' employees are employees who are treated more favorably 'under nearly identical' circumstances."[8] "The 'nearly identical' standard is a stringent standard–employees with different responsibilities, different supervisors, different capabilities, different work rule violations or different disciplinary records are not considered to be 'nearly identical.'"[9]

---

[4] Hamilton v. Dallas Cnty., 79 F.4th 494, 506 (5th Cir. 2023).
[5] *Id.* at 505.
[6] *See* Lemonia v. Westlake Mgmt. Servs., Inc., No. 22-30630, 2023 WL 6878915, at *5 (5th Cir. Oct. 18, 2023) (finding no adverse employment action when a new position was not held in lower regard by co-workers and the new position was not less desirable than the previous position).
[7] Willis v. Coca Cola Enterprises, Inc., 445 F.3d 413, 420 (5th Cir. 2006) (citing Rutherford v. Harris Co., Tex., 197 F.3d 173, 184 (5th Cir. 1999)).
[8] Beltran v. Univ. of Tex. Health Sci. Ctr. at Houston, 837 F. Supp. 2d 635, 642 (citing Lee v. Kan. City S. Ry. Co., 574 F.3d 253, 259–60 (5th Cir. 2009)).
[9] *Id.* (citing Lee, 574 F.3d at 259–60).



UNIVERSITY RISK AND COMPLIANCE SERVICES
DEPARTMENT OF INVESTIGATION AND ADJUDICATION

*100 W. Dean Keeton St., SSB 4.102 • Mail Code D9250 • Austin, TX 78712 • (512) 471-3701*
*dia.compliance.utexas.edu • dia@austin.utexas.edu*

Complainant's Charge is devoid of any allegation that an individual outside of her race category (Black) was treated more favorably than she was. **Exhibit I.**

**The University did not retaliate against Complainant.**

To establish a prima facie case of FMLA retaliation, Complainant must show: (1) she was protected under the FMLA, (2) she suffered an adverse employment action, and (3) the adverse action was taken because she sought protection under the FMLA.[10] The University does not dispute that Complainant was protected under the FMLA. Complainant, however, cannot establish that she has suffered an adverse employment action as a result of her seeking protection under the FMLA.

Complainant alleges that she was "disciplined" for FMLA-covered absences, and that proper procedures for approving her leave were not followed by Jacaman. **Exhibit I.** Complainant does not specify what type of disciplinary action she allegedly received. Presuming, arguendo, Complainant is referring to the New in Position Review, it is not a form of disciplinary action; rather, it is a tool designed to be used to provide an employee with feedback, reiterate position expectations, and assess performance. **Exhibit X at p. 2.** A low performance evaluation alone is not an adverse employment action.[11]

**Complainant's FMLA claim should be dismissed because it is outside the Commission's jurisdiction, the University has sovereign immunity, and the claim is without merit.**

Complainant's FMLA allegations are outside the Commission's jurisdiction.

In her Charge, Complainant asserts that the proper approval procedures were not followed for her FMLA leave requests. **Exhibit I.** The Commission has previously held it does not have jurisdiction to investigate FMLA claims as "the FMLA process falls under the regulatory ambit of the Department of Labor, not the Commission."[12] Therefore, an allegation of an FMLA violation, by itself, does not state a claim under the EEOC's regulations and must be dismissed.[13]

---

[10] Ion v. Chevron, USA, Inc., 731 F.3d 379, 390 (5th Cir. 2013) (citing Mauder v. Metro. Transit Auth. of Harris Cnty., Tex., 446. F.3d 574, 583 (5th Cir. 2006)).
[11] Johnson v. McDonald, 623 F. App'x 701, 703 (5th Cir. 2015) (citing Douglas v. DynMcDermott Petroleum Operations Co., 144 F.3d 364, 373 n. 11 (5th Cir. 1998)).
[12] Hite v. Potter, EEOC Appeal No. 0120102365, 2010 WL 3826491 at *3 (Sept. 10, 2010).
[13] Id. at *3–4.



UNIVERSITY RISK AND COMPLIANCE SERVICES
DEPARTMENT OF INVESTIGATION AND ADJUDICATION

*100 W. Dean Keeton St., SSB 4.102 • Mail Code D9250 • Austin, TX 78712 • (512) 471-3701*
*dia.compliance.utexas.edu • dia@austin.utexas.edu*

<u>The University has sovereign immunity for claims related to the FMLA's self-care provision</u>.

Complainant has been awarded FMLA twice — once for the care of her father and more recently for her own care. To the extent that any of Complainant's claims stem from her use of FMLA for self-care, those claims are barred by the University's entitlement to sovereign immunity.[14]

<u>Complainant's FMLA interference claim is without merit.</u>

Even if the Commission had jurisdiction and self-care claims were not barred by immunity, Complainant's interference claim is without merit. To make a prima facie case of interference, a plaintiff must demonstrate: (1) she was an eligible employee; (2) her employer was subject to FMLA requirements; (3) she was entitled to leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) her employer denied her the benefits to which she was entitled under FMLA.[15]

For the purposes of this position statement only, the University does not contest the first four prongs of a prima facie case of FMLA interference. Complainant, however, cannot establish the fifth required factor, as none of Complainant's FMLA leave requests have been denied. **Exhibit XV, Complainant's 2023 Absence Requests.**

    III.    <u>Conclusion</u>

As established by the facts and evidence herein, the University neither discriminated nor retaliated against Complainant. Accordingly, the Commission should issue a No Cause finding.

Should you have any questions or need additional information, please do not hesitate to contact me at calysta.lantiegne@austin.utexas.edu.

**Calysta L. Lantiegne, J.D.** | Investigator | Department of Investigation and Adjudication
University Risk and Compliance Services | dia.compliance.utexas.edu | 512-471-3701
The University of Texas at Austin

---

[14] *See* <u>Sullivan v. Texas A&M Univ. Sys.</u>, 986 F.3d 593 (5th Cir. 2021).
[15] <u>Tatum v. Southern Co. Servs., Inc.</u>, 930 F.3d 709, 813 (5th Cir. 2019) (quoting <u>Caldwell v. KHOU-TV</u>, 850 F.3d 237, 245 (5th Cir. 2017)).



UNIVERSITY RISK AND COMPLIANCE SERVICES
DEPARTMENT OF INVESTIGATION AND ADJUDICATION

*100 W. Dean Keeton St., SSB 4.102 • Mail Code D9250 • Austin, TX 78712 • (512) 471-3701*
*dia.compliance.utexas.edu • dia@austin.utexas.edu*

# EXHIBITS

| | |
|---|---|
| **EXHIBIT I** | EEOC Charge |
| **EXHIBIT II** | January 2023 FMLA Award Letter |
| **EXHIBIT III** | Manager History |
| **EXHIBIT IV** | Statement of Mark Jacaman |
| **EXHIBIT V** | Onboarding Collaboration Email |
| **EXHIBIT VI** | September 2023 Out-of-Office Request |
| **EXHIBIT VII** | August 2023 Revised FMLA Award Letter |
| **EXHIBIT VIII** | Jacaman Communication with HR |
| **EXHIBIT IX** | New in Position Review Policy |
| **EXHIBIT X** | October 2, 2023, New in Position Review |
| **EXHIBIT XI** | DIA Closure Memorandum |
| **EXHIBIT XII** | Appeal and Response to Appeal |
| **EXHIBIT XIII** | University Nondiscrimination Policy |
| **EXHIBIT XIV** | University Family and Medical Leave Policy |
| **EXHIBIT XV** | Complainant's 2023 Absence Requests |