**EXHIBIT 3**

**March 15, 2024**

Dear EEOC,

In response to the position statement from the respondents, I have prepared a detailed rebuttal, substantiating my claims against The University of Texas at Austin for dishonest practices.

I challenge the accuracy of statements made by the respondents with documented evidence. Attached is my HR system profile, clearly showing my initial compensation set at $84,500, effective May 22, 2023, with a focused view on the compensation section for clarity.

I succeeded Emily Cauthen in my current role, whose profile and annual compensation are also provided for comparison. Her compensation was $84,521, indicating my salary is marginally lower by 0.025% than that of my predecessor in the same position. Further documentation supports that Emily Cauthen received a merit increase on September 1, 2022, coinciding with her promotion to Enterprise Application Support Manager.

Additionally, I have evidence of my eligibility for a merit increase as of September 1, 2023. Despite raising this issue and submitting the necessary proof to the EEOC, I was inaccurately informed by Mark Jacaman that I did not qualify for the increase.

**Respondents Position Statement:**

On May 22, 2023, Complainant internally transferred within the University to her current position, and Mark Jacaman, director of campus support, became her manager. Exhibit III, Manager History. Jacaman made the final decision to hire Complainant. Exhibit IV, Statement of Mark Jacaman, at p. 1, ¶ 3. Complainant was hired at a starting salary 21% higher than her predecessor in the role. *Id.*

**Complaints Response/Documentation of Proof below:**









**Respondents Position Statement:**

Jacaman and LeeAnn Gibson, assistant director, eBITS, had agreed before Complainant was onboarded to limit the meetings she had to attend to allow her to transition and not get too overwhelmed. **Exhibit IV at p. 1, ¶ 4.** According to Jacaman, the same strategy had been used with Complainant's predecessor. *Id.* Additionally, Jacaman and Gibson chose to limit meetings that would not have an impact on Complainant's ability to perform her job. *Id.*

**Complaints Response:**

It has been my understanding that the state mandates the keeping of meeting notes for all conducted meetings. I request that the EEOC obtain the minutes from the sessions where decisions were made regarding my participation in certain meetings, including both the meetings I was selected to attend and those planned for my future attendance. Similarly, I ask for the retrieval of meeting notes concerning my predecessor, Emily Cauthen.

In his response, Mark provided no written evidence to support his claims, highlighting a pattern of inconsistency and lack of transparency that I have documented in several instances. Furthermore, I communicated to HR and Mark Jacaman's superior, Heather Hanna, my concerns about being excluded from the manager's meetings until November 2023, despite assuming my managerial role in eBITS six months earlier. I am interested in determining whether this approach to integrating new managers into eBITs is a standard practice within the organization.

**Respondents Position Statement:**

Complainant alleges that on or about June 2, 2023, she disclosed her disability to Jacaman. **Exhibit I.** On that date, Complainant sent Jacaman an out-of-office notice for September 26 to

Page 2 of 9



UNIVERSITY RISK AND COMPLIANCE SERVICES
DEPARTMENT OF INVESTIGATION AND ADJUDICATION

100 W. Dean Keeton St., SSB 4.102 • Mail Code D9250 • Austin, TX 78712 • (512) 471-3701
dia.compliance.utexas.edu • dia@austin.utexas.edu

September 27, 2023, and wrote "MDAnderson Houston" in the notes for the request.[1] **Exhibit VI, September 2023 Out-of-Office Request.**

Shortly after she was hired, Complainant disclosed to Jacaman that she had cancer twice – in her childhood and, again, when she was pregnant with her second child – but did not tell him of any current conditions. **Exhibit IV at p. 1, ¶ 7.** Jacaman did not have any reason to believe that Complainant was disabled. *Id.* Moreover, it was Jacaman's understanding that the September 2023 out-of-office request was for Complainant to attend an annual checkup. *Id.* at p. 1, ¶ 8. On June 5, 2023, Complainant disclosed to Jacaman that her previous approval for FMLA was to care for her father. *Id.* at p. 1, ¶ 6.

**Complaints Response:**

The claim made by them is unfounded, as it's not possible to determine whether someone has a disability simply based on appearance. I informed Mark Jacaman on May 1, 2023, of my disability, correcting an earlier statement to DIA where I mistakenly mentioned June, and submitted the accurate dates. However, the 140 pages of evidence I provided were not reviewed, all of which have been forwarded to the EEOC. On May 1, 2023, I requested three days off for medical appointments on July 12th, and September 26th and 27th, 2023. Mark Jacaman himself acknowledged that I disclosed my disability, having been diagnosed with cancer twice. This disclosure aligns with the EEOC's definition of a

disability covered under ADA.

## Definition of Disability

The ADA directs that the definition of disability is construed broadly, in favor of extensive coverage, to the maximum extent permitted by the law. Nonetheless, not everyone with a medical condition is protected from disability discrimination. Under the law, a person has a disability if the person:

- Has a physical or mental condition that substantially limits a major life activity (such as walking, talking, seeing, hearing, or learning, or operation of a major bodily function, such as brain, musculoskeletal, respiratory, circulatory, or endocrine function).

- Has a history of a disability.

- Is subject to an adverse employment action because of a physical or mental impairment the individual actually has or is perceived to have, except if it is transitory (lasting or expected to last six months or less) *and* minor.

A medical condition does not need to be long-term, permanent, or severe to be substantially limiting. Also, if symptoms come and go, what matters is how limiting the symptoms are when they are active.

**From:** Page, Nicolette
**To:** Jacaman, Mark
**Subject:** Time off Request
**Date:** Monday, May 1, 2023 11:01:00 AM

Hi Mark,

Wanted to request a few days off in the next coming weeks/months.

May 25th (I texted you just for the morning for my daughters 5th grade graduation). I made a doctors appointment later that afternoon. (I would like to request the full day off).

June 2nd – Need to take my Dad to his medical appointment at 3pm. Plan on working early and just working through lunch.

July 12th – Medical Appointments (Requesting full day off).

September 26th – Medical Appointments in Houston (Requesting full day off).
September 27th - Depending on how late my appointments end in Houston. (Requesting full day off).

Thank you, I am not sure what your preference is when requesting time off. Just wanted to be sure to keep you in the loop.

Nicolette Page (Pronouns: she/her) | Manager, Billing and Insurance Office | The University of Texas at Austin | Office: 512.475.8234 | SSB 2.106BB| Campus Mail A3900

*Email is not considered a secure medium. Therefore, confidentiality cannot be guaranteed.

**Mark Jacaman even said in his statement the following:**

7. Shortly after she started, Ms. Page also shared with me that she had cancer when she was a teenager and again when she was pregnant with her second child. This was couched in terms of her being a cancer survivor and not as a current condition. At the time of the disclosure, Ms. Page was working towards her MBA and had recently traveled internationally with a McCombs global trip the week of May 14th-May 21st, and I had no reason to believe she was disabled. I thought she may have disclosed her history of cancer because at the time my father-in-law was struggling with cancer.

**Respondents Position Statement:**

On August 10, 2023, Complainant received a revised designation notice for FMLA leave. **Exhibit VII, August 2023 Revised FMLA Award Letter.** Complainant was approved for 398 hours of leave from July 7, 2023, to January 2, 2024. *Id.* The week of September 4, 2023, Jacaman met with Angela Schoolar, director, HR Business Partnerships, to discuss how to properly address any performance issues with Complainant. **Exhibit VIII, Jacaman Communication with HR.** During their discussion, Schoolar recommended that Jacaman give Complainant a New in Position Review. *Id.* New in Position Reviews are given to employees who transfer to a new position within the University. **Exhibit IX, New in Position Review Policy.** While it is recommended that reviews are done at 45, 90, and 135 days after the employee has transferred in, it is not required. *Id.*

On September 12, 2023, Jacaman met with Complainant to discuss her work schedule, as Complainant had been scheduling her lunch hour at the end of the day, so that she left at 3:30 p.m., without consulting with Jacaman. **Exhibit X, October 2, 2023, New in Position Review, at p. 9.** Jacaman requested that Complainant take her lunch during the general range of time as the rest of the team, to which she eventually agreed after first indicating that the time change would not work with her husband's schedule. **Exhibit VIII.**

On October 2, 2023, Jacaman issued Complainant the New in Position Review. **Exhibit X.** Per Jacaman, the stated purpose of the review was to "realign expectations" for Complainant's role. *Id.* **at p. 1.** Jacaman made it clear to Complainant that the review was unrelated to her FML use, per advice by human resources personnel. **Exhibit IV at p. 2, ¶ 9.**

Jacaman provided Complainant with four examples of when she had not met expectations in the performance of her role. **Exhibit X at pp. 4-9.** The third example involved Complainant's having responded to an email to a campus partner with a solution to their issue that the campus partner had already discovered on their own and communicated to Complainant and others on the email thread hours before. *Id.* **at p. 8.** Complainant, who provided her responses to the review feedback

**Complaints Response:**

Before receiving a written warning for adjusting my schedule to leave at 3:30 under FMLA, I was not notified by my director that my use of FMLA was incorrect. Despite having verbally explained this to him and detailing it in writing in the "New in Position Review" feedback section provided to the EEOC, he failed to perform his due diligence or consult HR regarding my communication about flexing my time towards the day's end under FMLA. Had Mark Jacaman properly guided me on the appropriate use of FMLA, I would have adjusted my schedule accordingly; instead, he chose to report a performance issue to HR as a form of retaliation. I would have altered my schedule to leave at 2:30 and used 1 hour of FMLA for the days required to care for my sick father. The communications involving Mark, which I submitted to the EEOC, never indicated his objection to this process or that I should leave at 2:30 pm to correctly apply my FMLA. Furthermore, I have submitted evidence of Mark Jacaman's **suggestion to adjust my schedule**, which I did 7:30 – 3:30pm, following which I was unjustly written up. This is evidenced by our conversation on July 19, 2023, at 2:04 pm, and the issue was not mentioned again until September 12, 2023.



**Respondents Position Statement:**

On September 12, 2023, Jacaman met with Complainant to discuss her work schedule, as Complainant had been scheduling her lunch hour at the end of the day, so that she left at 3:30 p.m., without consulting with Jacaman. **Exhibit X, October 2, 2023, New in Position Review, at p. 9.** Jacaman requested that Complainant take her lunch during the general range of time as the rest of the team, to which she eventually agreed after first indicating that the time change would not work with her husband's schedule. **Exhibit VIII.**

On October 2, 2023, Jacaman issued Complainant the New in Position Review. **Exhibit X.** Per Jacaman, the stated purpose of the review was to "realign expectations" for Complainant's role. *Id.* **at p. 1.** Jacaman made it clear to Complainant that the review was unrelated to her FML use, per advice by human resources personnel. **Exhibit IV at p. 2, ¶ 9.**

**Complaints Response:**

Before our meeting on September 12, 2023, I had to take several days off due to my own health issues, exacerbated by the stress of my father being in the ICU for a month. My pre-existing condition of insomnia worsened significantly during this time, leading me to request time off for self-care. I have documented the communications and the specific dates on which I requested leave for my health. It's important to note that Mark Jacaman had been informed months earlier about my history of disability. On June 30, 2023, I requested a day off for personal medical reasons; on July 6, 2023, I was in the ER due to chronic hypertension; additional days off were required on July 21, August 11, October 31, 2023, December 6, 2023, and January 31, 2024, to manage my health. Following our September 12 meeting, I needed further medical leave, returning from MD Anderson on September 26, 27, and 28, 2023, after which I believe the write-up was retaliatory, viewing me as unreliable due to the FMLA time taken for both my father's and my own medical conditions.

June 30, 2023





**July 21, 2023**



**August 11, 2023**

Informed Mark Jacaman that my health was being adversely affected by stress and that I was not feeling well.



October 31, 2023



December 6, 2023



January 31, 2023



**February 28, 2023**



**Respondents Position Statement:**

On October 2, 2023, Jacaman issued Complainant the New in Position Review. **Exhibit X.** Per Jacaman, the stated purpose of the review was to "realign expectations" for Complainant's role. *Id.* at p. 1. Jacaman made it clear to Complainant that the review was unrelated to her FML use, per advice by human resources personnel. **Exhibit IV at p. 2, ¶ 9.**

Jacaman provided Complainant with four examples of when she had not met expectations in the performance of her role. **Exhibit X at pp. 4–9.** The third example involved Complainant's having responded to an email to a campus partner with a solution to their issue that the campus partner had already discovered on their own and communicated to Complainant and others on the email thread hours before. *Id.* at p. 8. Complainant, who provided her responses to the review feedback

---

[1] MD Anderson is a cancer center located in Houston, Texas. *See* www.mdanderson.org.



UNIVERSITY RISK AND COMPLIANCE SERVICES
DEPARTMENT OF INVESTIGATION AND ADJUDICATION

100 W. Dean Keeton St., SSB 4.102 • Mail Code D9250 • Austin, TX 78712 • (512) 471-3701
dia.compliance.utexas.edu • dia@austin.utexas.edu

on October 9, 2023, attributed her delayed response to being on FML the morning the email was received. *Id.* at pp. 1 and 8–9.

In the fourth example, Jacaman referred to the discussion they had previously regarding Complainant's changing her lunch schedule and expressed his appreciation that she had made said changes. *Id.* at p. 9. Jacaman indicated the conversation about her taking lunch at the end of the day was intended to address business needs and Complainant's availability, but nonetheless Complainant's work calendar had two days per week blocked off during work time for her to work on her MBA program. *Id.*

In a follow-up meeting, Complainant told Jacaman that she did not want to meet with him to further discuss the New in Position Review unless a third party was present. **Exhibit IV at p. 2, ¶ 11.** Jacaman was out of the office on several dates between October 5 to October 19, 2023, due to his father-in-law's illness and subsequent death. *Id.* at p. 2, ¶ 12. Upon his return to the office, Jacaman was told by his supervisor that Complainant felt "unsafe," so he has limited his interactions with her despite the hindering effect it has had on his ability to supervise her. *Id.*

**Complaints Response:**

Just one business day after my return from medical leave, I received a write-up. My absence was due to a follow-up appointment at MD Anderson Cancer Hospital on September 26 and 27, 2023. Following the appointment, on September 28, 2023, I was unable to work due to illness caused by the radioactive medication from my scans. Upon my return to work on Monday, October 2, 2023, I was written up, with the critique largely based on subjective opinions without substantive evidence or justification provided by my supervisor in the new position review. In contrast, my feedback included documented evidence supporting my statements, while he failed to provide any factual counterpoints. This action appears to reflect personal biases rather than professional assessment. The EEOC has been provided with the New In Position review, my feedback, and accompanying documentation, none of which have been addressed by Mark Jacaman or discussed in the presence of a third party as of March 15, 2024. This matter seems to have been disregarded by Heather Hanna, Mark's director.





**Respondents Position Statement:**

In a follow-up meeting, Complainant told Jacaman that she did not want to meet with him to further discuss the New in Position Review unless a third party was present. **Exhibit IV at p. 2, ¶ 11.** Jacaman was out of the office on several dates between October 5 to October 19, 2023, due to his father-in-law's illness and subsequent death. *Id.* at p. 2, ¶ 12. Upon his return to the office, Jacaman was told by his supervisor that Complainant felt "unsafe," so he has limited his interactions with her despite the hindering effect it has had on his ability to supervise her. *Id.*

On October 30, 2023, Complainant filed a complaint with DIA in which she alleged that Jacaman had discriminated against Complainant based on her disability, race, and gender. **Exhibit XI, DIA Closure Memorandum, at p. 1.** Complainant also claimed Jacaman had retaliated against her for using FML. *Id.*

**Complaints Response:**

On October 16, 2023, I had a meeting with Angelina from HR, the details of which I shared with the EEOC. During this meeting, I discovered that HR was unaware of my New in Position Review; it seemed

Mark had not communicated its completion to them. Angelina found it necessary to contact him directly to obtain a copy, a step she found unusual.

I expressed to HR my concerns about potential retaliatory behavior from Mark following the notification that the New in Position Review needed submission. My discomfort was specifically mentioned, not a feeling of being "unsafe"—a term inaccurately attributed to me in his statement. It's unclear why Heather Hanna, who was not involved in my discussion with Angelina, informed Mark I felt "unsafe" when I had articulated concerns about retaliation.

It's noteworthy that Heather Hanna, Mark's supervisor, only addressed my complaints for the first time in January 2024. This action came after I initiated contact with HR on January 8, 2024, requesting a meeting to discuss the harassment I had faced since joining eBITs. Included in my submission is the request I sent to HR for a meeting with Heather.





Heather Hanna arranged a meeting with me for January 9, 2024, at 1:30 pm. It's important to highlight that my internal complaint had been filed with the Department of Investigation and Adjudication (DIA) on October 30, 2023. In our discussion, Heather Hanna seemed to align with Mark, countering my statements in a protective and defensive manner. The interaction suggested her opinions were predetermined, bypassing an impartial evaluation of the situation. This approach, I believe, was influenced by my having lodged a complaint with The University of Texas at Austin, a detail I've shared with the EEOC in my documentation of the conversation with Heather Hanna.



The position statement from The University of Texas at Austin is fraught with inaccuracies, bolstered by several false claims against which I have presented concrete documentation. Following the disclosure of my disability, Mark Jacaman seemingly prejudged my professional capabilities, initiating a pattern of harassment and frequently altering my employment conditions without justification.

Currently, I am awaiting the fulfillment of an open records request I paid for, directed at the University. Given the delays and lack of transparency thus far, I am skeptical about the accuracy and honesty of the forthcoming data. This request was initially made on February 5, 2024, and the response process has been notably slow, which I suspect is a tactic to discourage my pursuit of these records. Bob Bonner-Davis acknowledged my request but omitted critical details in his final communication on February 27, 2024. Specifically, he failed to mention my specific request for information on "positions substantially equal to my current role as Enterprise Application Support Manager." My experiences with the University have taught me the importance of explicit written requests, leading me to clarify this omission directly with Bob Bonner-Davis in an email sent this morning, a copy of which is included below.

Should the open records request reveal a disparity in pay based on gender within roles equivalent to mine, I intend to amend my charge to incorporate allegations under the Equal Pay Act.

On 2/26/2024 4:35:04 PM, UT Austin Open Records wrote:

**Subject:** [Records Center] Public Information Request :: R005830-020524
**Body:**
RE: PUBLIC RECORDS REQUEST #R005830-020524

Dear Nicolette Page,

On the question of "positions that are substantially equal to my current role as an Enterprise Application Support Manager", our suggestion of using the "Computer and Information Systems Managers" job group was the only way we could think of to isolate the positions that are similar to yours, based on the way job data is organized. If you can think of a different way to identify positions that are similar to your current role, we're happy to see if that method works better.

I have already reached out to the department to get going on the 5-year version of your request. They've responded with a tentative estimate of the time required to fulfill it, and it looks like there may still be some charge despite the reduced timeframe. They are estimating the total time required to be 10 hours, which puts the total cost around $180.

In case you'd like to modify your request further, here's what they are estimating for each part of your request, along with a brief explanation for each:

 1. The following 8 points of data for everyone who held a position in eBITS within the "Computer and Information Systems Managers" job group in the last 5 years: Job titles, Role responsibilities, Annual salaries, Starting salaries, Ending salaries, Gender, Ethnicity, and Duration in their respective roles. Estimate: 3 hours. This will largely be manually looking up individuals to adequately get historical information on starting dates, ending dates and salaries within a 5 year time period.
 2. Gender and ethnicity of all individuals hired in eBITS for the last 5 years. Estimate: 1.5 hours. Looking up historical demographic information can be a bit more time consuming than you would think because that's not stored in our historical database and will need additional lookup reports.
 3. Hiring data for each eBITS manager for the last 5 years; this is asking for a list of employees hired by each manager in eBITS. Estimate: 5 hours. This could definitely take 5 hours to track down all the managers over time and then cross reference that with New Hire data
 4. A list of all African American employees currently employed in eBITS. Estimate: 30 minutes. We can pretty easily produce a current list of employees by demographics.

Finally, I know it's been a while since your original request was submitted. We do our best and work hard, but requests often take more time than requestors would like. Unfortunately, the way the law is set up in Texas and the volume of requests that UT Austin gets means that it's not unusual for a request to take more than 30 calendar days to be fulfilled.

Please let us know whether you'd like to proceed with this current version of your request or modify it further. If you want to proceed, we'll get you a formal estimate of the charges ASAP so that you can submit the payment. Just to set expectations: once we receive payment, it will probably take about 10 business days to get the information produced and released.
Sincerely,

Bob Bonner-Davis
Chief Public Information Coordinator
Office of the Vice President for Legal Affairs

> On 2/27/2024 11:56:02 AM, UT Austin Open Records wrote:
>
> **Subject:** [Records Center] Public Information Request :: R005830-020524
> **Body:** RE: Estimation of Costs to Fulfill Request; UT Austin ORR No. R005830-020524
>
> Dear Nicolette Page,
>
> This letter relates to your request for information that was received by The University of Texas at Austin which provides as follows:
>
> 1. The following 8 points of data for everyone who held a position in eBITS within the "Computer and Information Systems Managers" job group in the last 5 years: Job titles, Role responsibilities, Annual salaries, Starting salaries, Ending salaries, Gender, Ethnicity, and Duration in their respective roles.
> 2. Gender and ethnicity of all individuals hired in eBITS for the last 5 years.
> 3. Hiring data for each eBITS manager for the last 5 years; this is asking for a list of employees hired by each manager in eBITS.
> 4. A list of all African American employees currently employed in eBITS.
>
> We have determined that fulfilling your request will result in the imposition of a charge that exceeds $40. Therefore, we are providing you with the attached cost estimate as required by section 552.2615 of the Texas Government Code. Thank you.
>
> Sincerely,
>
> Bob Bonner-Davis
> Chief Public Information Coordinator
> Office of the Vice President for Legal Affairs
>
> > On 3/15/2024 5:22:19 AM, Nicolette Page wrote:
> >
> > Dear Ben,
> >
> > I observed in your message dated February 27, 2024, that when you summarized my request in the first bullet point, you omitted the detail that the roles I'm seeking are "positions substantially equal to mine.
> >
> > Can you confirm that the data provided will specifically reflect those positions only that are "positions substantially equal to my current role in eBITs?
> >
> > 1. The following 8 points of data for everyone who held a position in eBITS within the "Computer and Information Systems Managers" job group in the last 5 years: Job titles, Role responsibilities, Annual salaries, Starting salaries, Ending salaries, Gender, Ethnicity, and Duration in their respective roles.
> > 2. Gender and ethnicity of all individuals hired in eBITS for the last 5 years.
> > 3. Hiring data for each eBITS manager for the last 5 years; this is asking for a list of employees hired by each manager in eBITS.
> > 4. A list of all African American employees currently employed in eBITS.
> >
> > Kind regards,
> >
> > Nicolette Page

Thank you,

Nicolette Page