IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NICOLETTE D. PAGE, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 1:24-cv-01249–DAE |
| | § | |
| UNIVERSITY OF TEXAS AT AUSTIN, | § | |
| *Defendant*. | § | |

---

**DEFENDANT THE UNIVERISTY OF TEXAS AT AUSTIN'S
MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE DAVID EZRA:

NOW COMES Defendant, The University of Texas at Austin (UT), and files this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The claims of Plaintiff Nicolette Page against UT should be dismissed for failure to state a claim on which relief may be granted.

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................... 1

STANDARD OF REVIEW .............................................................................................. 2

ARGUMENTS AND AUTHORITIES.............................................................................. 2

I.   Plaintiff has not stated a valid claim for race discrimination.................................... 2

   A.   Plaintiff has not sufficiently alleged an adverse employment action. ................ 3

      1.   Plaintiff cannot use constructive discharge as an adverse employment action. ............ 5

      2.   Plaintiff's salary-related claims cannot satisfy the adverse-action requirement because they are administratively unexhausted.................................................................... 8

      3.   The other forms of mistreatment Plaintiff alleges do not qualify as adverse employment actions under Title VII or the TCHRA. .......................................... 9

   B.   Plaintiff has not alleged facts from which discriminatory conduct can plausibly be inferred.................................................................................................................. 10

      1.   The facts in the amended petition, if true, would not support a hostile work environment or other discriminatory conduct........................................................ 10

      2.   Plaintiff's allegations do not support a prima facie case that she was treated less favorably than similarly situated comparators. .................................................... 13

II.  Plaintiff has not stated a valid claim for disability discrimination under the TCHRA or the Rehabilitation Act. .................................................................................................... 16

III. Plaintiff has not stated a valid retaliation claim..................................................... 16

   A.   Plaintiff has not stated a viable retaliation claim under the TCHRA, Title VII, or the Rehabilitation Act because she identifies no adverse employment action that allegedly began after she filed an EEOC charge in January 2024. ..................................... 16

   B.   Plaintiff has not stated a viable retaliation claim under the FMLA. ................. 20

CONCLUSION............................................................................................................... 20

CERTIFICATE OF SERVICE ....................................................................................... 21

# TABLE OF AUTHORITIES

## *Cases*

*Alamo Heights ISD v. Clark*, 544 S.W.3d 755 (Tex. 2018)................................................ 2, 16

*Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422 (5th Cir. 2017) ........................................ 3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................... 2, 12

*Auto Zone v. Reyes*, 272 S.W.3d 588 (Tex. 2008) (per curiam) ...................................... 3

*Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500 (5th Cir. 2024) ............................... 8, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 2

*Big Thirst, Inc. v. Donoho*, 657 F.Supp.3d 914 (W.D. 2023) ......................................... 8

*Brooks v. W. Tex. Credit Union*, 2025 WL 596647 (W.D. Tex. 2025) ............................. 15

*Brown v. Kinney Shoe Corp.*, 237 F.3d 556 (5th Cir. 2001)........................................... 5

*Bunker v. Dow Chem. Co.*, 111 F.4th 683 (5th Cir. 2024) ............................................. 7

*Casillas v. McDonough*, 2024 WL 760236 (W.D. Tex. 2024)......................................... 16

*Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467 (5th Cir. 2016)...................................... 3, 14

*City of Pasadena v. Poulos*, 2023 WL 7134974 (Tex. App.—Houston [1st Dist.] 2023, no pet.). 4

*Coleman v. Kijakzi*, 2023 WL 2660167 (5th Cir. 2023)................................................ 17

*Collier v. Dallas Cty. Hosp. Dist.*, 827 F. App'x 373 (5th Cir. 2020)............................ 13

*Cuvillier v. Sullivan*, 503 F.3d 397 (5th Cir. 2007) ...................................................... 15

*Dao v. Auchan Hypermarket*, 96 F.3d 787 (5th Cir. 1996) ........................................... 7

*Daywalker v. UTMB at Galveston*, 2024 WL 94297 (5th Cir. 2024)............................. 13

*Ellis v. Cargill Meat Solutions*, 2024 WL 4692024 (5th Cir. 2024).............................. 12

*Faruki v. Parsons*, 123 F.3d 315 (5th Cir. 1997)......................................................... 5

*Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278 (5th Cir. 2006) ..................... 15

*Gardner v. Abbott*, 414 S.W.3d 369 (Tex. App.—Austin 2013, no pet.)........................ 5

*Gates v. Lyondell Petrochemical Co.*, 2006 WL 8450671 (S.D. Tex. [Houston] 2006), aff'd, 227
    F. App'x 409 (5th Cir. 2007) ................................................................................ 9

*Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165 (5th Cir. 2014) ..................... 17

*Hamilton v. Dallas Cty.*, 79 F.4th 494 (5th Cir. 2023) (en banc) ......................... 3, 4, 10

*Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427 (5th Cir. 2023) .............................. 4

*Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428 (5th Cir. 2005) ........................ 10

*Horvath v. City of Leander*, 946 F.3d 787 (5th Cir. 2020) ....................................... 2

*Kang v. Bd. of Supervisors of La. State Univ.*, 75 F. App'x 974 (5th Cir. 2003) ........... 11

*Lemonia v. Westlake Mgmt. Servs., Inc.*, 2023 WL 6878915 (5th Cir. 2023) ........... 4, 10

*Longoria v. Via Metro. Transit*, 2022 WL 1445396 (W.D. Tex. 2022) ................... 13, 14

*Lopez v. Univ. of Tex. at Austin*, 2023 WL 8445742 (W.D. Tex. 2023) ...................... 18

*Mandujano v. City of Pharr*, 786 F. App'x 434 (5th Cir. 2019)................................ 6

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ...................................... 2

*Newbury v. City of Windcrest*, 991 F.3d 672 (5th Cir. 2021) .................................. 6

*Norsworthy v. Houston ISD*, 70 F.4th 332 (5th Cir. 2023)............................... passim

*Nuñez-Renck v. IBM Corp.*, 2024 WL 4995572 (N.D. Tex. 2024) .......................... 9

*Pa. State Police v. Suders*, 542 U.S. 129 (2004) .................................................. 8

*Pacheco v. Mineta*, 448 F.3d 783 (5th Cir. 2006)................................................. 7

*Perret v. Nationwide Mut. Ins.*, 770 F.3d 336 (5th Cir. 2014)................................. 6

*Plotkin v. IP Axess Inc.*, 407 F.3d 690 (5th Cir. 2005).......................................... 2

*Price v. Valvoline, LLC*, 88 F.4th 1062 (5th Cir. 2023) ....................................... 12

*Raj v. La. State Univ.*, 714 F.3d 322 (5th Cir. 2013)................................... 11, 12

*Ray-Brown v. Longview ISD*, 2013 WL 5433476 (Tex. App.—Texarkana 2013, no pet.) .......... 11

*Sacks v. Tex. S. Univ.*, 83 F.4th 340 (5th Cir. 2023) ................................................................ 5, 6

*Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970) ............................................... 7

*Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641 (5th Cir. 2025) ............................................... 13

*Sligh v. City of Conroe*, 87 F.4th 290 (5th Cir. 2023) ................................................................ 8

*Smith v. Kendall*, 2024 WL 4442040 (5th Cir. 2024) .............................................................. 17

*Spears v. DSM Copolymer, Inc.*, 103 F.3d 124 (5th Cir. 1996) ................................................. 9

*Stone v. La. Dep't of Revenue*, 590 F. App'x 332 (5th Cir. 2014) ............................................ 17

*Taylor v. Books A Million, Inc.*, 296 F.3d 376 (5th Cir. 2002) ................................................... 7

*Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510 (5th Cir. 2008) ............................................ 15

*Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ............................................................................................................................ 7

*Thomas v. Cook Children's Health Care Sys.*, 2023 WL 5972048 (5th Cir. 2023) .............. 12, 13

*Twigland Fashions, Ltd. v. Miller*, 335 S.W.3d 206 (Tex. App.—Austin 2010, no pet.) ............ 10

*Univ. of Tex. M.D. Anderson Cancer Ctr. v. Eltonsy*, 451 S.W.3d 478 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ....................................................................................................... 7

*Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763 (5th Cir. 2016) ........................................... 8

*Waffle House, Inc. v. Williams*, 313 S.W.3d 796 (Tex. 2010) .............................................. 5, 10

*Wantou v. Wal-Mart Stores*, 23 F.4th 422 (5th Cir. 2022) ...................................................... 11

*West v. City of Houston*, 960 F.3d 736 (5th Cir. 2020) ........................................................... 11

*Wije v. Burns*, 2017 WL 1901975 (W.D. Tex. May 8, 2017) .................................................... 14

*Winters v. Cubb & Son, Inc.*, 132 S.W.3d 568 (Tex. App.—Houston [14th Dist.] 2004) ........ 3, 10

*Woods v. Cantrell*, 29 F.4th 284 (5th Cir. 2022) ................................................................... 12

*Wright v. Union Pac. R.R. Co.*, 990 F.3d 428 (5th Cir. 2021) ................................................. 20

*Ysleta ISD v. Monarrez*, 177 S.W.3d 915 (Tex. 2005) ........................................................... 14

### ***Statutes***

Americans with Disabilities Act ................................................................................................ 1

Fed. R. Evid. 201 .................................................................................................................. 15

Fed. R. of Civ. P. 12(b)(6) .................................................................................................... 1, 2

Rehabilitation Act of 1973 ...................................................................................................... 2

Tex. Lab. Code § 21.001 ........................................................................................................ 2

Tex. Lab. Code § 21.202 ........................................................................................................ 7

Texas Labor Code chapter 21 ................................................................................................. 1

Title VII of the Civil Rights Act of 1964 .................................................................................... 1

## BACKGROUND

Plaintiff, "a Black-Latina woman," was employed by UT as a Billing and Insurance Manager from August 2019 until May 2023, when she "transferred to the role of Enterprise Application Support Manager for [UT's eBITS] department." ECF No. 20 at 2. Plaintiff alleges her supervisor, Mark Jacaman, began to mistreat her after she "disclosed to Jacaman her status as a person with a disability." *Id.* Jacaman allegedly "excluded [Plaintiff] from management meetings and staff meetings pertaining to her responsibilities," "disciplined her for absences to care for her father that were approved for protected leave under the FMLA," "subjected her to disrespectful and racist commentary," "placed her under increased scrutiny," and "removed management responsibilities from her by dealing directly with her subordinates." *Id.* at 2–3. She further alleges Jacaman revoked Plaintiff's approval to end her workday at 3:30 p.m. on Mondays and Tuesdays to attend classes for her UT MBA program, "reprimanded her for leaving at the agreed-upon time," and "refused to allow [Plaintiff] to take advantage of a University policy allowing employees to take university course work during the workday." *Id.* at 3.

Plaintiff alleges that Jacaman's "negative treatment" "intensified" after she filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in January 2024, *id.*, and that "his harassment became so overwhelming that she was forced to resign her eBITS position in April 2024," *id.* at 4. Plaintiff "now works for a different UT department." *Id.* at 5.

Plaintiff originally filed this suit in state court for (1) race discrimination under Texas Labor Code chapter 21 (the TCHRA) and Title VII of the Civil Rights Act of 1964 (Title VII); (2) disability discrimination under the TCHRA and the Americans with Disabilities Act (ADA); (3) retaliation under the TCHRA, Title VII, and the ADA; and (4) retaliation under the Family and Medical Leave Act (FMLA). ECF No. 1–3. UT answered in state court and timely removed the case to this Court. ECF No. 1, 1–3. UT filed a motion for dismissal on the pleadings, ECF No. 15,

which became moot when Plaintiff filed an amended complaint, ECF No. 20. This motion seeks dismissal of Plaintiff's amended complaint, which replaces Plaintiff's ADA claims with claims under the Rehabilitation Act of 1973 and adds some factual allegations but is otherwise similar to her original complaint. Compare ECF No. 20 with ECF No. 1–3.

## STANDARD OF REVIEW

To avoid dismissal under Rule 12(b)(6), a plaintiff must plead facts which, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While courts accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

## ARGUMENTS AND AUTHORITIES

### I.    Plaintiff has not stated a valid claim for race discrimination.

Plaintiff asserts claims for race discrimination under both Title VII and the TCHRA. One of the TCHRA's purposes of the is to "provide for the execution of the policies of Title VII." Tex. Lab. Code § 21.001(1). Accordingly, courts generally "apply the same analysis to Title VII and TCHRA claims." *Horvath v. City of Leander*, 946 F.3d 787, 791 n.3 (5th Cir. 2020).

The TCHRA contains a limited waiver of sovereign immunity from suit and liability, which applies "only when the plaintiff states a claim for conduct that actually violates the statute." *Alamo Heights ISD v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). To determine whether a claim "actually violates the statute," Texas courts apply "the tripartite *McDonnell Douglas* burden-shifting framework" used in Title VII cases. *Id.* at 764; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). The *McDonnell Douglas* standard does not require a Title VII plaintiff to

produce evidence at the motion-to-dismiss stage. *See Norsworthy v. Houston ISD*, 70 F.4th 332, 336 (5th Cir. 2023). "But a plaintiff is still required 'to *plead* sufficient facts on all of the ultimate elements' of her claim. *Id.* (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (emphasis added)). "And to frame that inquiry, a district court may find it helpful to reference *McDonnell Douglas*" at the motion-to-dismiss stage. *Id.* In *Norsworthy*, for example, the Fifth Circuit affirmed the dismissal of discrimination and retaliation claims under the TCHRA and Title VII pursuant to Rule 12(b)(6) where the plaintiff failed to allege facts that would support the elements of a prima facie discrimination or retaliation claim. *See id.* at 336–37.

To state a prima facie case of discriminatory treatment under the TCHRA or Title VII, the plaintiff must show that: (1) she is a member of a class protected by the applicable statute, (2) she was qualified for the position she held, (3) she suffered an "adverse employment action," and (4) she was treated less favorably than "similarly situated" persons outside her protected class. *See Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017); *Auto Zone v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam). Here, Plaintiff fails to allege facts sufficient to infer that (1) she suffered an adverse employment action or (2) she was treated less favorably than a similarly situated person because of her protected status.

### A.    Plaintiff has not sufficiently alleged an adverse employment action.

Under the TCHRA, adverse employment actions are "ultimate employment decisions," which includes events involving "hiring, granting leave, discharging, promoting, and compensating," but not events that merely "might jeopardize employment in the future," such as "disciplinary filings, supervisor's reprimands, and even poor performance by the employee." *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 575 (Tex. App.—Houston [14th Dist.] 2004, no pet). Before 2023, adverse employment actions in Title VII cases were similarly limited to ultimate employment decisions. *See Hamilton v. Dallas Cty.*, 79 F.4th 494, 497 (5th Cir. 2023) (en banc).

In *Hamilton*, the Fifth Circuit eliminated the requirement that an adverse employment action must be an "ultimate" action. *See id.* at 499–502. But *Hamilton* did not purport to change the longstanding rule in Texas law that the TCHRA covers only ultimate employment decisions. *See City of Pasadena v. Poulos*, 2023 WL 7134974, at *10 n.1 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (citing *Hamilton* and noting that, "[i]n the absence of contrary authority from the Texas Supreme Court or this Court sitting en banc, we continue to be bound by our prior precedent holding that the TCHRA's anti-discrimination provision only applies to 'ultimate employment decisions.'"). And post-*Hamilton*, the Fifth Circuit has recognized that an adverse employment action requires (1) employment discrimination that (2) causes the plaintiff an injury that is greater than *de minimis*. *See Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 430 (5th Cir. 2023). Reprimands, performance plans, and other corrective actions or remedial measures are not materially adverse employment actions unless they "affect job title, grade, hours, salary, or benefits or cause a diminution in prestige or change in standing among coworkers." *Lemonia v. Westlake Mgmt. Servs., Inc.*, No. 22-30630, 2023 WL 6878915, at *7 (5th Cir. 2023) (cleaned up).

As discussed below, neither Plaintiff's resignation nor her other allegations satisfy the requirement of an adverse employment action. Constructive discharge can be an adverse employment action, but Plaintiff does not allege sufficient facts to state a valid constructive-discharge claim, nor did Plaintiff administratively exhaust a constructive-discharge claim. Similarly, Plaintiff's salary-related complaints are untimely under the TCHRA and unexhausted under Title VII. And of Plaintiff's remaining allegations, only one—her claim that Jacaman revoked an agreement that allowed her to end her workday early on certain days—is alleged to have changed the terms, conditions, or privileges of her employment. ECF No. 20 at 3.

### 1. Plaintiff cannot use constructive discharge as an adverse employment action.

### a. Plaintiff has not pleaded a valid constructive discharge claim.

A resignation is actionable only if it qualifies as a constructive discharge. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) . Under the TCHRA and Title VII, this requires that the employer made working conditions "so intolerable that a reasonable person would feel compelled to resign." *Id.* (quoting *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997)); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805 (Tex. 2010). When deciding whether an employee's resignation amounts to a constructive discharge, Texas courts consider six factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; and (6) offers of early retirement that would make the employee worse off whether the offers were accepted or not.

*Gardner v. Abbott*, 414 S.W.3d 369, 383 (Tex. App.—Austin 2013, no pet.). Federal courts assessing constructive discharge claims under Title VII consider the same six factors, plus whether the plaintiff was reassigned to work under a younger supervisor. *See Brown*, 237 F.3d at 566.

A plaintiff's failure to allege significant actions by their employer that invoke multiple factors is typically fatal to a constructive discharge claim, as a recent Fifth Circuit case illustrates. *See Sacks v. Tex. S. Univ.*, 83 F.4th 340, 347 (5th Cir. 2023). Sacks, a law professor, resigned after "the dean 'add[ed] time-consuming, unnecessary, and menial tasks such as rearranging the order of subjects taught in classes[,] . . . call[ing] many extra faculty meetings[,]' adding 'new methods of attendance recording,' and assigning torts professors to 'correct and edit 25 proposed Kaplan torts questions.'" *Id*. But the Fifth Circuit affirmed the dismissal of her constructive discharge claim, holding that "[e]ven if we assume these tasks are menial, Sacks's constructive discharge claim still falls short" because "[s]he fails to allege any other factor that would make a reasonable

person feel compelled to resign." *Id.* Specifically, Sacks did "not allege a demotion, reduction in salary, reduction in job responsibilities, reassignment to work under a younger supervisor, or offers of early retirement." *Id.* (citing *Newbury v. City of Windcrest*, 991 F.3d 672, 677 (5th Cir. 2021); *Perret v. Nationwide Mut. Ins.*, 770 F.3d 336, 338-39 (5th Cir. 2014)).

Plaintiff's allegations are similarly lacking. Plaintiff does not allege that she was demoted, that her salary was reduced, that she was reassigned to menial or degrading work, that she was offered early retirement, or that she was assigned to work under a younger supervisor. Plaintiff does allege that Jacaman disciplined and reprimanded her, placed her under increased scrutiny, subjected her to "disrespectful and racist commentary," changed her work schedule, and refused to let her do university coursework during the workday, ECF No. 20 at 3, but none of those activities constitutes badgering, harassment, or humiliation. And while Page now claims "removal of managerial responsibilities" in her amended complaint, ECF No. 20 at 3, her allegation that Jacaman "removed management responsibilities from her *by dealing directly with her subordinates*," *id.* (emphasis added), tacitly acknowledges that Jacaman did not actually alter her management duties. Regardless, Plaintiff's allegations are insufficient to state a constructive discharge claim. *See Sacks*, 83 F.4th at 347; *Newbury*, 991 F.3d at 339 (allegations that Newbury's superior "questioned Newbury's level of education and yelled at her in front of her colleagues," filmed her while confronting her, and "generally treated her rudely and dismissively" fell "far short" of sufficient allegations for constructive discharge); *Mandujano v. City of Pharr*, 786 F. App'x 434, 437 (5th Cir. 2019) (allegations that plaintiff was investigated by employer "on the basis of his sex," and "could not continue his employment due to the intolerable and hostile work environment he endured from the complaints and investigations" fell "far short of plausibly alleging constructive discharge").

### b.  Plaintiff did not exhaust her constructive-discharge claims.

Plaintiffs who claim discrimination under Title VII or TCHRA "must exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378-79 (5th Cir. 2002); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996). Administrative exhaustion "occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue," *Taylor*, 296 F.3d at 379, or when she "files a timely charge with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice," *Dao*, 96 F.3d at 789. To exhaust administrative remedies under the TCHRA, a plaintiff must, among other things, file a complaint with the Texas Workforce Commission (TWC) within 180 days of the alleged discriminatory act. Tex. Lab. Code § 21.202(a)–(a-1); *Bunker v. Dow Chem. Co*., 111 F.4th 683, 686 (5th Cir. 2024).

Once a TCHRA claim is filed in court, a plaintiff "is limited to the complaints made in the discrimination charge and factually related claims that could reasonably be expected to grow out of the Commission's investigation of the charge." *Univ. of Tex. M.D. Anderson Cancer Ctr. v. Eltonsy*, 451 S.W.3d 478, 485 n.4 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Thomas v. Clayton Williams Energy, Inc*., 2 S.W.3d 734, 738 (Tex. App.—Houston [14th Dist.] 1999, no pet.)). Similarly, whether a Title VII claim is encompassed by the administrative charge is determined "by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). A reviewing court will "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.*

Plaintiff said nothing about constructive discharge in her EEOC charge, which Plaintiff filed in January 2024, while she was still working in eBITS and several months before she

resigned. *See* App. A.[1] Nor did she allege in that charge any facts indicating that her working conditions were so intolerable that any reasonable person in her shoes would have resigned. Instead, she complained only of changes in her "terms and conditions of employment," identifying "increased scrutiny," "being excluded from management . . . and staff meetings," and being disciplined for approved absences. *Id.* Accordingly, her charges of race- and disability-related discrimination and retaliation would not reasonably be expected to lead to an investigation into constructive discharge. *See, e.g., Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 508–509 (5th Cir. 2024) ("Neither Ayorinde's original EEOC charge nor his amended charge includes allegations 'like or related to' his constructive discharge claim. Although Ayorinde asserted that he was discriminated against on the basis of his race and age because his supervisor failed to schedule him for jobs, he did not allege facts suggesting his 'working conditions [became] so intolerable that a reasonable person in [Ayorinde's] position would have felt compelled to resign.'") (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)); *Stone*, 590 F. App'x at 337–38 (EEOC charges of discrimination, harassment, and retaliation failed to administratively exhaust plaintiff's constructive-discharge claim when, "[a]t the time she filed her 2010 EEOC charge[, Stone] was still employed with the Department" and "Stone did not allege any facts in her 2010 EEOC charges that reasonably encompass her later claims for constructive discharge").

## 2.   Plaintiff's salary-related claims cannot satisfy the adverse-action requirement because they are administratively unexhausted.

It is undisputed that Plaintiff's salary-related claims under the TCHRA are unexhausted. Plaintiff admits she filed her agency charge "more than 180 days after the initial setting of her

---

1. The Fifth Circuit follows the well-established rule that a district court may refer to documents attached to a motion to dismiss without converting the motion to one for summary judgment if the documents are referred to in the plaintiff's complaint and central to her claims. *See, e.g., Sligh v. City of Conroe*, 87 F.4th 290, 297 (5th Cir. 2023) (citing *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016)). District courts in the Western District follow this practice as well. *See, e.g., Big Thirst, Inc. v. Donoho*, 657 F.Supp.3d 914, 922 (W.D. 2023). Plaintiff's TWC charge is cited in her Petition and is central to her claims, as she alleges UT retaliated against her for filing it.

eBITS salary," and that her salary-related TCHRA claims are therefore barred. ECF No. 18 at 3.[2]

Plaintiff's salary-related allegations under Title VII are likewise unexhausted. Although filed within Title VII's 300-day deadline of the decision setting her salary, Plaintiff's EEOC charge said nothing whatsoever about her salary or her failure to receive raises or equity/structural adjustments. *See* App. A. Indeed, Plaintiff effectively disclaimed any complaint about her initial salary by stating in her charge that the "earliest date" discrimination took place was in June 2023, the month *after* her salary was set and she began working in eBITS. *Id.*

Nor would the three examples of mistreatment Plaintiff described in her EEOC charge—"increased scrutiny," "being excluded from management . . . and staff meetings," and being "disciplined for absences," *id.*—be reasonably be expected to spark an investigation into Plaintiff's salary. *See Spears v. DSM Copolymer, Inc.*, 103 F.3d 124, 124 (5th Cir. 1996) (charge allegation of race-based failure to promote could not be expected to lead the EEOC to investigate a claim of pay discrimination); *Gates v. Lyondell Petrochem. Co.*, 227 F. App'x 409, 409 (5th Cir. 2007) (plaintiff's unequal pay claims could not be expected to grow out of her EEOC charge, which alleged termination and failure to promote but did not mention unequal pay); *Nuñez-Renck v. IBM Corp.*, 2024 WL 4995572, at *5–6 (N.D. Tex. 2024) (plaintiff's pay discrimination allegations were not sufficiently like or related to the bullying allegations in her EEOC charge).

### 3. The other forms of mistreatment Plaintiff alleges do not qualify as adverse employment actions under Title VII or the TCHRA.

Plaintiff's allegations apart from her constructive-discharge and salary-related allegations—specifically, her allegations that she was disciplined for absences, placed her under

---

2. Plaintiff alleges that she started working in eBITS in May 2023, that Jacaman "set her initial eBITS salary at a lower rate than similarly situated peers" and that she was "bypassed for merit raises for 2022-2023 and 2023-2024." ECF No. 20 at 3-4. But Plaintiff did not file an EEOC charge until January 2024, *id.* at 3—well beyond the 180-day deadline under the TCHRA to file a complaint regarding the decision setting her salary.

increased scrutiny, subjected to disrespectful and racist commentary, given an altered work schedule, and not permitted to do university coursework during the workday—do not qualify as adverse employment actions. None of those purported actions qualifies as an ultimate employment decision under the TCHRA. *See Winters*, 132 S.W.3d at 575 (ultimate employment decisions are events involving "hiring, granting leave, discharging, promoting, and compensating"). And while the Fifth Circuit no longer reads Title VII as requiring that adverse employment actions be ultimate employment decisions, adverse employment actions still must plausibly affect the "terms, conditions, or privileges" of employment. *See Hamilton*, 79 F.4th at 503.

Here, Plaintiff's only allegation of misconduct that changed the terms, conditions, or privileges of her employment was Jacaman's purported revocation of an agreement that allowed Plaintiff to end her workday early two days per week. ECF No. 20 at 3. And while Plaintiff alleges that Jacaman "reprimanded" and "disciplined" her, she does not allege that those actions "affect[ed] her] job title, grade, hours, salary, or benefits or cause[d] a diminution in prestige or change in standing among [her] coworkers." *Lemonia*, 2023 WL 6878915, at *7 (cleaned up).

### B.    Plaintiff has not alleged facts from which discriminatory conduct can plausibly be inferred.

#### 1.    The facts in the amended petition, if true, would not support a hostile work environment or other discriminatory conduct.

In lieu of demonstrating an adverse action such as termination or constructive discharge, "the plaintiff can show that she remained in her position and endured a hostile work environment." *Waffle House*, 313 S.W.3d at 805–06. The hostile work environment must be based on discriminatory conduct directed at a legally protected characteristic. *See id.*; *see also Twigland Fashions, Ltd. v. Miller*, 335 S.W.3d 206, 218 (Tex. App.—Austin 2010, no pet.); *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). Conclusory allegations are insufficient to make a prima facie hostile work environment claim. *See Raj v. La. State Univ.*, 714

F.3d 322, 331 (5th Cir. 2013) ("As Raj has not alleged any connection between his race and national origin and the harassment alleged in the complaint, he has not pled a claim of hostile work environment that raises his right to relief 'above the speculative level.'"); *Ray-Brown v. Longview ISD*, 2013 WL 5433476, at *4 (Tex. App.—Texarkana 2013, no pet.) (plaintiff "failed to provide evidence, other than conclusory allegations and speculation, that any harassment she received was based on her race").

"For harassment to affect a term, condition, or privilege of employment, it 'must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Clark*, 116 F.4th at 479 (quoting *Wantou v. Wal-Mart Stores*, 23 F.4th 422, 433 (5th Cir. 2022) and *West v. City of Houston*, 960 F.3d 736, 741–42 (5th Cir. 2020)). "The plaintiff must show subjective awareness of the hostility or abusiveness and that his awareness is objectively reasonable." *Id.* Whether a work environment is objectively hostile depends on the totality of the circumstances, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.*

Here, Plaintiff alleges she was excluded from management and staff meetings, was disciplined for absences, was placed under increased scrutiny, lost management responsibilities, was required to work later than she agreed to and was reprimanded "for leaving at the agreed-upon time," and was not permitted to do university coursework during her workday. ECF No. 20 at 3. Even treating these allegations as true, they do not reflect an abusive working environment filled with intimidation, ridicule, or insult. *See Clark*, 116 F.4th at 479; *Kang v. Bd. of Supervisors of La. State Univ.*, 75 F. App'x 974, 977 (5th Cir. 2003) (poor performance evaluation and unjust criticism in front of plaintiff's peers did not constitute hostile working environment). Moreover,

Plaintiff "does not allege any facts that link the alleged harassment with [her] race." *Raj*, 714 F.3d at 331. Indeed, Plaintiff's allegation that Jacaman (who hired Plaintiff) began mistreating her only after she disclosed her disability status to him, ECF No. 20 at 2, the month after she began working in eBITS, implies that Plaintiff's race had nothing to do with her purported mistreatment.

Plaintiff also alleged Jacaman subjected her to "disrespectful and racist commentary," *id.* at 3, but this conclusory allegation cannot provide the requisite nexus when she fails to disclose what Jacaman purportedly said. *See Ellis v. Cargill Meat Solutions*, 2024 WL 4692024, at *2 (5th Cir. 2024). In *Ellis*, the plaintiff "allege[d] that he experienced harassment 'by repetitive use of racial slurs' and retaliation on the basis of race", and "demeaning remarks," but his complaint failed to specify "what was said" to him. *Id*. Without that crucial information, the Fifth Circuit concluded, the plaintiff's "'naked assertions' do not 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[t]he facts alleged do not support 'more than the mere possibility of misconduct.'" *Id*. (quoting *Iqbal*, 556 U.S. at 678–79).

A plaintiff's specificity regarding comments purportedly uttered by a supervisor is crucial because commentary that merely "relat[es] to race" but does not involve "'an unambiguous racial epithet'" is typically insufficient to plead a hostile work environment. *Thomas v. Cook Children's Health Care Sys.*, 2023 WL 5972048, at *3 (5th Cir. Sept. 14, 2023) (quoting *Woods v. Cantrell*, 29 F.4th 284, 287 (5th Cir. 2022)). Accordingly, the Fifth Circuit has held that no hostile work environment existed as a matter of law in numerous cases where the plaintiff was subjected to racially tinged remarks, either alone or coupled with other, facially race-neutral mistreatment. *See Price v. Valvoline, LLC*, 88 F.4th 1062, 1067 (5th Cir. 2023) (plaintiff was subjected to racially offensive comments and facially race-neutral actions such as being yelled at for asking questions and having his work "nitpick[ed]"); *Daywalker v. UTMB at Galveston*, No. 22-40813, 2024 WL

94297, at *10 (5th Cir. Jan. 19, 2024) ("At most, [the plaintiff] has shown that [her supervisor] made a handful of statements offensive to employees of color over the span of a few years"); *Thomas*, 2023 WL 5972048, at *3 (plaintiff complained of facially race-neutral actions by his employer, including relying on false patient complaints, deviating from policies and procedures, refusing to answer the plaintiff's questions, staging sham meetings, and imposing "ever-changing and exclusive terms of conditions" for plaintiff's continued employment, as well as remark that, "as an African American male [plaintiff would] have to work twice as hard"); *Collier v. Dallas Cty. Hosp. Dist.*, 827 F. App'x 373, 377–78 (5th Cir. 2020) (plaintiff subjected to "two instances of racial graffiti and being called 'boy'"). Here, because Plaintiff does not specify what Jacaman allegedly said, it cannot be inferred that his commentary was worse than the kind of "mere offensive utterance," *Harris*, 510 U.S. at 23, that does not give rise to a hostile work environment.

### 2. Plaintiff's allegations do not support a prima facie case that she was treated less favorably than similarly situated comparators.

In her original complaint, Plaintiff made the conclusory allegation that she was "treated worse than similarly situated employees." ECF No. 1–3 at 2–4. That allegation is plainly insufficient; a plaintiff "must provide more than a formulaic recitation of this element." *Longoria v. Via Metro. Transit*, 2022 WL 1445396, at *10 (W.D. Tex. 2022). In her amended complaint, Plaintiff now identifies *thirty-two* individuals who she claims are "similarly situated" but were allegedly treated better than her. ECF No. 20 at 5. But this shotgun approach fares no better.

"Similarly situated" is an exacting standard. To be "similarly situated" under Title VII, two employees must be in "nearly identical" circumstances, meaning they "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 651 (5th Cir. 2025). Likewise, under the TCHRA, "[e]mployees are similarly situated

if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Ysleta ISD v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005).

Plaintiff has not pleaded any facts about her purported comparators that would allow the Court to reasonably infer that Plaintiff and those 32 individuals all shared the same supervisor, the same job title or responsibilities, the same experience, and that their work conflicts arose from comparable circumstances. *See Ayorinde*, 121 F.4th at 507 (plaintiff fails to establish a comparator is similarly situated when plaintiff "asserts in a conclusory fashion" the similarly situated element is met); *Chhim*, 836 F.3d at 471 (affirming dismissal of employment discrimination claim where, although plaintiff alleged defendant hired a similarly situated applicant who was less qualified, "Chhim's complaint contains no facts plausibly suggesting that Chhim was better or equally qualified for the supervisory position than the person the University hired"); *Longoria*, 2022 WL 1445396, at *9 (plaintiff's claim "he was treated less favorably than other employees who had not requested FMLA" was insufficient where there was "no pleading or factual allegation to support this element"); *Wije v. Burns*, 2017 WL 1901975, at *3 (W.D. Tex. May 8, 2017) (although plaintiff "list[ed] the names of seven individuals who were allegedly hired instead of [him]," he did "not allege facts that establish similarly situated persons outside of his protected group were hired instead of [him]"). Except for Emily Cauthen, whom Plaintiff describes as her "white predecessor," ECF No. 20 at 5, Plaintiff does not identify the races any of her 32 purported comparators or allege any facts about them that would allow the Court to reasonably infer that they were similarly situated—including whether they all performed essentially the same job as Plaintiff, shared a common supervisor, and had comparable work experiences.

Further, Plaintiff's pleadings claiming race-based discrimination in pay are deficient. To make a prima facie case of wage discrimination under Title VII, a plaintiff must show she is a

member of a protected class who "was paid less than a non-member for work requiring substantially the same responsibility," which requires the plaintiff to show that her circumstances were "nearly identical to those of a better-paid employee who is not a member of the protected class." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). But Plaintiff's allegations regarding pay are conclusory and fail to "raise a right of relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). Again, Plaintiff has not alleged (apart from Cauthen) that her comparators had the same job responsibilities that she held, nor has she alleged that any of her comparators received raises and structural adjustments when Plaintiff did not. *See, e.g.*, *Brooks v. W. Tex. Credit Union*, 2025 WL 596647, at *5 (W.D. Tex. Jan. 31, 2025) ("With no [pleaded] facts indicating the two positions are even somewhat similar, it is impossible for the Court to determine whether Plaintiff was paid less because she is female.").

Finally, Plaintiff's assertion she was "bypassed for merit raises for 2022–2023 and 2023–2024" for discriminatory reasons, ECF No. 20 at 4, is facially implausible. Plaintiff did not start working in eBITS until May 2023 and she resigned less than one year later, in April 2024. *Id.* at 4–5. Per UT policy, merit raises for the 2022–2023 year took effect in September 2022, long before Plaintiff arrived in eBITS.[3] And even though Plaintiff was working in eBITS in September 2023 when raises for the 2023-24 year took effect, but she began in eBITS after the evaluation period ended (May 1, 2022–April 30, 2023) and had been not been in her role for "at least six months," as UT policy requires. In any event, Plaintiff does not allege her 32 purported comparators all

---

3  *See* UT Austin Univ. Policy Office, Handbook of Operating Procedures 5-3140 § VII.E.3. https://secure4.compliancebridge.com/utexas/public/getdoc.php?file=5-3140 (last visited Feb. 2, 2024). The Court may, and should, take judicial notice of this publicly available policy, which was adopted in 2019, in resolving this motion to dismiss. See, e.g., *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) ("In ruling on Rule 12(b)(6) motions, district courts [may] rely on matters of public record."); Fed. R. Evid. 201.

received merit bonuses and structural/equity adjustments despite working in eBITS for less than one year, which would have to be the case for them to be similarly situated to Plaintiff.

## II.    Plaintiff has not stated a valid claim for disability discrimination under the TCHRA or the Rehabilitation Act.

Plaintiff alleges UT discriminated against her on the basis of her disability "by treating her worse than similarly situated employees without disabilities . . . and by constructively discharging her." ECF No. 20 at 5. But this conclusory allegation suffers from the same core flaws discussed above regarding her claims of race discrimination. Plaintiff alleges no facts from which it could be reasonably inferred that Jacaman treated her worse than similarly situated but non-disabled employees or that this difference was *because of* her disability. *See supra* Part I.B.2; *Casillas v. McDonough*, 2024 WL 760236, at *5 (W.D. Tex. Feb. 22, 2024) (dismissing claims where plaintiff "alleges no facts showing similarly situated employees who . . . did not have disabilities were treated more favorably than him"). Moreover, Plaintiff's constructive-discharge claim is both inadequately pleaded and administratively unexhausted, as are her salary-related claims. *See supra* Part I.A.1.a-b, A.2. The specific actions she alleges Jacaman took against her are not adverse employment actions. *See supra* Part I.A.3. And Plaintiff does not allege facts that would imply the existence of a hostile work environment based on disability. *See supra* Part I.B.1.

## III.    Plaintiff has not stated a valid retaliation claim.

### A.    Plaintiff has not stated a viable retaliation claim under the TCHRA, Title VII, or the Rehabilitation Act because she identifies no adverse employment action that allegedly began after she filed an EEOC charge in January 2024.

"To establish a prima facie case of retaliation, an employee must show: (1) she engaged in an activity protected by the TCHRA, (2) she experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action." *Clark*, 544 S.W.3d at 782. Similar elements are required for a retaliation claim under Title VII, the

Rehabilitation Act, and the FMLA. *See Norsworthy*, 70 F.4th at 336–37 & n.4 (describing similar retaliation standard under Title VII and TCHRA); *Coleman v. Kijakzi*, 2023 WL 2660167, *4 (5th Cir. Mar. 28, 2023) ("[T]he elements of a retaliation claim under the Rehabilitation Act are identical to Title VII."); *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) ("The substantive law governing Title VII and TCHRA retaliation claims is identical.").

Plaintiff's filing of an EEOC charge in January 2024 is a protected activity satisfying the first element for a retaliation claim under the TCHRA, Title VII, and the Rehabilitation Act. But she fails to plead facts that indicate she experienced a material adverse employment action or that imply a causal link between any such alleged action and her protected activity.

For retaliation purposes, an adverse employment action is one that "a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Stone*, 590 F. App'x at 341. "[P]etty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* "Though a plaintiff need not . . . establish a prima facie case of retaliation at the pleading stage, he or she still must plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss." *Smith v. Kendall*, 2024 WL 4442040, at *6 (5th Cir. 2024).

Plaintiff claims UT retaliated against her by constructively discharging her and "by treating her worse than similarly situated employees" who either "did not oppose discrimination" (for her TCHRA, Title VII, and Rehabilitation Act retaliation claims) or "did not use FMLA-protected leave" (for her FMLA retaliation claim)." ECF No. 20 at 6. As discussed above, however, her constructive-discharge claim is both inadequately pleaded and administratively unexhausted. *See supra* Part I.A.1.a-b. Accordingly, that claim cannot satisfy the requirement of an adverse employment action. Nor does Plaintiff allege any facts that would allow an inference that the

numerous comparators she has named, ECF No. 20 at 5, are similarly situated to Plaintiff in any relevant respect. *See supra* Part I.B.2.

In her original complaint, Plaintiff alleged that Jacaman's "negative treatment" of her "intensified" after she filed the EEOC charge, but she did not identify any specific retaliatory acts. Plaintiff's vague charge of "negative treatment" does not allow the Court to reasonably infer that UT subjected her to an adverse employment action in retaliation for her EEOC charge. *See Norsworthy*, 70 F.4th at 336 (upholding dismissal of retaliation claim where complaint "offer[ed] no specifics about the forms of retaliation, harassment, taunting, and badgering to which Norsworthy was allegedly subjected"); *Lopez v. Univ. of Tex. at Austin*, 2023 WL 8445742, at *3 (W.D. Tex. 2023) (dismissing retaliation claims where plaintiff's pleadings "fail[ed] to explain how exactly Lopez was harassed or retaliated against").

After UT pointed out that deficiency in its Rule 12c motion, ECF No. 15 at 9–14, Plaintiff for the first time alleged several specific actions Jacaman purportedly took against her after she filed her EEOC charge. In paragraph 9 of her amended complaint, Plaintiff now alleges that

> Jacaman's negative treatment of Ms. Page only intensified, including punishment for using FMLA leave to care for her father, racist comments, micromanagement, second-guessing, removal of managerial responsibilities, refusal to provide a flexible work arrangement like what is provided to other workers or other reasonable accommodation, and exclusion from meetings calculated to encourage her resignation. Jacaman also punished Ms. Page for attempting to use the University's Staff Tuition Assistance Program and ultimately denied her access to that program and the policy allowing employees to take University course work during the workday.

ECF 20 at 3–4. Those allegations, however, are just summarized or otherwise lightly rephrased versions of the actions Plaintiff alleges Jacaman took against her *before* she filed the EEOC charge. *Id.* at 3. A side-by-side comparison of each type of purported mistreatment shows this clearly:

| Paragraph 8 description (pre-EEOC filing) | Paragraph 9 description (post-EEOC filing) |
|---|---|
| "excluded Ms. Page from management meetings and staff meetings pertaining to her responsibilities" | "exclusion from meetings" |
| "disciplined her for absences to care for her father that were approved for protected leave under the FMLA" | "punishment for using FMLA leave to care for her father" |
| "disrespectful and racist commentary" | "racist comments" |
| "placed her under increased scrutiny" | "micromanagement, second-guessing" |
| "removed management responsibilities from her by dealing directly with her subordinates" | "removal of managerial responsibilities" |
| "revoked [prior] approval [regarding when her workday ended] and reprimanded her for leaving at the agreed-upon time" | "refusal to provide a flexible work arrangement" |
| "refused to allow Ms. Page to take advantage of a University policy allowing employees to take university course work during the workday" | "punished Ms. Page for attempting to use the University's Staff Tuition Assistance Program and ultimately denied her access to that program and the policy allowing employees to take University course work during the workday." |

*Id.* at 3. Even if those alleged actions could qualify as adverse employment actions, they would

not constitute retaliation for Plaintiff's EEOC charge because Jacaman allegedly took them *before*

she filed that charge. *See Norsworthy*, 70 F.4th at 337 (pleaded facts must show causal link).

To the extent Plaintiff alleges retaliation in the form of pay discrimination, that is

insufficient for the same reason. Plaintiff alleges "Jacaman set her initial eBITS salary at a lower

rate than her similarly situated peers" and that "Jacaman's actions led to Ms. Page being bypassed

for merit raises for 2022–2023 and 2023–2024 and for equity and structural adjustments." ECF 20

at 4. But the timing of her allegations precludes retaliation. Plaintiff's salary, which was set before

she began working in eBITS in May 2023, could not have been set in retaliation for her protected

activity of filing a EEOC charge in January 2024. Similarly, Plaintiff's failure to receive a merit

raise or structural adjustment for either the 2022–23 or 2023–24 academic years could not possibly

have been retaliation for her January 2024 protected activity. As discussed above, under UT policy, merit raises take effect September 1 of each year. Thus, merit raises for 2022–23 took effect September 1, 2022; merit raises for 2023–24 took effect September 1, 2023. Both of those effective dates occurred long before Plaintiff filed her EEOC charge in 2024, so her lack of merit raises could not have been retaliation for that charge.

**B.    Plaintiff has not stated a viable retaliation claim under the FMLA.**

Plaintiff's FMLA retaliation claim differs from her other retaliation claims in that the alleged protected activity is her use of "protected leave under the FMLA to care for her father" rather than her report of unlawful discrimination. ECF No. 20 at 6. But her FMLA retaliation claim is similarly defective in that Plaintiff fails to plead any specific facts from which it could reasonably be inferred that UT took an adverse employment action against her for using FMLA leave. Plaintiff alleges that Jacaman "disciplined" her for using "protected leave," ECF 20 at 3, but she does not allege what the purported discipline involved or that she suffered harm from it.

Claims of retaliation should be dismissed where "the complaint fails to allege facts that could show a causal link between any alleged protected activities . . . and the alleged adverse actions." *Norsworthy*, 70 F.4th at 337. To have "plausibly alleged the ultimate element of causation," the plaintiff "had to plead facts permitting a reasonable inference that [her employer] terminated her because of her [protected activities]." *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021). Plaintiff has not done that, so the Court should dismiss her FMLA claim.

**CONCLUSION**

For the foregoing reasons, the Court should grant this motion, dismiss the claims in Plaintiff's amended complaint, and grant UT such further relief to which it may be entitled.

Respectfully submitted.

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

/s/ *Terri M. Abernathy*
**TERRI M. ABERNATHY**
Assistant Attorney General
Texas Bar No. 24062894
OFFICE OF THE ATTORNEY GENERAL
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone (512) 936-0562
Division Fax (512) 320-0667
Email terri.abernathy@oag.texas.gov

*Counsel for Defendant,*
*The University of Texas at Austin*

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2025, a true and correct copy of the foregoing document was served via the Court's CM/ECF system upon:

Matt Bachop
8140 N. Mopac Expy, Suite 4-250, Austin, Texas 78759
Phone (512) 474-6200
Fax (512) 474-7896
mbachop@ddollaw.com

*Counsel for Plaintiff, Nicolette D. Page*

/s/ *Terri M. Abernathy*
**TERRI M. ABERNATHY**
Assistant Attorney General

21