**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION**

| | | |
|---|---|---|
| NICOLETTE D. PAGE, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 1:24-cv-01249-DAE |
| | § | |
| UNIVERSITY OF TEXAS AT AUSTIN, | § | |
|     Defendant. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

TO THE HONORABLE SENIOR UNITED STATES DISTRICT JUDGE:

Plaintiff files this response in opposition to Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Document 21, filed 4/21/25).

## I.    INTRODUCTION

Defendant filed a Motion for Judgment on the Pleadings (Document 15) on March 14, 2025. In response, Ms. Page filed an amended pleading (Document 20) and a response to the motion (Document 18) explaining her positions on how the amended pleading resolved most of the alleged deficiencies in the original state-court petition that Ms. Page filed.

Defendant has now filed a Motion to Dismiss, which regurgitates many of the same arguments and largely fails to engage with the new material in Plaintiff's First Amended Complaint or the rebuttals to the same arguments that Ms. Page already briefed in her Response to the Motion for Judgment on the Pleadings.

## II.    ARGUMENTS AND AUTHORITIES

A.    **Plaintiff has pleaded a viable constructive-discharge claim.**

Defendant begins this motion by arguing that Ms. Page's "allegations are insufficient to state a constructive discharge claim." *Mot.* at 5–6. Defendant cites *Sacks v. Tex. S. Univ.*, 83 F.4th

340 (5th Cir. 2023), for the proposition that a "plaintiff's failure to allege significant actions by their employer that invoke multiple [non-exclusive] factors [reviewed by courts in analyzing claimed constructive discharges] is typically fatal to a constructive discharge claim." *Mot.* at 5. *Sacks* makes no such holding. Instead, although the *Sacks* court noted that the plaintiff had only cited evidence invoking one of the factors, the court reviewed the factual allegations in the complaint in totality, compared them to the elements of a constructive-discharge claim ("A plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign. [And] he must also show that he actually resigned."), and concluded that "Sacks does not allege conduct by TSU that plausibly—not just possibly—states a constructive discharge claim." 83 F.4th at 347–48. Neither *Sacks* nor any other Fifth Circuit case holds that a plaintiff must plead conduct invoking more than one factor. On the contrary, the Fifth Circuit has made clear that the list of factors is "not exclusive" and that the factors may be considered "singly or in combination." *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994). The factors do not alter the elements of the claim.

In addition, Defendant wholly fails to engage with the argument from Ms. Page's Response to Defendant's Motion for Judgment on the Pleadings (Document 18, at 2) that "Plaintiff's First Amended Complaint shows that at least three of the factors (reduction in job responsibilities, reassignment to menial or degrading work, and badgering and harassment calculated to encourage resignation) apply to Ms. Page's constructive discharge." Instead, Defendant argues that Ms. Page's claim that her supervisor Mark Jacaman removed management responsibilities from her by dealing directly with her subordinates "tacitly acknowledges that Jacaman did not actually alter her management duties." *Mot.* at 6. Defendant does not explain its position that Jacaman's actions

[2]

in taking over Ms. Page's management duties by performing them himself "did not actually alter her management duties." Nevertheless, Ms. Page has pleaded reduction in job responsibilities, harassment, and other constructive-discharge factors in a fashion that is more than sufficient to state a plausible claim and thus withstand a Rule 12(b)(6) challenge.

**B.    Plaintiff exhausted her constructive-discharge claim.**

Defendant's motion next argues that Ms. Page's constructive-discharge claim was not exhausted because it was not mentioned in her EEOC charge, even though Defendant acknowledges that the charge was filed while Ms. Page was still working in eBITS. *Mot.* at 7–8. Again, Defendant completely ignores Ms. Page's arguments on this issue that were included in her Response to the Motion for Judgment on the Pleadings (Document 18, at 4–6). Defendant does not respond to *Everett v. Central Mississippi, Inc. Head Start Program*, 444 Fed. Appx. 38 (5th Cir. 2011), a case cited by Ms. Page in that response, which involved a nearly identical fact pattern and a conclusion by the Fifth Circuit that the discharge claim had been administratively exhausted.

Defendant also fails to explain how an EEOC investigation would not "reasonably be expected to grow" to include a termination out of the same nucleus of facts included in the charge that initiated the investigation, which is what happened in this case. Rather than engage with these arguments, Defendant cites *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500 (5th Cir. 2024), a case that is nothing like this one because it involves a charge that did not mention constructive discharge, which was filed <u>after</u> the plaintiff resigned. Defendant also cites *Stone v. La. Dep't of Revenue*, 590 F. App'x 332 (5th Cir. 2014), which also bears no resemblance to this case. In *Stone*, the exhaustion analysis was based on the Court's finding that the plaintiff's original charge "failed

[3]

to allege facts sufficient to show she suffered disparate treatment" and was "insufficient to trigger an EEOC investigation" at all. *Id.* at 338.

Here, Ms. Page filed a sufficient charge before being forced to resign. Her constructive-discharge claim does not change the claims included in her charge other than the addition of the later-occurring adverse employment action, just like in *Everett*. She notified the EEOC of her termination on the same day it happened, telling the EEOC that she believed that she had been constructively discharged. *Document 18-1*. An EEOC investigation should reasonably be expected to include a termination based on the same set of operative facts that are included in the charge, especially when the EEOC is immediately notified about the termination. Accordingly, Ms. Page exhausted her administrative remedies on her constructive-discharge claim.

**C.    Plaintiff exhausted her claims relating to her pay.**

The next argument in Defendant's motion urges that Ms. Page failed to exhaust the allegations related to the discriminatory setting of her pay because they are not mentioned within the four corners of her EEOC charge. *Mot.* at 8–9. Again, Defendant has ignored Ms. Page's briefing and evidence on this issue (Document 18, at 6–7; Document 18-2; Document 18-3; Document 18-4), in which she showed that both parties briefed claims about salary disparities to the EEOC and cited a Fifth Circuit case for the proposition that both parties taking a position on a specific claim for the EEOC to investigate "creates a strong inference that such a claim was presented" in the administrative process. *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 (5th Cir. 1994). Because Ms. Page's pay claims were part of the EEOC's investigation, she has exhausted those claims, and this portion of Defendant's motion should be denied.

[4]

**D.**    **Plaintiff has pleaded that she suffered some harm respecting an identifiable term or condition of employment.**

Defendant's motion next argues that none of Ms. Page's other allegations about mistreatment "qualify as adverse employment actions" or "an ultimate employment decision." *Mot.* at 9–10. However, those are no longer the applicable standards. The U.S. Supreme Court made clear last year that to establish a Title VII discrimination claim, a worker need only "show some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024). Chapter 21 of the Texas Labor Code should be interpreted in accordance with that holding because that statute's primary purpose is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." TEX. LAB. CODE § 21.001(1).

Ms. Page has pleaded that she suffered harm respecting an identifiable term or condition of employment, as Defendant's motion acknowledges, *Mot.* at 10 (referring to the live pleading's "allegation of misconduct that changed the terms, conditions, or privileges of her employment"). This portion of Defendant's motion should be denied.

**E.**    **Plaintiff has adequately pleaded that she was subjected to a hostile work environment.**

Defendant's next argument is that Plaintiff has not pleaded a viable hostile-work-environment claim because her live pleading does "not reflect an abusive working environment filled with intimidation, ridicule, or insult" and because she has not adequately connected the mistreatment against her with her protected characteristics. *Mot.* at 10–13. However, the case cited by Defendant makes clear that "an abusive working environment filled with intimidation, ridicule, or insult" is not the standard; instead that represents "an especially egregious example of

[5]

harassment. It does not mark the boundary of what is actionable." *Clark v. City of Alexandria*, 116

F.4th 472, 479 (5th Cir. 2024) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)). The

standard requires the Court to consider the totality of employment circumstances to determine

whether the working environment was objectively hostile. *Id.* The Court may consider the

frequency and severity of the discriminatory conduct and whether it interferes with an employee's

work performance in making that determination. *Id.* Ms. Page has pleaded about discriminatory

conduct that was sufficiently frequent, severe, and impactful on her job performance to make a

claim of hostile work environment.

With respect to linking the mistreatment with Ms. Page's protected characteristics, the live

pleading primarily relies on disparate treatment with those outside the protected classes. Defendant

attacks the usefulness of the comparators, urging that "Plaintiff has not pleaded any facts about

her purported comparators that would allow the Court to reasonably infer that Plaintiff and those

32 individuals all shared the same supervisor, the same job title or responsibilities, the same

experience, and that their work conflicts arose from comparable circumstances." *Mot.* at 13–15.

One of the many comparators whom Ms. Page has identified is the white, non-disabled worker

who was her immediate predecessor in her eBITS role, Emily Cauthen. *1st Am. Compl.* at ¶¶12,

13. When challenging the comparator pleadings, Defendant excludes Ms. Cauthen ("Except for

Emily Cauthen"; "apart from Cauthen"). *Mot.* at 14–15. Defendant never explains why it is

appropriate to exclude Ms. Cauthen from the analysis or why the pleadings listing her as a

comparator are insufficient to plead a causal link through disparate treatment. The Court cannot

simply ignore a portion of Ms. Page's complaint and then rule that her claims should be dismissed

[6]

because the remainder is insufficient. As Defendant has tacitly conceded, Ms. Page has sufficiently pleaded disparate treatment. This portion of Defendant's motion should be denied.

**F.      Plaintiff has pleaded viable retaliation claims.**

Defendant's motion next argues that Ms. Page's retaliation claims must be dismissed on the pleadings "because she identifies no adverse employment action that allegedly began after she filed an EEOC charge in January 2024." *Mot.* at 16–20. This argument is easily rejected because that is not the standard. Instead, retaliation claims can be based on any "acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 70 (2006).

As Defendant's motion acknowledges, Ms. Page included plenty of conduct in her live pleading to support the notion that Defendant took actions against her that would dissuade a reasonable worker from complaining about discrimination, making clear that Jacaman's mistreatment of her intensified after her complaint and specifically pointing to "punishment for using FMLA leave to care for her father, racist comments, micromanagement, second-guessing, removal of managerial responsibilities, refusal to provide a flexible work arrangement like what is provided to other workers or other reasonable accommodation, and exclusion from meetings calculated to encourage her resignation"; "punish[ing] Ms. Page for attempting to use the University's Staff Tuition Assistance Program and ultimately den[ying] her access to that program and the policy allowing employees to take University course work during the workday[,] which made it more difficult for Ms. Page to succeed in her MBA program while working in eBITS"; and "[r]emoving the schedule flexibility that was a key part of the understanding that led Ms. Page to accept the eBITS position, without justification."

Ms. Page is not required to plead a new adverse action that started after filing her EEOC charge. Her pleading that her supervisor's treatment of her went from bad to worse, with specific examples, is sufficient to support a retaliation claim.

Defendant includes an extra attack on Ms. Page's FMLA retaliation claim, claiming that she only alleges that she was "disciplined" for using FMLA leave, without additional detail, and that she has insufficiently pleaded causation. *Mot.* at 20. This argument should be rejected because all the mistreatment against Ms. Page outlined in the live pleading is attributed (in part) to retaliation for her use of FMLA leave, which was ongoing when she joined eBITS. In addition, Ms. Page has sufficiently pleaded causation by pleading about her supervisor's hostility to her use of FMLA leave and pleading that she was treated worse than similarly situated employees who did not use FMLA leave. This portion of Defendant's motion should be denied.

### III.    CONCLUSION AND PRAYER

For these reasons, Ms. Page requests that the Court deny Defendant's motion on all grounds.

*Respectfully submitted,*

DEATS DURST & OWEN, PLLC

            /s/ Matt Bachop
Matt Bachop
TBN: 24055127
mbachop@ddollaw.com
8140 N Mopac Expy, Suite 4-250
Austin, Texas 78759
(512) 474-6200
FAX (512) 474-7896

Attorney for Plaintiff

[8]

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served on counsel for Defendant, Terri Abernathy, Terri.Abernathy@oag.texas.gov, OFFICE OF THE ATTORNEY GENERAL, P.O. Box 12548, Capitol Station, Austin, Texas 78711-2548, by the Court's CM/ECF system on this 5th day of May, 2025.

/s/ Matt Bachop
Matt Bachop

[9]