IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NICOLETTE D. PAGE, | § | NO. 1:24-CV-01249-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| | § | |
| UNIVERSITY OF TEXAS AT | § | |
| AUSTIN, | § | |
| | § | |
| | § | |
| Defendant. | § | |

_____

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is a Motion to Dismiss filed on April 21, 2025.

(Dkt. # 21.)  Plaintiff Nicolette D. Page ("Page" or "Plaintiff") responded on May

5, 2025 (Dkt. # 23), and Defendant University of Texas at Austin ("UT" or

"Defendant") replied on May 12, 2025 (Dkt. # 24).  The Court finds this matter

suitable for disposition without a hearing.  After careful consideration of the filings

and the relevant law, the Court **GRANTS** Defendant's Motion to Dismiss (Dkt.

# 21) **WITH LEAVE TO AMEND**.

BACKGROUND

Plaintiff is a Black-Latina woman who was hired by Defendant in

August 2019 and later transferred to the role of Enterprise Application Support

1

Manager for Defendant's Enterprise Business Technology Solutions ("eBITS")

department in May 2023.  (Dkt. # 20 at 2.)

On or around June 2, 2023, Plaintiff disclosed to her manager, Mark

Jacaman ("Jacaman"), her status as a person with a disability under the

Rehabilitation Act of 1973 and Chapter 21 of the Texas Labor Code.  (Id.)

Plaintiff alleges that after the disclosure, Jacaman singled Plaintiff out for negative

treatment.  This alleged mistreatment includes:

> Jacaman excluded Ms. Page from management meetings and staff
> meetings pertaining to her responsibilities, he disciplined her for
> absences to care for her father that were approved for protected leave
> under the FMLA, he subjected her to disrespectful and racist
> commentary, he placed her under increased scrutiny, and he removed
> management responsibilities from her by dealing directly with her
> subordinates. Although Ms. Page was approved before starting her
> eBITS position to end her workday at 3:30 p.m. on Mondays and
> Tuesdays to attend classes for her MBA program at the University,
> Jacaman revoked that approval and reprimanded her for leaving at the
> agreed-upon time . . . . Jacaman also refused to allow Ms. Page to take
> advantage of a University policy allowing employees to take university
> course work during the workday.

(Id. at 2–3.)

Plaintiff filed a charge of discrimination with the Equal Employment

Opportunity Commission and the Texas Workforce Commission in January 2024.

(Id.; Dkt. # 22.)  Plaintiff alleges that Jacaman's negative treatment of her

intensified after she filed her charge.  (Id. at 3.)  Plaintiff further alleges that

Jacaman's harassment became so overwhelming that she was forced to resign from

2

her eBITS position in April 2024.  (Id. at 4.)  Lastly, Plaintiff maintains that she

suffered mental and financial damages as a result.  (Id.)  She alleges that Jacaman

set her initial eBITS salary at a lower rate than her similarly situated peers and that

Jacaman's actions led to Plaintiff being bypassed for merit raises for 2022-2023

and 2023-2024 and for equity and structural adjustments.  (Id.)  Plaintiff now

works for a different department at UT and maintains that "[t]his suppression of

[her] pay will affect the trajectory of her compensation throughout her career with

UT . . . ."  (Id. at 4–5.)

Plaintiff sued Defendant in the 201st Judicial District Court of Travis

County, Texas, in September 2024.  (See Dkt. # 1-3.)  Defendant removed to

federal court on October 18, 2024.  (Dkt. # 1.)  Defendant moved for Judgment on

the Pleadings on March 14, 2025.  (Dkt. # 15.)  Plaintiff filed a Response in

Opposition (Dkt. # 18) but subsequently filed her First Amended Complaint

("Complaint") on April 7, 2025, thereby mooting the motion.  (Dkt. # 20.)  On

April 21, 2025, Defendant filed a Motion to Dismiss pursuant to Rule 12(b)(6).

(Dkt. # 21.)  On May 5, 2025, Plaintiff filed a Response in Opposition.  (Dkt.

# 23.)  On May 12, 2025, Defendant filed a Reply.  (Dkt. # 24.)

## LEGAL STANDARD

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a

claim, the court "accepts all well–pleaded facts as true, viewing them in the light

3

most favorable to the plaintiff."  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted).  The Supreme Court has explained that a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Dkt.

The tenet that a court must accept as true all allegations contained in a complaint is inapplicable to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678 (internal quotations and citations omitted).  Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations."  Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the Court addresses its inquiry is limited to the (1) facts set forth in the complaint, (2) documents attached to the

4

complaint, and (3) matters of which judicial notice may be taken under Federal Rules of Evidence 201.  Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019).

DISCUSSION

Plaintiff's Complaint alleges four causes of action: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Texas Labor Code Chapter 21 ("TCHRA"); (2) disability discrimination in violation of the Rehabilitation Act of 1973 and the TCHRA; (3) retaliation for opposing discrimination in violation of the TCHRA, Title VII, and the Rehabilitation Act; and (4) retaliation in violation of the Family and Medical Leave Act.  (Dkt. # 20 at 5–6.)  Defendant seeks dismissal of all claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. # 21.)

The Court first addresses Defendant's argument that several of Plaintiff's alleged adverse actions have not been administratively exhausted before proceeding to the merits.

I.   Administrative Exhaustion

Defendant argues that Plaintiff failed to administratively exhaust her constructive-discharge claim and salary-related claims.  (Dkt. # 21 at 4.)  Before filing a Title VII or TCHRA claim in federal court, a plaintiff must first exhaust their administrative remedies.  See Ernst v. Methodist Hosp. Sys., 1 F.4th 333, 337

(5th Cir. 2021) (Title VII); Hinkley v. Envoy Air, Inc., 968 F.3d 544, 552 (5th Cir. 2020) (TCHRA).  This requires filing a timely charge with the appropriate administrative agency and obtaining a right-to-sue letter.  Taylor v. Books A Million, Inc., 296 F.3d 376, 379 (5th Cir. 2002).  Under Title VII, a charge must typically be filed with the EEOC within 180 days of the "alleged unlawful employment practice."  42 U.S.C. § 2000e-5(e)(1).  The TCHRA imposes the same 180-day deadline for most claims.  Tex. Labor Code Ann. § 21.202(a) (West).  However, if a claimant "initially instituted proceedings" with a state or local agency, the Title VII deadline extends to 300 days.  42 U.S.C. § 2000e-5(e)(1).  This extension applies when a claimant dual-files a charge; however, the TCHRA deadline remains unchanged.  See Griffin v. City of Dallas, 26 F.3d 610, 612–13 (5th Cir. 1994); Lopez v. AT&T Mobility Servs. LLC, 767 F. Supp. 3d 406, 422 (W.D. Tex. 2025).

A plaintiff's subsequent lawsuit "may raise only the specific issue[s] made in the employee's administrative complaint and 'any kind of discrimination like or related to the charge's allegations.'"  Elgaghil v. Tarrant Cnty. Junior Coll., 45 S.W.3d 133, 141 (Tex. App.—Fort Worth 2000, pet. denied), (quoting Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1993)).  Because many complaints are made by workers unfamiliar with the technicalities of formal pleadings, courts construe the initial charge liberally and "look slightly beyond its four corners, to its

6

substance rather than its label." Pachecho v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006).

However, courts will not construe the charge to include facts that were initially omitted.  See Cnty. of Travis ex rel. Hamilton v. Manion, No. 03-11-00533-CV, 2012 WL 1839399, at *4 (Tex. App.—Austin May 17, 2012, no pet.) (mem. op.) (citing Harris v. Honda, 213 Fed. App'x 258, 261 (5th Cir. 2006)).  The charge must contain adequate factual basis to put the employer on notice of the existence and nature of the claims against it.  Santi v. Univ. of Tex. Health Science Ctr. at Houston, 312 S.W.3d 800, 805 (Tex. App.—Hous. [1st Dist.] 2009, no pet.).  A plaintiff's claim must logically stem from the allegations in their charge, such that both the agency and defendant are on notice of the nature of the claims. Lopez, 767 F. Supp. 3d at 422.  Title VII claims that raise theories of liability not reasonably related to the allegations contained in an EEOC charge are not properly exhausted.  Id. at 423.  To satisfy exhaustion, courts do not limit review solely to what is in the administrative charge itself but include everything that *arises out of* the Plaintiff's EEOC claim.  Filler v. Donley, 690 F.3d 643, 647 (5th Cir. 2012). The scope of what arises out of a Plaintiff's EEOC claim includes any factually related claims that could reasonably be expected to grow out of the EEOC's investigation of the claims stated in the charge, requiring an intensive analysis of

7

the substance of the statement within the charge.  See Thomas v. Texas Dep't of Crim. Justice, 220 F.3d 389, 395 (5th Cir. 2000); Pachecho, 448 F.3d at 789.

### A.   Constructive Discharge Claim

Defendant argues that Plaintiff's claims cannot be based upon her alleged constructive discharge because she has not administratively exhausted a constructive discharge claim.  (Dkt. # 21 at 4.)  Defendant does not argue that Plaintiff failed to file an EEOC charge within the requisite time period; rather, Defendant maintains that her EEOC charge does not mention constructive discharge, nor can such claim be expected to grow out of the charge.  (Id. at 7.)

Plaintiff filed her charge in January 2024 while she was still working at eBITS and several months before her alleged constructive discharge.[1]  (See Dkt. # 22.)  Thus, her charge could not have explicitly alleged constructive discharge. However, discrete acts that arise after the EEOC charge was filed must be included in a supplemental or amended charge for claims arising from those acts to be exhausted.  Phillips v. Caris Life Scis., Inc., 715 F. App'x 365, 369 (5th Cir. 2017).

---

[1] The Court may consider the EEOC/TWC charge without converting the motion to dismiss into a motion for summary judgment because the charge is cited in Plaintiff's Second Amended Complaint (Dkt. # 20 at 3) and is central to her claims as it is both a procedural requirement and she alleges Defendant retaliated against her for filing it.  See Sligh v. City of Conroe, Texas, 87 F.4th 290, 297 (5th Cir. 2023) ("In considering a motion to dismiss, we may also consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to her claim." (citation modified)).

Examples of discrete acts include termination, failure to promote, denial of transfer, refusal to hire, and resignation.  Nat'l R.R. Passenger Corp v. Morgan, 536 U.S. 101, 114 (2002).  See Ayonride v. Team Indus. Servs. Inc., 121 F.4th 500, 509 (5th Cir. 2024) (concluding a plaintiff failed to exhaust administrative remedies when he made no reference to his resignation in either of his EEOC charges); Green v. Brennan, 578 U.S. 547, 568 (2016) (Alito, J., concurring) (stating an employee's resignation was a discrete act).  Plaintiff has not alleged that she filed a supplemental or amended charge after her resignation.[2]

Plaintiff points to Everett v. Cent. Mississippi, Inc. Head Start Program, 444 F. App'x 38, 45 (5th Cir. 2011), to support her contention that she has administratively exhausted any claims arising from her constructive discharge. (Dkt. # 23 at 3.)  In Everett, the Fifth Circuit found that the plaintiff administratively exhausted her retaliation claim based in part on her termination, even though the plaintiff did not amend her EEOC charge after she was terminated. Id.  The Court reasoned that "the substance of the [plaintiff's] retaliation claim has

_____

[2] Plaintiff, in her Response, argues that she notified the EEOC of her resignation on the same day it happened.  (Dkt. # 23 at 4.)  She points to an exhibit attached to prior briefing.  (Dkt. # 18-1.)  However, this allegation is not included in the four corners of the Complaint and the exhibit is not attached to the Complaint.  (See generally Dkt. # 20.)  Nor is the letter exhibit signed and verified as required by EEOC regulations.  See 29 C.F.R. § 1601.9.  Further, there is no indication that the letter was received by the EEOC and made part of the administrative record, and thus the Court will not take judicial notice of the letter nor take it into consideration.

not changed in this suit other than the addition of the later-occurring adverse employment action[,]" and the defendant conceded that it was arguable that the EEOC could have learned of her termination in the course of investigating the charge.  Id.  While this supports Plaintiff's position, this case is plainly at odds with the aforementioned Fifth Circuit precedent requiring a supplemental or amended charge.  However, the Court may still reconcile this apparent conflict by distinguishing the present case from Everett and other relevant cases.

In Everett, in addition to the defendant's concession that the EEOC could have learned of the plaintiff's termination in the course of their investigation, the Fifth Circuit also based its holding on the finding that the substance of the plaintiff's claim was not changed other than the addition of the termination action. Id.  In contrast, in Ayorinde v. Team Indus. Servs. Inc., the Fifth Circuit found that the plaintiff's constructive discharge claim was not administratively exhausted because his EEOC charge made no reference to his resignation and, importantly, his alleged facts did not suggest that his "working conditions became so intolerable that a reasonable person in [plaintiff's] position would have felt compelled to resign."  121 F.4th 500, 509 (5th Cir. 2024) (citation modified).  Although this case is distinguishable because the plaintiff resigned *before* filing his EEOC charge, the court's focus on the plaintiff's failure to plead facts that could plausibly support a constructive discharge claim remains persuasive.  See id. at 505.  Again, in Stone

10

v. Louisiana Dep't of Revenue, the Fifth Circuit found that the plaintiff, who was still employed with the defendant when she filed her 2010 EEOC charge, "did not allege any facts in her 2010 EEOC charges that reasonably encompass her later claims for constructive discharge . . . ." 590 F. App'x 332, 338 (5th Cir. 2014). The Court did not require that the charge include the words "constructive discharge" but looked to whether the plaintiff alleged facts that could give rise to an investigation of the claim and put the employer on notice of the nature of the charges. Id. Lastly, the Court finds support in Merriman v. Potter, No. 5:05-CV-80 (DF), 2006 WL 8441134, at *6 (E.D. Tex. Apr. 28, 2006), aff'd, 251 F. App'x 960 (5th Cir. 2007). In Merriman, the court found that the plaintiff *did* administratively exhaust her constructive discharge claim, despite her failure to state the claim in her EEOC charge, because her charge alleged facts to support her separate hostile work environment claim. Id. The court reasoned that "the underlying harassment [the plaintiff must allege] is tantamount to both claims[,]" and thus, the facts plaintiff alleged to support her hostile work environment claim could plausibly be sufficient to also establish constructive discharge. Id.

These cases make clear that even where the plaintiff does not file an amended or supplemental EEOC charge, as is ordinarily required, the plaintiff's prior charge must at the very least allege facts that could support the constructive discharge claim. In the present case, Plaintiff's charge alleges that she experienced

11

"changes in [her] terms and conditions of employment[,]" and that she suffered discrimination and retaliation based on her race and in violation of the ADA.  (Dkt. # 22 at 2.)  Although Plaintiff need not articulate the correct legal conclusion, her charge must allege sufficient facts to support a claim that her working conditions were "so difficult or unpleasant that a reasonable person in [Plaintiff's] shoes felt compelled to resign."  Bourque v. Powell Elec. Mfg. Co., 617 F.2d 61, 65 (5th Cir. 1980).  The only changes to her working conditions that Plaintiff alleges is "increased scrutiny, and being excluded from management meetings, and staff meetings relevant to [her] department and subordinates[,]" as well as discipline for absences despite those absences being approved under the Family Medical Leave Act.  (Id.)  These allegations do not reasonably encompass a claim of constructive discharge because they do not suggest that her working conditions became so intolerable that a reasonable person in her shoes would feel compelled to resign. Thus, the Court finds that Plaintiff has failed to administratively exhaust her claim of constructive discharge.  Accordingly, the Court will not consider this alleged adverse action in support of Plaintiff's discrimination and retaliation claims.

   B.   Salary Claim

        Defendant next argues that any claims based upon the allegedly discriminatory setting of her pay are unexhausted because (1) Plaintiff filed her charge more than 180 days after the initial setting of her eBITS salary and thus any

12

salary-related TCHRA claims are time-barred, and (2) her EEOC charge did not mention her salary whatsoever and thus, despite being filed within the 300-day Title VII deadline, any salary-related allegations under Title VII are barred.  (Dkt. # 21 at 9–10.)  In response, Plaintiff again argues that although salary is not mentioned in the charge, both parties addressed Plaintiff's alleged salary disparities in correspondence with the EEOC.  (Dkts. ## 18 at 6; 23 at 4.)  In support, Plaintiff cites Defendant's position statement and Plaintiff's responses in rebuttal to Defendant's position statement.  (See Dkts. ## 18-2; 18-3; 18-4.)  Plaintiff maintains that this correspondence demonstrates that the EEOC considered her salary-related claims in the course of their investigation.  (Dkts. ## 18 at 6; 23 at 4) (citing Clark v. Kraft Foods, Inc., 18 F.3d 1278, 1280 (5th Cir. 1994) ("Albeit mindful that the actual scope of an EEOC investigation does not determine whether a claim is exhausted, we are also mindful that investigation of a particular claim creates a strong inference that such a claim was presented.")).

First, it is unclear whether the Court may consider Defendant's position statement to the EEOC without turning the present motion to dismiss into a motion for summary judgment.[3]  Although there is case law supporting the Court's consideration of Defendant's position statement, the Court is not

---

[3] The Court has already declined to take judicial notice of Plaintiff's response letters because there is no indication that they were received by the EEOC.  See discussion supra n.2.

convinced that it may consider such evidence in the present situation.  See Lopez v. AT&T Mobility Servs. LLC, 767 F. Supp. 3d 406, 427–28 (W.D. Tex. 2025) (considering the defendant's position statement in determining administrative exhaustion at motion to dismiss stage); Fox v. MHM Health Pros. LLC, No. CV-23-00190-PHX-DWL, 2024 WL 4364133, at *16–18 (D. Ariz. Sept. 30, 2024) (discussing court's authority to consider documents outside the complaint in analyzing administrative exhaustion at motion to dismiss stage).  Defendant's position statement suffers from the same problem as Plaintiff's response letters to the EEOC—there is no indication that the EEOC received the letter.  (See Dkt. # 18-2.)  Additionally, Defendant objects to the Court's consideration of the EEOC correspondence.  (Dkt. # 24 at 8 n.2.)

However, even if the Court were to consider Defendant's position statement, the Court finds that Defendant's passing reference of Plaintiff's starting salary fails to establish notice of a claim of disparate pay.  In Lopez, the Honorable Judge Cardone examined cases in which the courts considered an employer's position statement and found that:

> [I]n cases where courts have found a position statement indicative of notice, the defendant has done more than simply acknowledge the adverse action—it has explicitly addressed the potential legal claim itself. . . . By contrast, courts have rejected arguments that a passing reference to an adverse employment action or an employee's condition in a position statement suffices to establish notice of a claim based on that action or condition.

14

767 F. Supp. 3d at 427–28.  Here, the only reference Defendant made to Plaintiff's salary is to state that Plaintiff "was hired at a starting salary 21% higher than her predecessor in the role." (Dkt. # 18-2 at 2.)  This passing reference to Plaintiff's starting salary does not indicate that Defendant understood Plaintiff to be asserting a disparate pay claim as a part of her discrimination and retaliation claim, nor that it had investigated such claims.

The Court finds that Plaintiff's retaliation and discrimination claims based upon the alleged discriminatory setting of her pay is not administratively exhausted and will not be considered by the Court.

Lastly, the Court recognizes that "some courts have concluded that when, as here, a plaintiff seeks to avoid an exhaustion-based motion to dismiss by submitting documents intended to establish the scope of the EEOC's actual investigation, the proper approach is simply to deny the motion to dismiss." Fox, 2024 WL 4364133, at *16 (citing Vasquez v. Kiewit Infrastructure W., Co., No. CV 19-00513 HG-WRP, 2020 WL 2842671, at *5–6 (D. Haw. June 1, 2020)). However, because the Court grants the Motion to Dismiss on other grounds and grants Plaintiff leave to amend, the Court declines to adopt this approach with the present motion.  If, upon amendment, the parties again dispute administrative

15

exhaustion, the Court may again assess the EEOC's actual investigation into Plaintiff's claims once the relevant documents are properly plead.[4]

## II.    Race Discrimination Claim

Plaintiff's first cause of action alleges race discrimination in violation of Title VII and the TCHRA.  (Dkt. # 20 at 5.)  Race discrimination claims under the TCHRA are governed by the same analysis as Title VII discrimination claims. See Ross v. Judson Indep. Sch. Dist., 993 F.3d 315, 321 (5th Cir. 2021) ("The Supreme Court of Texas has instructed Texas courts to consult judicial interpretations of Title VII and follow the approach of the United States Supreme Court in interpreting Title VII when reviewing TCHRA claims.").

When a plaintiff's Title VII discrimination claim depends on circumstantial evidence, as Plaintiff's does here, we assess whether she pleaded facts that, if proven, could satisfy McDonnell Douglas.[5]  Olivarez v. T-mobile

---

[4] Although dismissal based on administrative exhaustion is typically granted without leave to amend, this case presents the unique situation in which the Court may look beyond the charge itself to the actual investigation to determine whether Plaintiff's claim was presented to the EEOC.  See Clark v. Kraft Foods, Inc., 18 F.3d 1278, 1280 (5th Cir. 1994).

[5] Plaintiff does allege that she suffered "disrespectful and racist commentary," which could serve as direct evidence of discriminatory intent.  See Jones v. Robinson Prop. Group, L.P., 427 F.3d 987, 993 (5th Cir. 2005) ("[W]hen a person or persons with decision making authority evinces racial animus that may constitute direct evidence of discrimination.").  However, this allegation, standing alone, is conclusory and lacks any specificity as to what was said, when, or by whom.  See Ellis v. Cargill Meat Sols., No. 24-10339, 2024 WL 4692024, at *2

USA, Inc., 997 F.3d 595, 599 (5th Cir. 2021).  To establish a prima facie claim of discrimination, a plaintiff must show that she was: (1) a member of a protected class; (2) qualified for the position; (3) suffered an adverse employment action; and (4) replaced by someone outside of her protected class or that others outside of his protected class and similarly situated were treated more favorably.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see also McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).  However, the Supreme Court interpreted the McDonnell Douglas standard to be "an evidentiary standard, not a pleading requirement."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002).

To survive a motion to dismiss, "a plaintiff need not make out a prima facie case under McDonnell Douglas."  Cicalese v. Univ. of Texas Med. Branch, 924 F.3d 762, 766 (5th Cir. 2019) (quoting Raj v. La. State Univ., 714 F.3d 322, 331 (5th Cir. 2013)).  Instead, a plaintiff must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make their case plausible."  Id. (quoting Chhim v. Univ. of Tex. at Austin, 836 F.3d 467, 470 (5th Cir. 2016)). "[T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff because of [her] protected status."  Id. at 767.  Although the

---

(5th Cir. Nov. 6, 2024) (finding plaintiff's allegation that he experienced harassment by repetitive use of racial slurs to be conclusory and inadequate to support a claim of race discrimination), cert. denied, 145 S. Ct. 2801 (2025).

17

complaint need not present "detailed factual allegations," it must allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could "draw the reasonable inference," that Defendant "discriminate[d] against [Plaintiff] with respect to [her] compensation, terms, conditions, or privileges of employment, *because of* [her] race . . . ." Prewitt v. Cont'l Auto., 927 F. Supp. 2d 435, 453 (W.D Tex. 2013) (quoting Iqbal, 556 U.S. at 678; 42 U.S.C. § 2000e-2(a)(1) (emphasis added)).  If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.  Iqbal, 556 U.S. at 679.

Plaintiff has alleged that she is a Black-Latina woman.  (Dkt. # 20 at 2.)  Defendant does not contend that Plaintiff was not qualified for her position.  Thus, the only elements at issue are whether Plaintiff has suffered an adverse employment action and was replaced by someone outside of her protected class or others outside of her protected class and similarly situated were treated more favorably.  See McDonnell, 411 U.S. at 802.

A.   Adverse Employment Action

In 2023, the Fifth Circuit overturned circuit precedent requiring an "ultimate" employment decision to state a discrimination claim under Title VII.  See Hamilton v. Dallas, 79 F.4th 494, 502 (5th Cir. 2023) (en banc).  The parties dispute whether the Fifth Circuit's elimination of the "ultimate" employment

decision requirement extends to application of the TCHRA standard. In Esparza v. Advanced Network Mgmt., Inc., the Fifth Circuit assumed without deciding that the Texas Supreme Court would apply Hamilton to TCHRA claims. No. 24-50024, 2025 WL 764602, at *2 n.7 (5th Cir. Mar. 11, 2025). The Circuit Court noted that the Texas Supreme Court has not yet decided whether Hamilton governs TCHRA claims, and the Texas courts of appeals have also reached opposing conclusions. Id. (citing City of Houston v. Wills, No. 14-23-00178, 2024 WL 3342439, at *5 & n.3 (Tex. App.—Houston [14th Dist.] July 9, 2024, no pet.); City of Pasadena v. Poulos, No. 01-22-00676, 2023 WL 7134974, at *10 n.1 (Tex. App.—Houston [1st Dist.] Oct. 31, 2023, no pet.)). This Court will similarly assume without deciding that the Texas Supreme Court would apply Hamilton to TCHRA claims because the outcome would not change regardless.

"Even after Hamilton, the Fifth Circuit has confirmed that written reprimands, placement on a performance improvement plan, and other corrective or remedial measures do not constitute adverse employment actions unless they affect job title, grade, hours, salary, or benefits or cause a diminution in prestige or change in standing among coworkers." Fleming v. Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P., No. SA-21-CV-01234-XR, 2024 WL 1055120, at *13 (W.D. Tex. Mar. 11, 2024) (citation modified) (citing Lemonia v. Westlake Mgmt. Servs., Inc., No. 22-30630, 2023 WL 6878915, at *7 (5th Cir. Oct. 18, 2023)). An

19

adverse employment action requires (1) employment discrimination that (2) causes the plaintiff an injury that is greater than *de minimis*.  See Harrison v. Brookhaven Sch. Dist., 82 F.4th 427, 430 (5th Cir. 2023).

Having found that Plaintiff's constructive discharge claim and salary-related claims are not administratively exhausted, the only remaining actions the Court may consider is Jacaman's exclusion of Plaintiff from management and staff meetings, discipline for absences approved under the FMLA, disrespectful and racist commentary, increased scrutiny, Jacaman bypassing Plaintiff to deal directly with her subordinates, Jacaman's refusal to allow Plaintiff to take advantage of a University policy allowing employees to take course work during the workday, and Jacaman's revocation of an agreement that allowed Plaintiff to end her workday early on certain days.  (See Dkt. # 20 at 2–3.)  Defendant concedes that Jacaman's revocation of an agreement that allowed Plaintiff to end her workday early on certain days changes the terms, conditions, or privileges of her employment, but argues that this is the only remaining allegation that constitutes an adverse action. (Dkt. # 21 at 4.)

The Court agrees that Jacaman's revocation of an agreement that allowed Plaintiff to end her workday early constitutes an adverse employment action because it affects Plaintiff's hours.  The Court further finds that, at the motion to dismiss stage, Plaintiff's allegation that Jacaman refused to allow

20

Plaintiff to take advantage of a University policy allowing employees to take course work during the workday is an adverse employment action because it plausibly affects her benefits.  Plaintiff being disciplined for FMLA absences, without more detail as to *how* Plaintiff was disciplined, does not constitute an adverse employment action.  See Earle v. Aramark Corp., 247 F. App'x 519, 524 (5th Cir. 2007) ("disciplinary write-ups, and micro-managing her performance . . . are not materially adverse employment actions.").  The remainder of Plaintiff's allegations, as currently pleaded—increased scrutiny, disrespectful and racist commentary, exclusion from meetings, and bypassing Plaintiff to deal directly with subordinates—do not affect Plaintiff's compensation, terms, conditions, or privileges of employment.  See id.; Schmelzer v. Alexander, No. CIV.A. 4:03-CV-354-Y, 2005 WL 723660, at *6 (N.D. Tex. Mar. 29, 2005) (exclusion from "attending professional meetings or conferences does not establish an adverse employment action"); Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (citation modified)); Thompson v. City of Waco, Texas, 764 F.3d 500, 504 (5th Cir. 2014) ("The mere loss of some job responsibilities does not constitute an adverse employment action.").

21

Because the Court finds that Plaintiff has adequately pleaded an adverse employment action, it will not analyze Plaintiff's discrimination claim as a hostile work environment claim.  See Giddens v. Cmty. Educ. Centers, Inc., 540 F. App'x 381, 387 (5th Cir. 2013) ("If a plaintiff has suffered a tangible employment action, the suit is classified as a 'quid pro quo' case. If the plaintiff has not suffered a tangible employment action, the suit is classified as a hostile work environment case." (citation modified) (citing Casiano v. AT&T Corp., 213 F.3d 278, 283–84 (5th Cir. 2000)).  Nor has Plaintiff explicitly alleged a claim for hostile work environment.  If, however, Plaintiff chooses to amend her complaint, she may make a separate claim for hostile work environment.

B.    Causation Element

Defendant next argues that Plaintiff has failed to establish that she was replaced by someone outside of her protected class or that others outside of her protected class and similarly situated were treated more favorably.  (Dkt. # 21 at 13.)  Plaintiff's Complaint lists thirty-two individuals whom she alleges are similarly situated and were treated more favorably than she was.  (Dkt. # 20 at 5–6.)  Defendant argues that this conclusory "shotgun approach," without detailed factual allegations as to how these employees are similarly situated or treated more favorably is insufficient.  (Dkt. # 21 at 13–16.)  While the Court would generally agree, Plaintiff did identify her white predecessor, Emily Cauthen ("Cauthen").

22

(Dkt. # 20 at 5–6.)  Plaintiff alleged that no employees outside her protected class, including Cauthen, were subject to any of the behaviors or actions to which she was subject.  (Id. at 3, 5–6.)

As her white predecessor, Cauthen was outside Plaintiff's protected class and likely filled the same position considering Plaintiff identified Cauthen as her "predecessor."  (Id.)  However, this identifier alone does not provide adequate factual allegations to qualify Cauthen as "similarly situated."  The Fifth Circuit has held that employees are similarly situated if they "held the same job responsibilities, shared the same supervisor or had their employment status determined by the same person, have essentially comparable violation histories, and plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered competitor."  Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009) (citation modified).  The Complaint only alleges that Cauthen was Plaintiff's "predecessor" and nothing more; she does not allege that Cauthen also had Jacaman as a supervisor or had comparable violation histories, that Cauthen attempted to take advantage of the University policy allowing for course work during the workday, or that Cauthen was allowed to leave her workday early on certain days.  (See Dkt. # 20.)  As plead, Plaintiff's statement that "Jacaman did not direct any similar behaviors to employees outside the protected class[]" is conclusory and devoid of any facts demonstrating that the

23

less favorable treatment and adverse employment actions were a result of

Plaintiff's race.  (Id. at 3.)  Because Plaintiff fails to allege a similarly situated

comparator who was treated more favorably, she fails to plead facts plausibly

alleging a *prima facie* case of discrimination.  Accordingly, Plaintiff's race

discrimination claim is **DISMISSED WITH LEAVE TO AMEND**.

III.   Disability Discrimination Claim

Defendant also moves to dismiss Plaintiff's disability discrimination

claim pursuant to the Rehabilitation Act and TCHRA.  (Dkt. # 21 at 16.)  Courts

apply the same analysis to disability discrimination claims under the Rehabilitation

Act and TCHRA.  See McKay v. Johanns, 265 F. App'x 267 (5th Cir. 2008)

("Discrimination claims brought under the Rehabilitation Act are governed by the

same standards as claims brought under Title I of the Americans with Disabilities

Act of 1990[.]"); Rodriguez v. ConAgra Grocery Prods. Co., 436 F.3d 468, 473–74

(5th Cir. 2006) (analyzing TCHRA disability discrimination claim using ADA

standards and precedent).  To survive a motion to dismiss a disability

discrimination claim, a plaintiff must allege that (1) she has a qualifying disability;

(2) she was otherwise qualified for the job; and (3) she was discriminated against

*solely* because of her disability.[6]  See Gosby v. Apache Indus. Services, Inc., 30

---

[6] Plaintiff's Complaint does not specify whether she brings her claim pursuant to
§ 501 or § 504 of the Rehabilitation Act.  The Court assumes Plaintiff brings a
§ 504 claim which "prohibits an employer who is a recipient of federal funds from

F.4th 523, 525 (5th Cir. 2022); Carmona v. Sw. Airlines Co., 604 F.3d 848, 854 (5th Cir. 2010).  Defendant argues that Plaintiff's disability discrimination claim fails because she has failed to adequately allege that she was discriminated against because of her disability.  (Dkt. # 21 at 16.)  Plaintiff does not offer any argument in support of her disability discrimination claim.  (See generally Dkt. # 23.)

Even assuming Plaintiff has a disability that falls under the Rehabilitation Act and TCHRA, her claim is insufficient as a matter of law because her Complaint does not suggest that she was discriminated against solely because of her disability.  (See Dkt. # 20.)  As stated, § 504's causation element requires a plaintiff to demonstrate that he was discriminated against solely by reason of his disability; the disability cannot be merely a motivating factor for the discrimination.  Houston v. Tex. Dep't of Agric., 17 F.4th 576, 585—86 (5th Cir. 2021); Pinkerton v. Spellings, 529 F.3d 513, 516 (5th Cir. 2008).

However, as addressed above, Plaintiff has also alleged that she was discriminated against because of her race.  Any allegation by Plaintiff that she was discriminated against solely on her disability clearly undercuts her Title VII race discrimination claim.  See Pinkerton, 529 F.3d at 516; Shah v. Univ. of Texas Sw.

---

'discriminating' against an 'otherwise qualified individual with a disability.'" Burns v. Nielsen, 456 F. Supp. 3d 807, 823 n.40 (W.D. Tex. 2020), appeal dismissed sub. nom. Burns v. Mayorkas, 2021 WL 1732267 (5th Cir. Mar. 16, 2021)

25

Med. Sch., 54 F. Supp. 3d 68, 704–05 (N.D. Tex. 2014) (finding plaintiff failed to plead facts showing discrimination was taken solely because of plaintiff's disability where plaintiff alleged other motivating factors). Plaintiff's Complaint plainly fails to allege that she suffered any adverse employment action solely on account of her disability. Plaintiff's Complaint makes no attempt to connect any adverse employment actions to her disability; contrarily, her Complaint only mentions the word "disability" when describing her disability and Defendant's notice of such disability, and when listing her causes of action. (Dkt. # 20 at 2, 5.) Nor has Plaintiff attempted to argue otherwise in her Response to the Motion to Dismiss, which does not so much as reference her disability discrimination claim. (See generally Dkt. # 23.) Accordingly, Plaintiff's disability discrimination claim is **DISMISSED WITH LEAVE TO AMEND**.

IV.     Retaliation Claims

Defendant moves to dismiss Plaintiff's last two causes of action: (1) retaliation for opposing discrimination, in violation of the TCHRA, Title VII, and the Rehabilitation Act; and (2) retaliation for taking protected leave under the FMLA. (Dkts. ## 20 at 6; 21 at 16–20.)

A.     Retaliation for Opposing Discrimination

To survive a motion to dismiss a retaliation claim, a plaintiff only needs to plausibly allege facts going to the ultimate elements of the claim: (1) she

participated in an activity protected by Title VII, (2) her employer took an adverse employment action against her, and (3) a causal link exists between the protected activity and the adverse employment action.  Smith v. Kendall, No. 23-50713, 2024 WL 4442040, at *4, *6 (5th Cir. Oct. 8, 2024).  Federal courts use the same analysis for retaliation claims under the TCHRA and Rehabilitation Act.  Spencer v. Wolff Shoe Co., No. 1:16-CV-036-RP, 2017 WL 9325616, at *3 (W.D. Tex. Apr. 17, 2017) ("Title VII case law guides a reading of the TCHRA, and the McDonnell Douglas burden-shifting framework, used to assess Title VII retaliation claims, is also used to assess TCHRA retaliation claims."); Calderon v. Potter, 113 F. App'x 586, 592 & n. 1 (5th Cir. 2004) (applying Title VII approach to retaliation claim brought under Rehabilitation Act).

Defendant concedes that Plaintiff participated in a protected activity when she filed an EEOC charge in January 2024.  (Dkt. # 21 at 17; see Dkt. # 20 at 3.)  However, Defendant argues that Plaintiff has not plausibly alleged an adverse employment action or a causal link.  (Dkt. # 21 at 17–20.)

The standard for an adverse employment action in a retaliation claim is less stringent than the standard for a discrimination claim—the plaintiff must show that the challenged action might have dissuaded a reasonable worker from making or supporting a charge of discrimination. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  The Court has already found that

27

Plaintiff sufficiently alleged adverse employment actions to support a discrimination claim, thus it follows *a fortiori* that she has alleged adverse employment actions under the less stringent standard for retaliation claims.

Whether Plaintiff has alleged facts that plausibly support a causal link between her EEOC filing and the adverse employment actions poses a tougher question.  Plaintiff does not allege that any further action was taken against her after she filed her EEOC charge in January 2024; she merely rephrases and summarizes the same actions she alleged were already occurring prior to her EEOC filing.  (Ct. Dkt. # 20 at ¶ 8 with ¶ 9.)  Retaliatory actions that predate the plaintiff's participation in a protected activity cannot support a causal link.  See Watkins v. Texas Dep't of Crim. Just., 269 F. App'x 457, 461 (5th Cir. 2008) ("[M]any of the actions [the plaintiff] complains of cannot be retaliatory because they predate his participation in any protected activity."); Finch v. Texas Health & Human Serv. Comm'n, No. H-13-3716, 2015 WL 5674834, at *6 (S.D. Tex. Sept. 25, 2015) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." (quoting Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001))).

Plaintiff's only argument in support of causal connection is that Jacaman's negative treatment of her intensified after filing the charge.  (Dkt. # 20

at 3.)  However, she does not provide any factual allegations as to how that treatment intensified, nor any other facts that would allow the Court to infer the negative treatment intensified in retaliation of her protected activity.  Without more, Plaintiff's allegation that adverse actions predating her protected activity that merely "intensified" after participating in the protected activity does not plausibly state the requisite causal link.  Accordingly, Plaintiff's claim of retaliation for opposing discrimination is **DISMISSED WITH LEAVE TO AMEND**.

     B.    <u>FMLA Retaliation</u>

Defendant lastly moves to dismiss Plaintiff's claim that she was retaliated against for exercising her right to take protected leave under the FMLA to care for her father.  (Dkt. # 20 at 6.)  To survive a motion to dismiss, Plaintiff must plausibly allege that: (1) she engaged in a protected activity under the FMLA; (2) she suffered an adverse employment action; and (3) she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA. <u>Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.</u>, 446 F.3d 574, 583 (5th Cir. 2006).

Assuming the first two elements are satisfied, Plaintiff's Complaint fails to state a plausible causal connection between her FMLA leave and the alleged adverse actions.  Again, Plaintiff does not allege any new adverse actions

29

occurring *after* she took her FMLA leave, nor does she even allege that the treatment worsened after she took leave to care for her father. (See generally Dkt. # 20.) Plaintiff merely alleges that Jacaman "disciplined her for absences to care for father that were approved for protected leave under the FMLA." (Id. at 3.) She does not provide any details as to how she was disciplined, or how soon after taking leave she was disciplined. Plaintiff further alleges that she was "treat[ed] . . . worse than similarly situated employees who did not use FMLA-protected leave . . . ." (Id. at 6.) However, she does not identify any of these similarly situated employees, as she did for discrimination claim, or describe how she was treated worse. (Id.) Such bare, conclusory allegations are insufficient to state a claim of FMLA retaliation. Accordingly, Plaintiff's FMLA retaliation claim is **DISMISSED WITH LEAVE TO AMEND**.

CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's Motion to Dismiss (Dkt. # 21) **WITH LEAVE TO AMEND**. Plaintiff has thirty (30) days from the date of this Order to address the deficiencies discussed herein. Failure to do so will result in dismissal with prejudice of Plaintiff's race discrimination, disability discrimination, and retaliation claims.

30

**IT IS SO ORDERED.**

**SIGNED:** Austin, Texas, March 24, 2026.

_____

David Alan Ezra
Senior United States District Judge