IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

| | | |
|---|---|---|
| NICOLETTE D. PAGE, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 1:24–cv–01249–DAE |
| | § | |
| THE UNIVERSITY OF TEXAS AT AUSTIN, | § | |
| *Defendant*. | § | |

---

**DEFENDANT THE UNIVERSITY OF TEXAS AT AUSTIN'S
RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

---

TO THE HONORABLE MAGISTRATE JUDGE MARK LANE:

Defendant The University of Texas at Austin (UT) submits this response to Plaintiff Nicolette Page's motion for attorney's fees.

## INTRODUCTION

Plaintiff worked in UT's eBITS department from May 2023 until April 2024, when she left to take a new job in a different department at UT for a higher salary. In September 2024, Plaintiff brought suit against UT in state court over her brief tenure in eBITS, alleging race discrimination under chapter 21 of the Texas Labor Code (TCHRA) and title VII of the Civil Rights Act of 1964; disability discrimination under the TCHRA and the Americans with Disabilities Act (ADA); retaliation under the TCHRA, Title VII, and the ADA; and retaliation under the Family and Medical Leave Act (FMLA). Doc. 1–3, at 6–7. She sought "monetary relief over $1,000,000." *Id.* at 4.

UT removed the case to federal court and, in April 2025, moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Doc. 15. Plaintiff then filed an amended complaint. Doc. 17-1[1]. Plaintiff filed a response arguing that "[m]ost of the alleged deficiencies [in Plaintiff's original pleading] have been resolved in Plaintiff's First Amended Complaint, which she sought leave to file earlier today, rendering most of the arguments in Defendant's motion moot." Doc. 18 at 1. The Court denied UT's motion for judgment on the pleadings as moot "in light of the Amended Complaint." Plaintiff also filed an unopposed motion for leave to file an amended complaint, which the Court granted. Doc. 19. But Plaintiff's amended complaint alleged the same core facts and the same causes of action. *Compare* Doc. 1–3 at 4–7 *with* Doc. 20 at 2–6. UT promptly moved to dismiss Plaintiff's amended complaint under Rule 12b(6). Doc. 17–1.

---

[1] In her First Amended Complaint, Plaintiff requested "damages for lost wages, loss of earning capacity, and other pecuniary losses" as well as front pay; compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and/or other nonpecuniary losses; and liquidated damages. Doc. 18–1.

While UT's motion to dismiss was pending, the parties engaged in discovery, including requests for documents, interrogatories, and several depositions. In January 2026, they engaged in mediation, which was unsuccessful. Doc. 36. On March 11, 2026, after UT's motion to dismiss had been pending for nearly 11 months, UT made an offer of judgment to Plaintiff under FRCP 68 "in the amount of twenty–five thousand dollars ($25,000), plus costs (including reasonable attorney's fees) in the amount agreed to by the parties or determined by the Court[] accrued up to and including today's date." Doc. 38. Plaintiff accepted the offer on March 16, 2026. Doc. 38-1. On March 24, 2026, the District Court granted UT's motion to dismiss but allowed Plaintiff an opportunity to replead. Doc. 37. Later that day, Plaintiff filed her acceptance of UT's offer of judgment with the Court. Doc. 38. The Court entered a judgment on April 7, 2026, reflecting the accepted offer. Doc. 40.

The parties were unable to reach an agreement on the attorney's fees. On April 16, 2026, Plaintiff filed a motion seeking $92,050 in attorney fees, based on 184.1 attorney hours multiplied by an hourly rate of $500 per hour. (Doc. 42). Plaintiff's motion cites the bases of her request is for costs under TCHRA, Title VII, the Rehabilitation Act, and the FMLA.

## SUMMARY

Plaintiff is entitled to a reasonable attorney's fee. But the sum she demands is not a reasonable fee for two reasons. First, the lodestar amount of $92,050 is excessive, both because the $500 per hour rate on which it is based is excessive and the hours were not reasonably expended. Second, the lodestar should be reduced to reflect the relatively meager results her attorney obtained. After spending nearly a year in discovery and mediation on a case in which she sought over one million dollars in damages, Plaintiff accepted UT's settlement offer of $25,000—an

amount representing less than 2.5% of the damages she sought. Plaintiff's decision to invest 184 hours of attorney time in a case both parties recognized as weak should not be rewarded with an attorney's fee approaching six figures.

## ARGUMENT

Although the trial court's discretion in statutory fee awards is committed to the discretion of the trial court, this discretion is not absolute. *See Hensley v. Eckerhart*, 461 U.S. 424, 438 (1983); *Schwarz v. Folloder*, 767 F.2d 125, 133 (5th Cir. 1985) (citing Warren *v. Reserve Fund, Inc.*, 728 F.2d 741, 748 (5th Cir. 1984)). "It remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award." *Id.* The determination of reasonable attorney's fees involves three numbers: 1) the reasonable number of hours expended, 2) the reasonable hourly rates for participating attorneys; and 3) any factors that may warrant an adjustment. *See Hensley*, 461 U.S. at 433 and *Martinez v. Ranch Masonry, Inc.*, 760 F. App'x 288, 290 (5th Cir. 2019). The Fifth Circuit has held whether the district court applies the correct legal standard *de novo* but reviews the "court's ultimate award of attorneys' fees for abuse of discretion." *Geophysical Serv., Inc. v. TGS–NOPEC Geophysical Co.*, 850 F.3d 785, 790 (5th Cir. 2017).

The lodestar method is the starting point for determining reasonable attorneys' fees. *See Hensley*, 461 U.S. at 433. To determine the base lodestar amount, the court multiplies the number of hours the attorney reasonably spent on the case by a reasonable hourly rate. *See Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 568 (1986); *Hensley*, 461 U.S. at 433; *Nichols v. Ill. Dep't of Transp.*, 4 F. 4th 437, 441 (7th Cir. 2021); *Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). "The fee applicant bears the burden to prove by competent evidence that the

requested rate is reasonable." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Condon v. Huning Energy Servs., L.P.*, 2006 WL 2882857, at *2 (S.D. Tex. 2006).

## I.    The Lodestar Amount is Too High.

### A.    Plaintiff's proposed hourly rate of $500 per hour is unreasonable.

A "reasonable" fee is one that is sufficient to induce a capable attorney to take on a case. *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Del. Valley Citizens' Council*, 478 U.S. at 565. A reasonable hourly rate should be "adequate to attract competent counsel" without "produc[ing] windfalls to attorneys." *Blum*, 465 U.S. at 893–94 (citation modified). The "measure is not the rates which lions at the bar may command." *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990) (citing *Van Ootgeghem v. Gray*, 774 F.2d 1332, 1338 (5th Cir. 1985)). Here, Plaintiff seeks a fee award based on a rate of $500 per hour. However, that rate is more than that which is sufficient to induce a capable attorney to take her case.

The prevailing hourly rate is generally shown by evidence, usually in the form of affidavits from other attorneys, that the charged rate is in line with the market rate in the community. *See Blum*, 465 U.S. at 895 & n.11; *Woodward v. Credit Serv. Int'l Corp.*, 132 F.4th 1047, 1056 (8th Cir. 2025); *Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."). In determining whether an hourly rate is reasonable, a court can also look to recent fee awards from the attorney's other cases. *See Nichols*, 4 F.4th at 442.

Plaintiff attached no affidavits from other attorneys. Nor did Plaintiff offer any evidence that her attorney, Matthew Bachop, has ever been awarded $500 an hour in a prior employment–law case—or any case at all. Instead, Plaintiff cited the 2025 Yearbook published by the Texas

Employment Lawyers Association (TELA), which provides fee-award information for Texas employment attorneys. The TELA yearbook states that, based on a prior fee award of $300 an hour in 2016, Mr. Bachop's inflation-adjusted rate would be $405.12. That would be a reasonable hourly rate for the Court to use in calculating the lodestar for Mr. Bachop's work in this case.

Further, courts in the Western District have also cited law firm size as a factor in assessing the reasonableness of an attorney's hourly rate. *See Beneplace, Inc. v. Pitney Bowes, Inc.*, 2016 WL 11582932, at *3 (W.D. Tex. 2016); *see also Coach Inc. v. Couture*, 2012 WL 3249470, at *1–2 (W.D. Tex. 2012); *Ultimate Living Intern., Inc. v. Miracle Greens Supplements, Inc.*, 2008 WL 4133083, at *3 (N.D. Tex. 2008) (considering the "size and reputation of applicant's firm" as a significant factor in determining the reasonable hourly rate). Mr. Bachop practices in a law firm of 3 attorneys. https://www.ddollaw.com/matt-bachop (last visited May 11, 2026).

The 2025 TELA yearbook groups Texas employment lawyers by region and the decade in which they were licensed to practice law. Of the 26 attorneys listed in the group who graduated in the 2000's and practice in the Western District of Texas, which includes Mr. Bachop, there appear to be eleven from firms of fewer than 5 attorneys. Of the 6 attorneys who practice in small firms, 3 are Austin-based: Mr. Bachop, Manuel Quinto-Pozos (a partner at Mr. Bachop's firm), and Emily Frost (the founding partner in a four-attorney firm). Mr. Bachop and Mr. Quinto-Pozos are listed at the same hourly rate of $405.12. Ms. Frost is listed at a rate of $452.42 an hour. The 2025 TELA Yearbook 170, available at https://www.mytela.org/feeyearbook (last reviewed April 29, 2026). The TELA yearbook reflects similar hourly rates for several other Austin-based employment lawyers licensed between 2000 and 2009: Aaron Johnson ($405.12), Kerry O'Brien ($425.45), James Dore ($400). *Id.* at 175.

An hourly rate of $405 per hour, Mr. Bachop's inflation-adjusted rate shown in the TELA yearbook, is more than "adequate to attract competent counsel." *Blum*, 465 U.S. at 893–94. And any higher amount would be inappropriate in this case. Here, Plaintiff's counsel failed to plead even a single facially viable claim even after UT pointed out numerous pleading deficiencies in its motion to dismiss on the pleadings. Indeed, the pleading deficiencies the district court identified in its dismissal order were the same deficiencies UT identified in its motion for judgment on the pleadings and motion to dismiss. *Compare* Doc. 37 (dismissal order) at 5–30 *with* Doc. 15 (motion for judgment on the pleadings) at 2–20 *and* Doc. 21 (motion to dismiss) at 2–24.

### B.    The number of hours expended on this case by Plaintiff's counsel is not reasonable.

To determine the reasonable number of hours spent, the court should look at the nature of the work and its utility to the case. *See Pérez-Sosa v. Garland*, 22 F.4th 312, 322–24 (1st Cir. 2022); *see also Petersburg Sav. & Ins. Co. v. Dellatorre*, 70 F. 643, 646 (5th Cir. 1895) ("the courts, while observing principles of equity, and a fair consideration of the value and utility of the services rendered, should be cautious not to award excessive or improper allowances."). Whether the total number of hours claimed were reasonable and whether specific hours claimed were reasonably expended, the court must first ascertain the nature and extent of the services supplied by the attorneys. *See Hensley*, 461 U.S. at 433–35. The district court must eliminate excessive or duplicative time. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir.1993). Hours which "are excessive, redundant, or otherwise unnecessary" are not hours reasonably expended and should be excluded from calculation. *Hensley*, 461 U.S. at 434.

As discussed below, UT identified numerous pleading deficiencies in Plaintiff's original pleading and did not oppose giving Plaintiff an opportunity to amend her complaint. Instead of

addressing those deficiencies, Plaintiff repleaded the same core facts and causes of action in her Amended Complaint. As a result, the parties wasted hundreds of hours of attorney time doing discovery and engaging in mediation in a case that, despite seeking over $1 million dollars in damages, Plaintiff ultimately agreed to resolve for $25,000. In light of those circumstances, UT submits that many of Plaintiff's 184.1 hours of attorney time were not reasonably incurred.

## II.    The lodestar should be significantly reduced to reflect Plaintiff's lack of success relative to the amount of damages she sought.

After determining the lodestar amount, the court may enhance or reduce it in light of a number of factors (often called the *Johnson* factors) that account for the specific facts of the case. *See Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) (citing *Johnson v. Ga. Hwy. Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).[2]   "[T]he most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436 (vacating the judgment and remanded for the district court to determine attorney's fee award in light of the plaintiffs' limited success); *see also Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998) ("[T]he plaintiff's monetary success in a private civil rights suit must be the primary determinant of the attorney's fee."). Specifically, "in a private civil rights suit, a district court must consider any disparity between the amount of damages sought and the amount of damages awarded." *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 395–96 (5th Cir. 2016).

> If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount . . . There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.

---

[2] Those factors are: (1) the time and labor required by the litigation; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. *Johnson*, 488 F.2d at 717–1

> The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified. . . . When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained.

*Hensley*, 461 U.S. at 436–37; *see also Romaguera v. Gegenheimer*, 162 F.3d 893, 896–97 (5th Cir. 1998) (reversing fee award for district court's failure to take into account plaintiff's limited success in the litigation).

In *Migis*, the Fifth Circuit reversed a statutory fee award and held that the district court "abused its discretion by failing to give adequate consideration to the result obtained relative to the fee award, and the result obtained relative to the result sought." 135 F.3d at 1048. The plaintiff Migis, who sought $325,000 in damages, recovered only $12,000; the district court calculated a lodestar of approximately $90,000, which it reduced by 10% in awarding attorney's fees of $81,000. *Id.* at 1047. Thus, "Migis sought over twenty–six times the damages actually awarded," and "[t]he attorney's fee award was over six and one–half times the amount of damages awarded." *Id.* at 1048. The Fifth Circuit rejected the district court's reductions to the fee award as insufficient, holding: "Regardless of the effort and ability of her lawyers, we conclude that these ratios are simply too large to allow the fee award to stand." *Id.*

*Migis* supports a significant downward adjustment of the lodestar amount in this case. Here, Plaintiff sought over $1,000,000 in damages, recovered $25,000, and is seeking over $92,000 in attorney's fees. Thus, the ratio of damages sought to damages recovered is 40:1, significantly higher than the nearly 27:1 ratio in *Migis.* Other courts in the Fifth Circuit have also rejected lodestar fee awards in cases where prevailing plaintiffs recovered significantly smaller damages than they sought. *See Hodges v. City of Houston*, 1995 WL 726463, at *4 (5th Cir. 1997) (concluding that a

$65,000 fee award was "grossly excessive" where plaintiff requested $1 million in damages but obtained only $3,500); *Hilton v. Exec. Self Storage Assocs., Inc.*, 2009 WL 1750121, at *14–16 (S.D. Tex. 2009) (reducing lodestar 67% for limited success of FLSA plaintiffs who recovered only 1% of the damages they sought); *Wesley v. Yellow Transp., Inc.*, 2010 WL 4629972, at *5–6 (N.D. Tex. 2010) (reducing attorneys' fee award by 50% where requested amount was over six times the amount of plaintiffs' recovery).

Plaintiff argues that her recovery of $25,000, which she acknowledges is a "small damages number," should nonetheless "be viewed favorably" because the District Court held that the case "should be dismissed based on the pleadings." Doc. 42 at 8. In other words, Plaintiff suggests that her small recovery demonstrates great skill on her attorney's part because her case was actually worth even less. Her argument is flawed in several respects.

First, Plaintiff ignores the vast disparity between the amount she sought (over $1 million) and the amount she recovered ($25,000), which represents less than 2.5% of the amount sought. Similarly large (or even slightly smaller) disparities were key to the fee award reductions in *Migis*, *Hodges*, and other cases. Indeed, as discussed above, the ratio of damages sought to damages recovered in this case is 40:1, significantly higher than the 27:1 ratio that was held to be "too large" in *Migis*. *See* 135 F.3d at 1048. In comparison with her claimed damages of "over $1,000,000," Doc. 1–3 at 4, a recovery of $25,000 is "hardly the 'excellent result' required for a fully compensatory fee." *Hodges*, 1995 WL 726463, at *4.

Second, Plaintiff's suggestion that her counsel demonstrated great skill by obtaining even a small sum for a case in which the district court ultimately granted UT's motion to dismiss ignores that the court gave her another opportunity to replead. Doc. 37 at 30. The dismissal of Plaintiff's

amended complaint reflects a determination that the amended complaint was poorly pleaded, not a determination of the merits of Plaintiff's claims. This assessment is doubly damning because Plaintiff already replead once in response to UT's motion for judgment on the pleadings, at which point she claimed that "the alleged deficiencies [identified in UT's motion for judgment on the pleadings] have been resolved in Plaintiff's First Amended Complaint." Doc. 18, at 1. The district court disagreed ruling that Plaintiff resolved none of those deficiencies. Its determination that Plaintiff's complaint failed to plead even a single viable claim even after UT identified the pleading deficiencies *and* after Plaintiff filed an amended complaint is not something that "should be viewed favorably." Doc. 42 at 8.

Plaintiff attempts to downplay her meager recovery by invoking *Combs*. Doc. 42 at 7. In *Combs*, the plaintiff sought $323,000 in damages but was awarded only $5,000 in damages. *See* 829 F.3d at 390. The district court reduced the $94,000 lodestar to $25,000 because it "read [the Fifth Circuit's] decision in *Migis* as capping a fees–to–damages ratio at 6.5:1." *Id.* at 397. The district court erroneously felt "constrained by the holding in *Migis*" to mechanically "reduce the total to something less than 6.5 times the actual damages awarded." *Id.* The Fifth Circuit held that, while the district court had "properly recognized that proportionality between attorney's fees and damages may be considered in determining a reasonable fee," *id.* at 398, it erred "by adjusting the lodestar amount based *solely* on strict proportionality considerations," *id.* at 396 (emphasis added). In other words, the district court was not wrong to reduce the lodestar, merely wrong in doing so in the erroneous belief that *Migis* set a firm cap on the ratio of recovered damages to attorney's fees.

*Combs* did not hold that, in making fee awards, district courts should disregard damage awards that are disproportionately small relative to the damages sought or the fee lodestar. To the

contrary, *Combs* reaffirmed that "proportionality remains 'an appropriate consideration in the typical case,'" and noted that "[t]he district court may properly compare what [the plaintiff] sought with what she was ultimately awarded." *Id.* (quoting *Hernandez v. Hill Country Tel. Co–Op., Inc.*, 849 F.2d 139, 144 (5th Cir. 1988)). Indeed, the Fifth Circuit presumably would have affirmed the district court's fee award in *Combs* had the district court's lodestar reduction not been "based solely on strict proportionality considerations." *Id.*

In this case, where Plaintiff accepted $25,000 in damages to settle a lawsuit in which she sought more than $1 million in damages, and where the district court ultimately granted UT's motion to dismiss on all counts after Plaintiff already replead her complaint and purportedly addressed the pleading deficiencies UT had identified, a significant adjustment to the lodestar is warranted. UT respectfully suggests that a reduction of 50% or more to the lodestar, after any adjustments to the hourly rate and/or hours reasonably expended, would be appropriate.

## CONCLUSION

For these reasons, the Cout should deny Plaintiff's motion for $92,050 in attorney's fees. UT respectfully submits that a reasonable fee in this case would be approximately $20,000.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General of Texas

RALPH MOLINA
Deputy First Assistant Attorney General of Texas

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division


/s/ *Terri M. Abernathy*
_____
TERRI M. ABERNATHY
Assistant Attorney General
Texas Bar No. 24062894

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
General Litigation Division
P.O. Box 12548, Capitol Station, MC–019
Austin, Texas 78711–2548
Phone (512) 979–5354
Division Fax (512) 320–0667
Email Terri.Abernathy@oag.texas.gov

*Counsel for Defendant*
*The University of Texas at Austin*


**Certificate of Service**

I hereby certify that on May 12, 2026, a true and correct copy of the foregoing document was filed with the Court's CM/ECF system, causing electronic service as follows:

Matt Bachop
2901 Bee Caves Rd., Ste. L
Austin, Texas 78746
Phone (512) 474–6200
Fax (512) 474–7896
*Via email to* mbachop@ddollaw.com

*Counsel for Plaintiff*
*Nicolette D. Page*


/s/ *Terri M. Abernathy*
_____
TERRI M. ABERNATHY
Assistant Attorney General