IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NICOLETTE D. PAGE, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 1:24–cv–01249–DAE |
| | § | |
| THE UNIVERSITY OF TEXAS | § | |
| AT AUSTIN, | § | |
| *Defendant.* | § | |

**DEFENDANT THE UNIVERSITY OF TEXAS AT AUSTIN'S
RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDATIONS
REGARDING ATTORNEY'S FEES**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant The University of Texas at Austin (UT) submits this response to Plaintiff Nicolette Page's *Objections to Proposed Findings and Recommendations* of the Magistrate Judge.

**I.    The proposed lodestar reduction does not constitute an abuse of discretion.**

Plaintiff argues the proposed reduction to the lodestar represents an abuse of discretion, primarily on the theory that the proposed reduction was made "'solely on the basis of the amount obtained.'" Dkt. 50 at 1 (quoting *Black v. SettlePou, P.C.*, 732 F. 3d 492, 503 (5th Cir. 2013)). Plaintiff is wrong; in his Report and Recommendation, the Magistrate Judge expressly recognized the *Black* standard and dutifully followed *Black* and other relevant Fifth Circuit precedents. Dkt. 49 at 6 (citing *Black*, 732 F.3d at 503).

"[I]n considering whether to decrease the lodestar, the district court *must* consider the plaintiff's degree of success." *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 395 (5th Cir. 2016) (emphasis added). Indeed, "the degree of success is *the most crucial element* in determining a reasonable attorney's fee." *Id.* at 394 (emphasis added). In fact, where "a plaintiff has achieved

only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citing *Hensley v. Echerhart*, 461 U.S. 424, 436 (1983)). Specifically, courts must consider "any disparity between the amount of damages sought and the amount of damages awarded." *Combs*, at 395–96; *see also Farrar*, 506 U.S. at 114 (citation modified) (". . . a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought."). While Plaintiff's lack of success was not the sole basis for the Magistrate Judge's proposed reduction, it was proper for the Magistrate Judge to consider it. *See Castro v. Precision Demolition LLC*, 2017 WL 6381742, at *9 (N.D. Tex. 2017) (citing *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 801 (5th Cir. 2006)) (citation modified).

Specifically, the Magistrate Judge properly took into account the "nuisance–value" amount of damages obtained ($25,000), Dkt. 49 at 6, an amount that is particularly small relative to the "over $1,000,000" in damages Plaintiff sought, Dkt. 1–3 at 4; *see also Evans v. Jeff D.*, 475 U.S. 717, 737 (citation modified) ("Among other considerations, the district court must determine what hours were reasonably expended on what claims, [and] whether that expenditure was reasonable in light of the success obtained . . .). Indeed, the ratio of damages sought to damages obtained in this case (more than 40:1) is significantly greater than in *Migis*, where the Fifth Circuit reversed the district court for making only a modest downward departure from the lodestar in a case where the ratio was less than 27:1, a ratio the court held was "simply too large to allow the fee award to stand." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998). But contrary to Plaintiff's argument, the Magistrate Judge did not recommend reducing the lodestar solely because of the "paltry damages obtained." Dkt. 49 at 6. Instead, the Magistrate Judge made clear that his recommendation was also based on his observation that this was an objectively "weak case" that

did not warrant the nearly two hundred attorney hours Plaintiff's counsel expended on it prior to the summary judgment stage. *Id.* at 6–7.

An experienced employment attorney should have recognized from the outset that Plaintiff's claims were not worth such an investment. As the Magistrate Judge noted, Plaintiff was not fired from her job in eBITS or even disciplined; instead, she received an initial evaluation that criticized her work performance in some respects. Further, Plaintiff did not allege having to endure racial epithets or anything similar that would support a hostile work environment or a constructive discharge claim. *See generally* Dkt. 20. Instead, rather than accepting even mild criticism from her supervisor, she chose to transfer to another department within UT Austin that paid a higher salary. Objectively speaking, this was hardly a case worth "over $1,000,000," Dkt. 1–3 at 4—or anything close to it.

In its motion to dismiss Plaintiff's state–court complaint on the pleadings, UT pointed out the numerous flaws in Plaintiff's case. Plaintiff then sought leave to amend, promising she could remedy her deficient pleadings. But instead of addressing the pleading defects UT pointed out, Plaintiff filed an amended complaint alleging the same legal theories and the same core facts. *Compare* Dkt. 1–3 with Dkt. 20. In one example, Plaintiff's amended pleading added a litany of names as comparators gleaned from an open records request, but Plaintiff admitted in her deposition that she did not know the persons listed, who their manager was, their job titles or descriptions, their experience levels, or other key details. *See* Pl's Depo. 72–75, 107–109, 119–121. UT again moved to dismiss, making essentially the same arguments, and this Court ultimately granted UT's motion and dismissed all of Plaintiff's claims. *See* Dkt.37. In short, this was not a meritorious civil–rights complaint that might have come out differently if better evidence

surfaced; instead, this was, on its face, "a weak case that did not warrant the generation of $95,500 in fees." *See* Dkt. 21 and 24.

Plaintiff castigates the Magistrate Judge for recognizing "that the case was not 'special or important," arguing that the "quality, importance, and specialness of the underlying claims are not among the twelve [*Johnson*] factors." Dkt. 50 at 2 (quoting Dkt. 37 at 7). But the Magistrate Judge hardly abused his discretion by observing the case was straightforward and facially weak, as opposed to a complex and potentially meritorious case that could justify a significant fee award even if it did not ultimately produce a large damages award. The "novelty and complexity" of the case is the second *Johnson* factor. And obtaining a $25,000 damages judgment in a case where the plaintiff seeks over one million dollars is hardly the kind of "excellent result" that warrants payment of the lodestar. *Combs*, 829 F.3d at 393.

Plaintiff also argues that the weakness of the case should "cut the other way," suggesting that obtaining $25,000 through an offer of judgment "should be viewed more favorably in terms of the results obtained" because the case was worth even less. But this argument is hard to square with Plaintiff's claim that UT owed her "over $1,000,000" in damages, Dkt. 1–3 at 4, as well as the aforementioned case law requiring courts to consider "any disparity between the amount of damages sought and the amount of damages awarded." *Combs*, 829 F.3d at 395–96. Plaintiff's failure to acknowledge the significance of the 40:1 ratio in her objections is a conspicuous omission.

In short, the Magistrate Judge's Report and Recommendation properly takes Plaintiff's limited recovery into account, and Plaintiff's argument that the Magistrate reduced the lodestar "solely on the basis of the amount obtained" is demonstrably wrong. Dkt. 50.

**II.     It is Plaintiff, not the Magistrate Judge, who conflates the difficulty of proving civil rights claims with the weakness of the underlying claims.**

The Magistrate Judge's Report and Recommendations expressly acknowledges that it can be "difficult to properly evaluate and predict an eventual outcome" in some civil rights cases. But this was not a hard case to evaluate. As discussed above, it should not have been difficult for an experienced employment lawyer to perceive the weakness of Plaintiff's claims. Nor was this a case where the facts indicated the plaintiff experienced race or disability discrimination but could prove only modest damages, a situation in which a robust fee might be justified to "'vindicate the national policy against wrongful discrimination.'" Dkt. 50 at 4 (quoting *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989)). Despite two attempts, Plaintiff was unable to plead a single claim that survived UT's motion to dismiss under FRCP 12(b)(6)—meaning that, even accepting Plaintiff's factual allegations as true, she had no viable grounds for a discrimination lawsuit.

**III.    The reduced fee award recommended by the Magistrate Judge does not contravene public policy.**

Plaintiff argues that "succeeding in employment discrimination litigation serves as a deterrent to future violations, even when the monetary stakes are low," citing a case involving a sex discrimination in which the plaintiff was awarded a substantial attorney's fee despite obtaining only one dollar in nominal damages. Dkt. 50 at 5 (citing *Picou v. City of Jackson*, 91 F. App'x 340, 342 (5th Cir. 2004)). *Picou* represents an exception to the general rule that, "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief . . . the only reasonable fee is usually no fee at all." *Picou*, 91 F. App'x at 342 (quoting *Farrar v. Hobby*, 506 U.S. 103, 115 (1992)). But the *Picou* exception is inapplicable here. In that case, "the district court found that Picou had achieved a compensable goal" because "she established discrimination based on sex, which should serve as a deterrent to the Jackson Police Department in the future." *Id*. Here, by contrast, Plaintiff did not prove that UT unlawfully

discriminated against her. *See* Dkt. 40 ("This Judgment is not an admission of liability or wrongdoing by Defendant."). Indeed, she did not even plead facts from which discrimination might plausibly be inferred. *See* Dkt. 37. Plaintiff's argument that "attorneys depend heavily on statutory fee awards to make such cases economically viable" is thus unpersuasive here, because statutory fee–award provisions are not meant to incentivize lawyers to bring meritless cases.

Plaintiff further argues: "When courts reduce [attorney's] fees based on modest settlements, they create a perverse incentive structure where attorneys are discouraged from accepting cases that may settle for reasonable amounts, effectively denying representation to entire classes of discrimination victims." Dkt. 50 at 5. But the Magistrate Judge's proposed reduction to the lodestar is not based solely on Plaintiff's modest recovery; the reduction also reflects the Magistrate Judge's recognition that the case was meritless as pleaded. Nor can Plaintiff justifiably claim to represent "discrimination victims" when she neither plausibly alleged nor proved either race or disability discrimination.

The purpose of attorney's fee statutes is not to encourage attorneys to bring facially meritless claims. When plaintiffs' attorneys unreasonably expend hundreds of hours litigating facially meritless claims, awarding the lodestar, or imposing only a modest reduction to the lodestar, does not advance the legislative purposes Plaintiffs invokes. Instead, it has the unwanted consequence of discouraging defendants from settling nuisance–value cases.

## CONCLUSION

For these reasons, the Court should overrule Plaintiff's objections and enter judgment for attorney's fees consistent with the Magistrate Judge's Report and Recommendation.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General of Texas

RALPH MOLINA
Deputy First Assistant Attorney General of Texas

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

/s/ *Terri M. Abernathy*
TERRI M. ABERNATHY
Assistant Attorney General
Texas Bar No. 24062894

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
General Litigation Division
P.O. Box 12548, Capitol Station, MC–019
Austin, Texas 78711–2548
Phone (512) 979–5354
Division Fax (512) 320–0667
Email Terri.Abernathy@oag.texas.gov

*Counsel for Defendant*
*The University of Texas at Austin*

### Certificate of Service

I hereby certify that on July 8, 2026, a true and correct copy of the foregoing document was filed with the Court's CM/ECF system, causing electronic service as follows:

Matt Bachop
2901 Bee Caves Rd., Ste. L
Austin, Texas 78746
*Via email to mbachop@ddollaw.com*

*Counsel for Plaintiff*
*Nicolette D. Page*

/s/ *Terri M. Abernathy*
TERRI M. ABERNATHY
Assistant Attorney General